**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE NEW YORK TIMES CO., *et al.*, | |
| Plaintiffs, | |
| v. | 11 Civ. 6990 (WHP) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ECF Case |
| Defendant. | |
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | |
| Plaintiffs, | |
| v. | 11 Civ. 7562 (WHP) |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ECF Case |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND FOR PARTIAL SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2716

JOHN D. CLOPPER
EMILY E. DAUGHTRY
Assistant United States Attorneys
 — Of Counsel —

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND......................................................................................................2

    A.      Section 215 of the USA PATRIOT Act..................................................................2

    B.      The FOIA Requests..................................................................................................3

          1.      New York Times Reporter Charlie Savage's Request..................................................................................................3

          2.      The ACLU Request.....................................................................4

ARGUMENT................................................................................................................................4

    I.      Legal Standards for Summary Judgment in FOIA Actions ....................................4

    II.      The Report Is Exempt From Disclosure Under FOIA Exemption 1 .......................7

    III.      The Report Is Also Exempt From Disclosure Under FOIA Exemption 3..........................................................................................................9

CONCLUSION...........................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*ACLU v. DOD,*
    628 F.3d 612 (D.C. Cir. 2011) ................................................................................... 7, 10

*ACLU v. DOD,*
    752 F. Supp. 2d 361 (S.D.N.Y. 2010) ................................................................................ 9

*Amnesty Int'l v. CIA*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................................................ 7

*Assoc. of Retired R.R. Workers, Inc. v. U.S.R.R. Ret. Bd.*,
    830 F.2d 331 (D.C. Cir. 1987) ..................................................................................... 6, 10

*Baldrige v. Shapiro*,
    455 U.S. 345 (1982) ............................................................................................................ 5

*CIA v. Sims*,
    471 U.S. 159 (1985) ............................................................................................. 9, 10, 11

*Carney v. DOJ,*
    19 F.3d 807 (2d Cir. 1994) ................................................................................................ 5

*Center for Nat'l Sec. Studies v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003) ....................................................................................... 5, 6

*Department of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ................................................................................................................ 5

*Diamond v. FBI*,
    707 F.2d 75 (2d Cir. 1983) ................................................................................................ 6

*Ferguson v. FBI*,
    No. 89 Civ. 5071, 1995 WL 32930 (S.D.N.Y. June 1, 1995)
        *aff'd*, 83 F.3d 41 (2d Cir. 1996) ................................................................................ 5

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) ..................................................................................6

*Frugone v. CIA*,
    169 F.3d 772 (D.C. Cir. 1999) ..................................................................................6

*Halperin v. CIA*,
    629 F.2d 144 (D.C. Cir. 1980) ..................................................................................6

*Hogan v. Huff*,
    00 Civ. 6753 (VM), 2002 WL 1359722 (S.D.N.Y. June 21, 2002) ...................9

*John Doe Agency v. John Doe Corp.*,
    493 U.S.146 (1989)................................................................................................4, 5

*Krikorian v. Dep't of State*,
    984 F.2d 461 (D.C. Cir. 1993) ................................................................................10

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ............................................................................6, 10

*Miscavige v. IRS,*
    2 F.3d 366 (11th Cir. 1993) .......................................................................................5

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ...............................................................................7

*New York Times Co. v. DOD,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007)................................................................3, 10

*Wilner v. NSA,*
    592 F.3d 60 (2d Cir. 2009).........................................................................5, 6, 9, 10

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ..............................................................................5, 6

*Wolf v. CIA,*
    357 F. Supp. 2d 112 (D.D.C. Jul. 2004) ..................................................................9

## STATUTES

5 U.S.C. § 552 ............................................................................................................. 1, 4, 7,9

50 U.S.C. § 403-1(i) ............................................................................................................. 10

50 U.S.C. § 1801 *et seq.* ......................................................................................................... 2

50 U.S.C. § 1861(a) (1) ................................................................................................... 1, 2, 3

PATRIOT Sunsets Extension Act of 2011, § 2,
      Pub. L. No. 112-14, 125 Stat. 216 (May 26, 2011) ........................................................ 3

USA PATRIOT Act, Pub. L. 107-56 (Oct. 26, 2001) ................................................................ 2, 3

Fed. R. Civ. P. 56(a) ................................................................................................................ 5

## PRELIMINARY STATEMENT

Defendant United States Department of Justice ("DOJ" or the "Government"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment in *The New York Times Co. v. United States Department of Justice,* 11 Civ. 6990 (WHP), and partial summary judgment in *American Civil Liberties Union v. Federal Bureau of Investigation*, 11 Civ. 7562 (WHP).

Plaintiffs The New York Times Company and Charlie Savage (collectively, "New York Times") and American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "ACLU," and, together with New York Times, "Plaintiffs") brought these actions under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. As explained more fully below, both cases seek the release of a classified document—specifically, a classified report to Congress from the Attorney General and the Director of National Intelligence relating to a Government intelligence collection operation authorized by Section 215 of the USA PATRIOT Act.

Section 215 permits the Government to apply to the Foreign Intelligence Surveillance Court ("FISA Court") for a court order directing the production of "any tangible things" for certain authorized investigations. 50 U.S.C. § 1861(a)(1). The Government's classified use of this authority is critical to countering threats to the nation. Public disclosure of the intelligence collection operation described in the Report would expose sensitive intelligence sources and methods to the United States' adversaries and therefore harm national security.

As set forth below, and in the supporting declarations submitted in support of the Government's motion, the classified document at issue is exempt from disclosure under FOIA,

and the Court should grant the Government summary judgment upholding its decision to withhold the document in full. In support of this motion, the Government is submitting an unclassified declaration from Mark A. Bradley, the Director of the Freedom of Information Act and Declassification Unit of the Office of Law and Policy in the National Security Division of the Department of Justice ("Bradley Declaration"), and a classified declaration from Mr. Bradley ("Classified Bradley Declaration"). Because the Classified Bradley Declaration contains information that cannot be explained on the public record, the Government is providing it for the Court's review *ex parte* and *in camera*.

## FACTUAL BACKGROUND

### A.     Section 215 of the USA PATRIOT Act

Section 215—originally enacted on October 26, 2001 as part of USA PATRIOT Act, Pub. L. 107-56 (Oct. 26, 2001)—amends the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq*. Section 215 permits the Government to apply to the FISA Court for a court order directing the production of "any tangible things" for certain authorized investigations. 50 U.S.C. § 1861(a)(1). In order to issue such an order, the FISA Court must determine that there are reasonable grounds to believe that: (1) the tangible things sought are relevant to an authorized national security investigation; (2) the investigation is being conducted under guidelines approved by the Attorney General under Executive Order 12333, as amended; and (3) if a U.S. person is the subject of the investigation, the investigation is not being conducted solely on the basis of First Amendment protected activities. *See* 50 U.S.C. § 1861. In addition, the FISA Court may only require the production of records that can be obtained with a grand jury subpoena or any other court order directing the production of records or tangible things. *See* 50 U.S.C. § 1861(c)(2)(D).

As initially enacted, Section 215 was set to expire on December 31, 2005. Pub. L. 107-56, § 224. Congress subsequently reauthorized Section 215 for limited periods of time on several occasions. *See* 50 U.S.C. § 1861 note. At the time the record at issue in this case was provided to Congress on February 2, 2011, Section 215 was set to expire on May 27, 2011. *See id.* On May 26, 2011, Congress reauthorized Section 215 until June 1, 2015. *See* PATRIOT Sunsets Extension Act of 2011, § 2, Pub. L. No. 112-14, 125 Stat. 216 (May 26, 2011).

### B. The FOIA Requests

As described more fully below, the New York Times' FOIA request seeks a single record: a report provided to Congress by the Attorney General and the Director of National Intelligence on February 2, 2011 pertaining to certain "intelligence collection authorities." Complaint in *New York Times Co. v. United States Department of Justice*, 11 Civ. 6990 ("NYT Complaint") at ¶ 2 (quoting FOIA request). The Government has located the report that is responsive to this FOIA request (the "Report"). Although the ACLU's FOIA request is broader—it seeks records relating to Section 215 more generally—the Government has determined that the Report is also responsive to the ACLU's request. *American Civil Liberties Union v. Federal Bureau of Investigation*, 11 Civ. 7562 ("ACLU Complaint") at ¶ 3.

#### 1. *New York Times* Reporter Charlie Savage's Request

On May 27, 2011, plaintiff Charlie Savage, a reporter for the *New York Times*, submitted a FOIA request via email to the Department of Justice's Office of Information Policy ("DOJ-OIP"). Mr. Savage requested "that a copy be provided to me of the report received on February 2, 2011, by the congressional intelligence committees from the attorney general and the director of national security that pertains to intelligence collection authorities that were subject to expiration under section 224 of the USA PATRIOT Act." Bradley Decl. ¶ 4. Approximately

one month later, on June 22, 2011, Mr. Savage forwarded his May 27, 2011 email to the Department of Justice's National Security Division ("DOJ-NSD"), stating that he "would like to extend the below request to the National Security Division." Bradley Decl. ¶ 5.

On August 2, 2011, DOJ-NSD informed Mr. Savage via letter that it had located the document responsive to his FOIA request, and that it was withholding it in full pursuant to FOIA Exemption 1, 5 U.S.C. § 552(b)(1), which exempts classified information from release under FOIA. Bradley Decl. ¶ 6.

### 2. The ACLU Request

On May 31, 2011, the ACLU submitted a FOIA request to certain components of the Department of Justice—DOJ-NSD, DOJ-OIP, and the Office of Legal Counsel ("DOJ-OLC")—and the FBI seeking "any and all records concerning the Government's interpretation or use of Section 215 . . ." ACLU Complaint ¶¶ 22, 29-37.

On November 18, 2011, the Court held an initial case management conference. Because the record sought by the New York Times is also responsive to the ACLU's FOIA request, the parties suggested to the Court that they proceed with dispositive motion briefing with respect to that single record. The Court accepted the parties' suggestion and set a briefing schedule.

## ARGUMENT

### I. LEGAL STANDARDS FOR SUMMARY JUDGMENT IN FOIA ACTIONS

The Freedom of Information Act, 5 U.S.C. 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)). Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public

interest," *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citations omitted). *See also John Doe Agency*, 493 U.S. at 152 (stating that the exemptions that allow the Government to withhold certain information under the FOIA are "intended to have meaningful reach and application"); *Center for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) (Congress struck "a balance . . . between the public's right to know and the government's legitimate interest in keeping certain information confidential").[1]

With respect to requests for release of classified documents relating to national security matters, the courts have repeatedly recognized "the uniquely executive purview of national security" and "the relative competencies of the executive and judiciary," and, accordingly, "have consistently deferred to executive affidavits predicting harm to the national security." *Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) (quotation marks omitted); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (stating that courts "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record" (quotation marks omitted)). In other words, while the standard of review for an agency's withholding of documents is *de novo,* the judiciary accords "substantial weight" to agencies' affidavits regarding national

---

[1] Most FOIA actions are resolved by summary judgment. *See e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, "[a]ffidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (footnote omitted). An agency's declarations in support of its determination are "accorded a presumption of good faith." *Id.* (quotation marks omitted). In addition, the Government has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment" and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, No. 89 Civ. 5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff 'd*, 83 F.3d 41 (2d Cir. 1996).

security.  *Wilner*, 592 F.3d at 73; *accord Diamond v. FBI*, 707 F.2d 75, 79 (2d Cir. 1983); *Ass'n of Retired R.R. Workers, Inc. v. U.S.R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987) ("de novo review in FOIA cases is not everywhere alike.").  Accordingly, in FOIA cases involving matters of national security, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980)

For these reasons, courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr for Nat'l Sec. Studies*, 331 F.3d at 927; *accord Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (reaffirming "deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security"); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990). Indeed, absent evidence of bad faith, where a court has enough information to understand why an agency classified information, it should not second-guess the agency's facially reasonable decisions.  *See Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) ("courts have little expertise in either international diplomacy or counterintelligence operations").

Ultimately, in the national security context, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.'" *Wilner*, 592 F.3d at 73 (quoting *Larson*, 565 F.3d at 862); *accord Wolf*, 473 F.3d at 374-75.  In this case, the Government has submitted detailed declarations explaining the basis for the classification and the withholding of the responsive record.  These explanations are not only logical and plausible—which is all they need be in order for the Government to be entitled to summary judgment—but also compelling and persuasive.  Accordingly, summary judgment is appropriate.

## II. THE REPORT IS EXEMPT FROM DISCLOSURE UNDER FOIA EXEMPTION 1

Exemption 1 provides that FOIA's disclosure mandate does not apply to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). As noted, under Exemption 1, courts owe "special deference . . . to agency affidavits on national security matters." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007). "[L]ittle proof or explanation is required beyond a plausible assertion that information is properly classified." *Id.* at 1124. Because assessment of harm to national security is entrusted to the Executive Branch rather than courts, "the government's burden is a light one," "searching judicial review" is inappropriate, and "plausible" and "logical" arguments for nondisclosure will be sustained. *ACLU v. DOD*, 628 F.3d 612, 624 (D.C. Cir. 2011); *Amnesty Int'l v. CIA*, 728 F. Supp. 2d 479, 508 (S.D.N.Y. 2010) (explaining decision to "defer[] to [] executive declarations predicting harm to the national security").

The current standard for classification is set forth in Executive Order 13526. Section 1.1 of the E.O. lists four requirements for the classification of national security information. The three procedural requirements are: an "original classification authority" must classify the information; the information must be "owned by, produced by or for, or [] under the control of the United States Government;" and an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13526 § 1.1(a)(1), (a)(2), (a)(4). The substantive requirement is that the information must fall within one or more of eight protected categories of information listed in Section 1.4 of the order. *See id.* § 1.1(a)(3).

All of the requirements of Section 1.1 of E.O. 13526 have been satisfied. With respect to the procedural requirements, as set forth in Mr. Bradley's unclassified and classified declarations, the information pertaining to the intelligence collection operation described in the Report is currently and properly classified within the meaning of E.O. 13526. Bradley Decl. ¶ 8. Mr. Bradley further affirms that this information is owned by, produced by or for, or is under the control of the United States Government. *Id*. at ¶ 10.

In addition, Mr. Bradley explains the damage to national security that reasonably could be expected to result from the disclosure of the classified information contained in the Report. *Id.* at ¶ 9. Specifically, Mr. Bradley explains that "the withheld material contains specific descriptions of the manner and means by which the Government acquires tangible things for certain authorized investigations pursuant to Section 215. As such, the withheld information describes highly sensitive intelligence activities and methods. Disclosure of this information would provide our adversaries and foreign intelligence targets with insight into the Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities." *Id.*

The Classified Bradley Declaration provides further information regarding damage to national security that could reasonably be expected to result from disclosure of the Report. Because the specific information relating to the damage to national security contained in the Classified Bradley Declaration is itself classified, it cannot be disclosed on the public record. The information is accordingly being provided to the Court *ex parte* and *in camera*.

With respect to the substantive requirement of the E.O., Mr. Bradley's declaration establishes that the withheld information falls within one or more of the categories of information set forth in Section 1.4 of E.O. 13526. *Id.* at ¶ 8; *see also* 68 Fed. Reg. at 15317.

Specifically, the withheld information meets the criteria for classification set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 13526, which respectively authorize the classification of information concerning "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security," which includes defense against transnational terrorism. Bradley Decl. at ¶ 8.

Where, as here, the Government has satisfied the conditions for classification under E.O. 13526, such classified information is exempt from disclosure. *See, e.g., ACLU v. DOD*, 752 F. Supp. 2d 361, 371 (S.D.N.Y. 2010) (records properly withheld under Exemption 1 where Government demonstrated withheld information logically falls within Exemption 1); *Hogan v. Huff*, 00 Civ. 6753 (VM), 2002 WL 1359722, at *8 (S.D.N.Y. June 21, 2002) (information properly withheld under Exemption 1 where disclosure of the information "would potentially harm the agency by exposing its methods"); *Wolf v. CIA*, 357 F. Supp. 2d 112, 116 (D.D.C. Jul. 2004) (classification warranted where "disclosure could reveal general CIA methods of information gathering").

### III.  THE REPORT IS ALSO EXEMPT FROM DISCLOSURE UNDER FOIA EXEMPTION 3

The Report is also exempt from disclosure under FOIA Exemption 3. Under Exemption 3, matters "specifically exempted from disclosure" by certain statutes need not be disclosed. 5 U.S.C. § 552(b)(3). In examining an Exemption 3 claim, a court determines whether the claimed statute is an exemption statute under FOIA and whether the withheld material satisfies the criteria for the exemption statute. *CIA v. Sims*, 471 U.S. 159, 167 (1985); *Wilner*, 592 F.3d at 72. As the Second Circuit has explained, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole

issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" *Wilner*, 592 F.3d at 72 (quoting *Ass'n. of Retired R.R. Workers*, 830 F.2d at 336); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993). Thus, a court should "not closely scrutinize the contents of a withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute." *Krikorian*, 984 F.2d at 465. Moreover, to support its claim that information may be withheld pursuant to Exemption 3, the Government need not show that there would be any harm to national security from disclosure, only that the withheld information falls within the purview of the exemption statute. *See Larson*, 565 F.3d at 868.

As set forth in the unclassified and classified Bradley Declarations, the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i), protects intelligence sources and methods from unauthorized disclosure. *See* Bradley Decl. ¶ 12. This statute indisputably qualifies as an Exemption 3 statute. *See New York Times Co. v. DOD*, 499 F. Supp. 2d 501, 512 (S.D.N.Y. 2007); *ACLU v. DOD*, 628 F.3d at 619; *Larson,* 565 F.3d at 868. The Government has determined that disclosure of the Report would reveal information pertaining to intelligence methods and activities. *See* Bradley Decl. ¶ 12. The Classified Bradley Declaration provides further information regarding the intelligence sources and methods discussed in the Report. Because the specific information relating to intelligence source and methods contained in the Classified Bradley Declaration is itself classified, it cannot be disclosed on the public record. The information is accordingly being provided to the Court *ex parte* and *in camera*.

As the Supreme Court discussed in *Sims,* it is the duty of the responsible Executive Branch officials, "not that of the judiciary, to weigh the variety of complex and subtle factors in

determining whether disclosure of information may lead to an unacceptable risk of compromising" intelligence sources and methods. 471 U.S. at 180. The Court observed that, in the National Security Act of 1947, Congress did not limit the scope of "intelligence sources and methods" in any way. *Id.* at 169. Rather, it "simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the [responsible agency] needs to perform its statutory duties with respect to [the relevant intelligence activities]." *Id.* at 169-170. Applying this deferential standard, the Government's submission establishes that the Report is protected from disclosure under Exemption 3.

## **CONCLUSION**

For the reasons stated herein, the Government's motion for summary judgment in *The New York Times Co. v. United States Department of Justice,* 11 Civ. 6990 (WHP), and partial summary judgment in *American Civil Liberties Union v. Federal Bureau of* Investigation, 11 Civ. 7562 (WHP), should be granted.

Dated: New York, New York
February 27, 2012

    Respectfully submitted,

    PREET BHARARA
    United States Attorney

By:    /s/ John Clopper_____
    JOHN D. CLOPPER
    EMILY E. DAUGHTRY
    Assistant United States Attorney
    86 Chambers Street, 3rd Floor
    New York, New York 10007
    Telephone: (212) 637-2716 (Clopper)
                  (212) 637-2777 (Daughtry)
    Facsimile: (212) 637-0033
    john.clopper@usdoj.gov
    emily.daughtry@usdoj.gov