**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION,
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                  *Plaintiffs,*

     v.

FEDERAL BUREAU OF INVESTIGATION,
UNITED STATES DEPARTMENT OF JUSTICE,

                  *Defendants.*

11 Civ. 7562 (WHP)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO THE
GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS................................................................................3

ARGUMENT..............................................................................................5

I.     FOIA STANDARD OF REVIEW..............................................................6

     a.     FOIA.........................................................................................6

     b.     Exemptions 1 and 3. ..................................................................6

II.     THE GOVERNMENT HAS NOT MET ITS BURDEN TO JUSTIFY
WITHHOLDING THE DOJ MEMORANDUM. .................................................8

     a.     The DOJ Memorandum May Not Be Withheld To The Extent That
It Constitutes Secret Law. ...........................................................8

          i.     Secret Law Is Particularly Dangerous In The Context Of
Section 215............................................................................12

          ii.     Secret Law May Not Be Withheld Under Exemptions 1 Or
3. .......................................................................................13

          iii.     The Type Of Harm That Could Result From The
Disclosure Of Secret Law Is Not The Type Of Harm That
Supports A Withholding Under Exemptions 1 or 3......................16

     b.     At A Minimum, The Court Should Conduct An In Camera Review
Of The DOJ Memorandum. ..........................................................17

CONCLUSION...........................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A. Michael's Piano, Inc. v. FTC,*
    18 F.3d 138 (2d Cir. 1994) ....................................................................................7

*ACLU.v. Dep't of Def.,*
    396 F. Supp. 2d 459 (S.D.N.Y. 2005) ..............................................................6, 9

*ACLU.v. Dep't of Def.,*
    389 F. Supp. 2d 547 (S.D.N.Y. 2005) ................................................................7

*ACLU.v. Dep't of Def.,*
    543 F.3d 59 (2d Cir. 2008),
    *vacated on other grounds and remanded,* 130 S. Ct. 777 (2009) ........................6

*Allen v. CIA,*
    636 F.2d 1287 (D.C. Cir. 1980),
    *overruled on other grounds by Founding Church of Scientology v. Smith,*
    721 F.2d 828 (D.C. Cir. 1983) .......................................................................8, 14

*Associated Press v. Dep't of Def.,*
    554 F.3d 274 (2d Cir. 2009) ................................................................................6

*Audubon Soc'y v. U.S. Forest Serv.,*
    104 F.3d 1201 (10th Cir. 1997) ...........................................................................9

*Bronx Defenders v. U.S. Dep't of Homeland Sec.,*
    No. 04 Civ. 8576 (H**B**), 2005 U.S. Dist. LEXIS 33364 (S.D.N.Y. Dec. 19, 2005)...............14

*Caplan v. Bureau of Alcohol, Tobacco & Firearms,*
    587 F.2d 544 (2d Cir. 1978) ................................................................................9

*CIA v. Sims,*
    471 U.S. 159 (1985) .............................................................................................7

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) .....................................................................8-9, 14

*Cuneo v. Schlesinger,*
    484 F.2d 1086 (D.C. Cir. 1973) ....................................................................11, 15

*Dep't of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) .............................................................................................6

*Goldberg v. U.S. Dep't of State,*
    818 F.2d 71 (D.C. Cir. 1987)................................................................................7

*Halperin v. CIA,*
   629 F.2d 144 (D.C. Cir. 1980) ........................................................8

*Halpern v. FBI,*
   181 F.3d 279 (2d Cir. 1999) .........................................................6

*Hardy v. Bureau of Alcohol, Tobacco & Firearms,*
   631 F.2d 653 (9th Cir. 1980) .....................................................9, 15

*Hawkes v. IRS,*
   507 F.2d 481 (6th Cir. 1974) .....................................................9, 15

*Jordan v. U.S. Dep't of Justice,*
   591 F.2d 753 (D.C. Cir. 1978) ...........................................8, 10, 11, 13

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) .......................................................6

*Lone Star Indus., Inc. v. FTC,*
   No. 82-3150, 1984 WL 21979 (D.D.C. Mar. 26, 1984) ....................................15

*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) ..............................................................9, 11

*Nat'l Archives & Records Admin. v. Favish,*
   541 U.S. 157 (2004) ................................................................14

*Nat'l Council of La Raza v. Dep't of Justice,*
   411 F.3d 350 (2d Cir. 2005) ......................................................12, 14

*New York Times Co. v. U.S. Dep't of Justice,*
   No. 1:11-cv-6990 (WHP) (S.D.N.Y.) ...................................................1

*Orion Res., Inc. v. Envtl. Prot. Agency,*
   615 F.2d 551 (1st Cir. 1980) .......................................................14

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget,*
   598 F.3d 865 (D.C. Cir. 2009) .......................................................9

*Sterling Drug, Inc. v. FTC,*
   450 F.2d 698 (D.C. Cir. 1971) ....................................................15, 16

*Wiener v. FBI,*
   943 F.2d 972 (9th Cir. 1991) ........................................................8

*Wilner v. Nat'l Sec. Agency,*
   592 F.3d 60 (2d Cir. 2009) ..........................................................7

### STATUTES

5 U.S.C. § 552 ................................................................................................ 1, 17

5 U.S.C. § 552(a)(4)(B) ....................................................................................... 6

5 U.S.C. § 552(a)(4)(B), (b) .............................................................................. 17

5 U.S.C. § 552(a)(4)(E) ...................................................................................... 17

5 U.S.C. § 552(b)(1) ............................................................................................ 6

5 U.S.C. § 552(b)(2) .......................................................................................... 13

5 U.S.C. § 552(b)(3)(B) ....................................................................................... 7

5 U.S.C. § 552(b)(5) .......................................................................................... 13

5 U.S.C. § 552(b)(7)(E) ..................................................................................... 13

50 U.S.C. § 403-1(i) .......................................................................................... 7-8

50 U.S.C. § 1861 .......................................................................................... 1, 12

### OTHER AUTHORITIES

75 Fed. Reg. 707 (Dec. 29, 2009) ..................................................................... 6-7

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO THE
GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiffs the American Civil Liberties Union and the American Civil Liberties Union

Foundation (together, "ACLU") respectfully submit this memorandum of law in support of their

cross-motion for partial summary judgment on their Complaint brought under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and in opposition to the government's motion for

partial summary judgment.  The ACLU adopts in full the memorandum of law ("NYT Br.")

submitted by plaintiffs ("NYT") in the related case, *New York Times Co. v. U.S. Department of

Justice*, No. 1:11-cv-6990 (WHP) (S.D.N.Y.).[1]

This motion presents a simple but significant question:  can the government continue to

conceal from the public its secret legal interpretation of Section 215 of the Patriot Act?  *See* USA

PATRIOT Act, Pub. L. No. 107-56, § 215, 115 Stat. 272 (2001) (codified at 50 U.S.C. § 1861)

(the "Patriot Act").  That provision authorizes the government to seek orders from the Foreign

Intelligence Surveillance Court requiring third parties—such as telecommunications companies,

credit card companies, and hospitals—to divulge "any tangible things" relevant to a terrorism

investigation.  For the reasons that follow, the Court should reject the government's attempt to

keep secret its legal interpretation of Section 215.

As U.S. Senators Mark Udall and Ron Wyden recently wrote to Attorney General Eric

Holder Jr., "[i]t is a matter of public record that section 215 [of the Patriot Act], which is a public

---

[1] Because the document at issue here is also the subject of the NYT's related FOIA action, the
ACLU and NYT are proceeding with parallel and dispositive motion briefing with respect to that
single record.  The ACLU and NYT briefs approach the issue from different angles.  The NYT's
brief delineates the government's failure to meet its burden under FOIA.  The ACLU's brief
focuses on the problems and dangers that inhere to the government's reliance upon "secret law,"
and the incompatibility of that reliance with FOIA.

statute, has been the subject of secret legal interpretation[]."  (Declaration of Nabiha Syed ("Syed Decl."), Exhibit C (letter dated March 15, 2012 from Sens. Udall and Wyden to Attorney Gen. Holder).)  The senators have repeatedly warned that the government's secret interpretation diverges significantly from the plain meaning of the statute and from the public's—and indeed Congress'—understanding of the type of information that Congress authorized the government to collect under Section 215.  On its face, Section 215 leaves unanswered critical legal questions as to the scope of the government's surveillance authority.[2]  And the senators, whose responsibility is unquestioned, "believe most Americans would be stunned" to learn "what the government secretly claims the law allows."  (*Id.* (emphasis in original).)

This motion involves a single document—a five-page memorandum provided to Congressional intelligence committees—that from every indication sheds extensive light upon the government's secret interpretation of its legal authority under Section 215.  The government has withheld the document (the "DOJ Memorandum") under FOIA Exemptions 1 and 3, claiming that it "relat[es] to a Government intelligence collection operation," and that disclosure would expose intelligence sources and methods and thus harm national security.  (Memorandum of Law In Support of the Government's Motion for Summary Judgment and for Partial Summary Judgment ("Govt. Br."), at 1.)

But Plaintiffs do not request the disclosure of ongoing intelligence operations, sources, or methods.  Plaintiffs seek information relating solely to the government's legal interpretation of Section 215, including all portions of the DOJ Memorandum that describe or convey the government's understanding of the scope of its surveillance authority under that provision, the

---

[2] For example, it is unclear what precisely "any tangible things" encompasses and how firm a connection the government must demonstrate between the information sought and a terrorism investigation to satisfy the "relevance" standard set forth in Section 215.

types of information that may be collected pursuant to that authority, and the circumstances in which that authority may be used.  That type of information comprises the type of "secret law" the withholding of which FOIA does not allow.  Indeed, Congress' chief purpose in enacting FOIA was to expose secret interpretations of public laws and to thereby enforce the public's right to know what the law means.  The government's withholding of the DOJ Memorandum impinges upon that right and subverts the Congressional judgment that secret law must be exposed.

At bottom, while certain information about surveillance operations is not subject to FOIA disclosure, the government may not keep secret its legal interpretation of a public law.  The Court should accordingly grant Plaintiffs' cross-motion for partial summary judgment, deny the government's motion for partial summary judgment, and make public the DOJ Memorandum or any segregable portion thereof.

## STATEMENT OF FACTS

In addition to the facts below, the ACLU adopts in full and declines to repeat the factual and procedural background set forth in the New York Times' brief.  (*See* NYT Br., at 2-8.)

On May 31, 2011, the ACLU submitted a FOIA request ("the Request") to the Federal Bureau of Investigation ("FBI") and the Department of Justice ("DOJ") Office of Information Policy ("OIP"), Office of Public Affairs ("OPA"), Office of Legal Counsel ("OLC"), and National Security Division ("NSD") pertaining to the government's interpretation or use of the powers enumerated in Section 215 of the Patriot Act.  Specifically, the Request pertained to the FBI's use and interpretation of Section 215, which permits the government to apply for court orders requiring the production of "any tangible things."  (*See* Complaint, ¶ 3.)  The Request asked for "any and all records indicating the kinds or types of information that may, as a matter of policy or law, be obtained through the use of Section 215," but expressly excluded "the names

3

or identities of those entities or individuals who have been served with Section 215 orders or the names or identities of those individuals or entities about whom records have been sought." (*Id.*, ¶¶ 24, 23.)

As set forth in the Complaint, the requested records relate to a highly controversial surveillance authority—the wisdom, effectiveness, and scope of which have been a matter of intense and ongoing public debate. The records sought would greatly contribute to the public's understanding of the government's interpretation of its authority under Section 215 and of the processes that the government has put in place to ensure that its use complies with the Constitution.

In a letter dated August 22, 2011, NSD released three items in response to the ACLU's request and communicated a determination to withhold other responsive items and records. (*See id.*, ¶ 6.) The ACLU timely filed two administrative appeals, exhausted its administrative remedies (*see id.*, ¶¶ 38-44), and then filed this suit on October 26, 2011. Among the responsive documents withheld by the NSD is the DOJ Memorandum, which was submitted to the Congressional intelligence committees by the Attorney General and the Director of National Intelligence and relates to the government's interpretation of its authority under Section 215. (*See* Govt. Br., at 4.)

On March 15, 2012, the government released approximately 250 pages of documents responsive to Plaintiffs' FOIA request. Many of the documents are heavily redacted, and none of them exposes the government's secret legal interpretation of Section 215. Significantly, however, the OLC acknowledged on that day that it is withholding in full two legal opinions relating to Section 215. The opinions are being withheld solely under Exemption 5, and are not

at issue in this motion.  *See* Letter from Paul P. Colborn to Jameel Jaffer (Mar. 15, 2012), *available at* http://bit.ly/GE6xth.

## ARGUMENT

This FOIA lawsuit seeks the government's official legal interpretation of what Congress authorized in a public law.  The answer to that question may not be kept secret:  the government cannot continue to conceal its legal interpretation of the legal scope of the surveillance authority that Congress granted in Section 215.  One of Congress' chief purposes in enacting FOIA was to eliminate secret law—to bridge the gap between the law as implemented by the government and the law as understood by the public.  As numerous courts have recognized, FOIA's exemptions may not be used to keep secret official legal interpretations of public laws.  To allow otherwise would subvert the Congressional judgment that, while certain facts must be protected, secret *law* must be exposed.

Here, the government has yet to address these issues:  its submissions are silent as to the extent to which the DOJ Memorandum comprises or contains secret law, and make no effort to dispel Senators Udall's and Wyden's concerns.  Instead, the government broadly claims that the DOJ Memorandum *also* describes an "intelligence collection operation."  (Govt. Br., at 1.) Plaintiffs do not, however, request the disclosure of that operation.  Rather, Plaintiffs seek information relating solely to the government's official legal interpretation of Section 215—in other words, the portions of the DOJ Memorandum that describe the scope of its surveillance authority, the types of information that may be collected, and/or the degree of "relevance" that would subject personal data to governmental collection.

The government appears to have made no effort to identify or segregate the information that FOIA obligates the government to release from the specific "intelligence collection operation" that it wishes to protect.  If the government is unwilling to make that effort, the Court

5

should conduct a careful *in camera* review to ensure that all information related to the government's legal interpretation of Section 215 is released.

## I.      FOIA STANDARD OF REVIEW.

### a.      FOIA.

The purpose of FOIA is the "broad disclosure" of government records, *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989), and FOIA "adopts as its most basic premise a policy strongly favoring public disclosure," *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999). FOIA's exemptions are therefore "narrowly construed" and all doubts "are to be resolved in favor of disclosure." *ACLU v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008), *vacated on other grounds and remanded*, 130 S. Ct. 777 (2009). Courts review exemption claims *de novo*, 5 U.S.C. § 552(a)(4)(B), and the government bears the "burden . . . to justify the withholding of any requested documents." *Associated Press v. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009). "[C]onclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden." *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009).

The government now contends that the DOJ Memorandum is exempt from disclosure under FOIA Exemptions 1 and 3. It falls short of its burden here.

### b.      Exemptions 1 and 3.

FOIA Exemption 1, which the government invokes in this matter, permits an agency to withhold information that is properly classified under the executive order that governs classification. 5 U.S.C. § 552(b)(1). Information may be classified under Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), only where it falls within one of the categories of classifiable information set out in Section 1.4 of the Order, *and* the classification authority

determines "disclosure of the information reasonably could be expected to result in damage to the national security" and is "able to identify or describe the damage," *id.* § 1.1.

While the affidavits submitted in support of an Exemption 1 invocation may be afforded "substantial weight," summary judgment in favor of the government is not warranted unless "affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by . . . contrary evidence in the record." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 68, 73 (2d Cir. 2009). Even in the face of national security-related exemption claims, the Court must not "relinquish[] [its] independent responsibility" to assess the agency's justifications. *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987).

FOIA Exemption 3 provides that an agency need not disclose matters that are "specifically exempted from disclosure by statute . . . if that statute . . . refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(B). In analyzing a claim under Exemption 3, a court must engage in a two-step inquiry: (1) does the statute relied upon by the government constitute a "statutory exemption to disclosure within the meaning of Exemption 3"?; and (2) is the requested information "included within" the statute's "protection"? *CIA v. Sims*, 471 U.S. 159, 167 (1985); *see also A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994); *ACLU v. Dep't of Def.*, 389 F. Supp. 2d 547, 559 (S.D.N.Y. 2005). At bar, the government asserts that the DOJ Memorandum falls within the protection of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i), which authorizes the Director of National Intelligence to protect "intelligence sources and methods."

An agency's submissions in support of withholding under Exemption 3 suffice only "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (describing agency burden under Exemptions 1 and 3); *see also Allen v. CIA*, 636 F.2d 1287, 1294 (D.C. Cir. 1980) ("The CIA's affidavits do little more than parrot the language of [Exemption 3] by stating that 'intelligence sources and methods' will be compromised if the document is disclosed . . . [U]nless greater specificity is provided regarding the nature of the 'intelligence sources and methods,' it is impossible for a trial court to conclude that withholding . . . was proper"), *overruled on other grounds by Founding Church of Scientology v. Smith*, 721 F.2d 828 (D.C. Cir. 1983); *Wiener v. FBI*, 943 F.2d 972, 982 (9th Cir. 1991) (rejecting withholding under Exemption 3 where "*Vaughn* index does little more than recite the [statutory] language" and where affidavit failed to discuss the facts or reasoning upon which the agent based his conclusion).

The government's submissions here are bereft of any such reasonable specificity, and its attempt to invoke Exemptions 1 and 3 must be rejected.

## II.   THE GOVERNMENT HAS NOT MET ITS BURDEN TO JUSTIFY WITHHOLDING THE DOJ MEMORANDUM.

### a.   The DOJ Memorandum May Not Be Withheld To The Extent That It Constitutes Secret Law.

In passing FOIA, Congress intended to ensure that the government's administration of the law comports with the public's understanding of it.   "One of the principal purposes of the Freedom of Information Act is to eliminate secret law." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (**B**azelon, J., concurring) (citation omitted); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("[T]he public is entitled to know what its government is doing and why.").

To that end, the Second Circuit, together with other Courts of Appeals, has clearly stated that the government may not withhold under FOIA information that "sets forth or clarifies an agency's substantive or procedural law," which, if withheld, would constitute "secret law." *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544, 548 (2d Cir. 1978) (citation omitted); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 872 (D.C. Cir. 2009); *Hawkes v. IRS*, 507 F.2d 481, 484-485 (6th Cir. 1974); *Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d 653, 657 (9th Cir. 1980); *Audubon Soc'y v. U.S. Forest Serv.*, 104 F.3d 1201, 1204 (10th Cir. 1997). Courts' general distaste for the propagation of secret law extends to policies and practices that do not meet the strict definition of "law." *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (citation omitted) (recognizing the "affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law'"); *see also ACLU v. Dep't of Def.*, 396 F. Supp. 2d 459 (S.D.N.Y. 2005) (rejecting the Central Intelligence Agency's refusal to confirm or deny the existence of a DOJ memorandum interpreting the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment).

The DOJ Memorandum comprises secret law, and thus cannot be withheld as classified, because its contents at the very least describe the government's legal interpretation of its authority to collect "any tangible things" pursuant to Section 215. The government's description of the DOJ Memorandum as relating to an "intelligence collection operation" does not rebut that analysis.[3] And the public statements of Senators Udall and Wyden regarding the DOJ Memorandum and the context in which the memo was submitted to the Congressional intelligence committees establish that it contains secret law that may not be withheld under

---

[3] Notably, the government has declined to deny that the DOJ Memorandum contains legal analysis. (*See* NYT Br., at 8.)

FOIA.[4]   The senators "have been concerned for some time that the U.S. government is relying on secret interpretations of surveillance authorities that—in our judgment—differ significantly from the public's understanding of what is permitted under U.S. law." (Syed Decl., Ex. B (letter dated September 21, 2011 from Sens. Udall and Wyden to Attorney Gen. Holder).)  They have identified two sets of "misleading statements pertaining to the government's interpretation of surveillance law," both of which involve the government's authority under and legal interpretation of Section 215.  (*Id.*)  The senators have warned that "Americans will eventually and inevitably come to learn about the gap that currently exists between the public's understanding of government surveillance authorities and the official, classified interpretation of these authorities."  (*Id.*)

This gap between the public's understanding of the government's surveillance authorities under Section 215 and the government's interpretation of those authorities constitutes the type of secret law that FOIA was meant to eliminate.  *See Jordan*, 591 F.2d at 781.  And the senators' warnings support Plaintiffs' belief that the contents of the DOJ Memorandum convey information and insights regarding the scope of the information that the government may collect and the universe of tangible things that it may acquire.  In that light, the disclosure of segregable portions of the DOJ Memorandum would inevitably clarify the legal scope and reach of the government's surveillance authority, as well as the government's conception of and respect for the privacy rights of persons whom that surveillance authority may target.  *See Cuneo v. Schlesinger*, 484 F.2d 1086, 1090 (D.C. Cir. 1973) (secret law "either create[s] or determine[s]

---

[4] The OLC's disclosure on March 15, 2012 that it possesses two final legal opinions relating to Section 215 supports this conclusion.  *See* Letter from Paul P. Colborn to Jameel Jaffer (Mar. 15, 2012), *available at* http://bit.ly/GE6xth.  That the OLC has not claimed that the opinions are classified suggests that the government's legal interpretation of Section 215 is segregable from information that, if disclosed, might reveal classified facts.

the extent of the substantive rights and liabilities of a person affected"). The government's improper determination to withhold the DOJ Memorandum in full—without at the very least segregating descriptions of its legal interpretation of Section 215—maintains and widens the chasm that currently exists between the public's conception of governmental surveillance authorities and the actual scope of such authorities.

The secret law doctrine is meant to open to the public records that guide and constrain governmental activities that affect individual rights. *See NLRB,* 421 U.S. at 153. The D.C. Circuit's decision in *Jordan* highlights the danger of allowing the government to conceal these types of records. *Jordan* concerned a FOIA request for prosecutorial guidelines and policy manuals that governed a U.S. Attorney's Office's exercise of prosecutorial discretion. Judge Bazelon, concurring in the decision requiring the disclosure of those guidelines and policies, emphasized that "the settled practices of the government," even "if not codified 'law,'" were "at least as important as any statute to the individual" affected by such practices. 591 F.2d at 781. The public availability of the guidelines and policy manuals at issue would serve fundamental public interests, he continued, "by helping to assure that the exercise of prosecutorial discretion is . . . consonant with statutory intent." *Id.*

An analogous public interest motivates the FOIA request in this case: the disclosure of the DOJ Memorandum will enable citizens to determine whether the government's interpretation of its powers under Section 215 is consonant with the public understanding of the law, its statutory intent, and the privacy rights of Americans, and, if not, to push for legislative change. As the Second Circuit has observed, "FOIA was enacted in order to 'promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed.'" *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355

11

(2d Cir. 2005) (alteration in original) (citation omitted). Here, the disclosure of the DOJ Memorandum will inform the citizenry and prevent the government from keeping secret the legal scope of the intelligence collection that Congress authorized in Section 215. Allowing suppression of the DOJ Memorandum would, by contrast, keep Americans in the dark about what their government is authorized to do, and why.

### i.     Secret Law Is Particularly Dangerous In The Context Of Section 215.

The dangers of secret law are particularly pronounced in this case. Because of the clandestine nature of surveillance under Section 215, targets of this surveillance are unlikely ever to learn of—or challenge—the provision of their information to the government. In this context, the Court should exercise a heightened vigilance of the public's right to know of the government's secret legal interpretation of Section 215.

Section 215 authorizes the government to obtain a sealed *ex parte* court order from the FISA Court requiring third parties (such as internet service providers, telecommunications companies, credit card companies, and hospitals) to turn over citizens' personal and business records. 50 U.S.C. § 1861. To obtain such an order, the government need only demonstrate "reasonable grounds" that the records it seeks are "relevant" to an authorized investigation. Citizens whose information is targeted or collected pursuant to Section 215 are not informed if or when their records are requested by or produced to the government. *See id.* Moreover, entities that receive Section 215 orders are prohibited from disclosing that receipt. *Id.*

In short, Section 215 authorizes the government to collect a vast array of private information about U.S. citizens and others in a manner that prevents the targets from ever learning of the collection. This secrecy makes it extremely difficult for targeted citizens to challenge the government's activities pursuant to Section 215, or the legal bases for those

12

actions.  And that inability amplifies the dangers that inhere to the government's use of secret

law in the surveillance context.  In his oft-cited concurrence in *Jordan*, Judge **B**azelon explained

that prosecutorial discretion guidelines should be disclosed to ensure the even-handed and

rational exercise of prosecutorial discretion; because that discretion "may be all but unreviewable

in individual cases, it is all the more important that the public and the courts be informed of the

general criteria which prosecutors apply in selecting which cases to prosecute and what charges

to bring."  *Jordan*, 591 F.2d at 781-82.

The same rationale applies *a fortiori* in this case:  the practical unavailability of any

means by which citizens targeted under Section 215 may challenge their surveillance makes it all

the more important that the public be informed of the scope of the legal authority under which

the government conducts such activities.[5]  This rationale further augments the public interest in

disclosing the portions of the DOJ Memorandum that would allow Americans to ascertain

whether the government is interpreting its surveillance authority in a manner that is even-handed,

rational and consonant with statutory intent.

### ii.    Secret Law May Not Be Withheld Under Exemptions 1 Or 3.

FOIA cases requiring the disclosure of secret law have arisen primarily in the regulatory

and law enforcement contexts, under FOIA Exemptions 2, 5, and 7(E).[6]  Although the

---

[5] While third parties that receive court orders pursuant to Section 215 may be able to challenge such orders, in the vast majority of cases, third parties are extremely unlikely to have an incentive to or interest in asserting the constitutional rights of their consumers.

[6] Exemption 2 exempts from disclosure agency records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than the agency in litigation with the agency."  *Id.* § 552(b)(5).  Exemption 7(E) permits the withholding of material that "would disclose techniques and procedures for law enforcement investigation or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  *Id.* § 552(b)(7)(E).

government has invoked Exemptions 1 and 3 in this case, courts have predicated their wholesale rejection of secret law upon their broad recognition that FOIA is "aimed at ending secret law and insuring that this country ha[s] 'an informed, intelligent electorate.'" *Allen*, 636 F.2d at 1299 (citation omitted).  Along these lines, the Supreme Court has emphasized that FOIA is "a means for citizens to know 'what their Government is up to.'  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (citation omitted).  Because the DOJ Memorandum contains information regarding the government's interpretation of its surveillance authority under Section 215, the government must disclose that information to the public.

In that vein, courts have held that the government cannot invoke Exemption 5 to suppress legal standards that an agency has in practice adopted or used—as the DOJ has indisputably adopted and used the secret legal interpretation of Section 215 at the heart of this case.  *See, e.g.*, *Nat'l Council of La Raza*, 411 F.3d 350, 361 (requiring DOJ to disclose OLC memorandum that was incorporated into DOJ policy); *Bronx Defenders v. U.S. Dep't of Homeland Sec.*, No. 04 Civ. 8576 (HB), 2005 U.S. Dist. LEXIS 33364, at *20 (S.D.N.Y. Dec. 19, 2005) (ordering disclosure of an OLC memorandum that reflected reasoning and a "continuing dialogue" relating to FBI policy); *Orion Res., Inc. v. EPA*, 615 F.2d 551, 554 (1st Cir. 1980) (Exemption 5 does not apply to "final memoranda that 'represent policies, statements or interpretations of law that the agency has actually adopted.'"  (citation omitted)); *Coastal States Gas Corp.*, 617 F.2d at 867 ("[A]n agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'"); *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971) (same).

Nor have courts allowed the government to withhold secret law in the context of Exemption 2 or 7(E) by contending that disclosure of law enforcement materials would result in the evasion or manipulation of the law.  The government advances a similar argument here, asserting that the disclosure of the specific descriptions of intelligence activities and methods that the DOJ Memorandum contains "could be used to develop the means to degrade and evade [intelligence] collection capabilities."  (Govt. Br., at 8.)  But law enforcement material may be withheld only if "the sole effect of disclosure would be to enable law violators to escape detection."  *Hawkes*, 507 F.2d at 483; *Lone Star Indus., Inc. v. FTC*, No. 82-3150, 1984 WL 21979, at *2 n.1 (D.D.C. Mar. 26, 1984).  The government's argument on this point falls far short of the necessary threshold.

Of course, it proves far too much to suggest that the nation's security requires that the scope of the government's legal authority remain secret.  As Senators Udall and Wyden caution, this "chilling logic" would justify the concealment of all of the nation's surveillance laws and national security powers (Syed Decl., Ex. B), including the entire Patriot Act, the Foreign Intelligence Surveillance Act of 1978, and even the Authorization for Use of Military Force. "American laws should not be made public only when government officials find it convenient," the senators argue.  (*Id.*)  "They should be public all the time, and every American should be able to find out what their government thinks those laws mean."  (*Id.*)  Rather than compromising national security, the disclosure of the government's legal interpretation of Section 215 would enable Americans to understand the scope of their government's legal authority under a public law—to know what their Government is up to.

Courts have yet to address the secret law doctrine in the context of Exemptions 1 or 3. But the impetus behind courts' rejection of secret law in FOIA cases extends beyond any specific

exemption:  it is rooted in the very purposes of FOIA and Congress' intent in passing it.  *See*, *e.g.*, *Hardy*, 631 F.2d at 657 (noting, in discussing Exemption 2, that "'secret law' . . . was the primary target of the act's broad disclosure provisions"); *Cuneo*, 484 F.2d at 1091 n.13 ("FOIA by its explicit terms condemns 'secret law' and requires that it be made public"); *Sterling Drug, Inc.*, 450 F.2d at 713 (Bazelon, C.J., concurring in part and dissenting in part) ("[Congress] indicated unequivocally that the purpose of the Act was to forbid secret law.").

The Congressional intent that motivated these decisions applies broadly to FOIA as a whole; it is not limited to any particular exemption.  The secret law prohibition that FOIA embodies represents a legislative recognition that allowing the government to keep secret interpretations of the law endangers our democracy.  Recognizing that the prohibition against secret law extends to Exemptions 1 and 3 would accord with that legislative recognition and with FOIA's purpose.

### iii.    The Type Of Harm That Could Result From The Disclosure Of Secret Law Is Not The Type Of Harm That Supports A Withholding Under Exemptions 1 or 3.

The limited scope of the Request bears emphasis here:  Plaintiffs do not seek the release of ongoing intelligence operations, means, or methods, or to identify the targets of surveillance. Plaintiffs seek access merely to legal analysis, interpretation, and secret law.  Contrary to the requirements that attach to an invocation of Exemption 1, the government does not even purport to demonstrate how this type of disclosure could "reasonably . . . be expected to result in damage to the national security," or to "identify or describe [any] damages" that could result" therefrom. *See* Executive Order § 1.1(a)(4).  Nor has the government indicated how the disclosure of legal interpretations and analysis would disclose specific intelligence sources or methods, as required to invoke the National Security Act's secrecy provisions under Exception 3.

To the contrary, the government's submissions fail to provide the reasonable specificity of detail necessary to justify an invocation of Exemption 1 or 3.  The government proffers no convincing reason why the disclosure of its secret interpretation of a public law would damage national security.  As discussed at greater length in the NYT's brief, the government's failure on this point dooms its attempt to invoke Exemptions 1 and 3 here.  (*See* NYT Br., at 11-21.)

**b.      At A Minimum, The Court Should Conduct An In Camera Review Of The DOJ Memorandum.**

As set forth in the NYT's brief, if the Court harbors any doubt as to whether FOIA requires the disclosure of the DOJ Memorandum in full, the Court should review the document *in camera* to determine whether it is feasible to segregate and disclose those parts of the memorandum that articulate the government's legal interpretation of Section 215 and the types of information that it may legally collect pursuant to that authority.  (*See* NYT Br., at 21-25.)  If the Court f nds that some portion of the DOJ Memorandum is properly withheld, it should order the government to disclose the remainder.  *See* 5 U.S.C. § 552(a)(4)(B), (b).

## CONCLUSION

For the foregoing reasons, as well as those stated in the NYT's brief, the ACLU respectfully asks the Court to (i) grant its cross-motion for partial summary judgment and deny the government's motion for partial summary judgment; (ii) declare that the DOJ Memorandum may not be withheld under 5 U.S.C. § 552, or, in the alternative, to conduct *in camera* review to determine whether portions of the memorandum must be segregated for release; (iii) order the DOJ to provide the DOJ Memorandum, or any segregable portions thereof, to the ACLU within 20 business days of the Court's order; (iv) award the ACLU the costs of this proceeding, including reasonable attorney's fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (v) grant such other and further relief as the Court deems just and proper.

17

Respectfully submitted,


/s/ Richard Haddad

Charles S. Sims (CS-0624)
Richard I. Haddad (RH-7270)
Proskauer Rose LLP
11 Times Square
New York, NY 10036
Phone:  (212) 969-3000
Fax:  (212) 969-2900
csims@proskauer.com
rhaddad@proskauer.com

Alexander Abdo (AA-0527)
Jameel Jaffer (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone:  (212) 549-2517
Fax:  (212) 549-2654
aabdo@aclu.org
jjaffer@aclu.org

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone:  (212) 607-3300
Fax:  (212) 607-3318
bharoules@nyclu.org
aeisenberg@nyclu.org

*Counsel for the plaintiffs*


Dated:  March 26, 2012