**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES
UNION, *et al.*,

        Plaintiffs,

        v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

        Defendants.

11 Civ. 7562 (WHP)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION**
**FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2716

JOHN D. CLOPPER
EMILY E. DAUGHTRY
Assistant United States Attorneys
— Of Counsel —

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

    A.    Section 215 of the USA PATRIOT Act....................................................2

    B.    The ACLU's FOIA Request .......................................................................3

    C.    The ACLU's Narrowing of the FOIA Request...........................................4

        1.    The December 9, 2011 Stipulation .............................................4

        2.    The December 13, 2012 Email ...................................................5

    D.    The Government's February 8, 2013 Release of
        Information ...............................................................................................7

    E.    Responsive Records at Issue and FOIA Exemptions
        Claimed ...................................................................................................7

ARGUMENT ...........................................................................................................................8

    I.    Governing FOIA Standards ........................................................................8

    II.    The Defendants Have Properly Withheld Records Under FOIA
        Exemption 1 ............................................................................................11

    III.    The Defendants Have Properly Withheld Records Under FOIA
        Exemption 3 ............................................................................................14

    IV.    The Office of Legal Counsel Properly Withheld the Census
        Memorandum Pursuant to Exemption 5 ...................................................17

    V.    The FBI Has Properly Withheld Records Under FOIA Exemption
        7(E) ........................................................................................................22

    VI.    The Defendants Have Produced Any Reasonably Segregable
        Portion of the Responsive Records .........................................................24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

## <u>CASES</u>

*ACLU v. DOD,*
 628 F.3d 612 (D.C. Cir. 2011) .......................................................................................11

*ACLU v. DOD,*
 752 F. Supp. 2d 361 (S.D.N.Y. 2010)........................................................................9, 14

*ACLU v. DOJ,*
 681 F.3d 61 (2d Cir. 2012)..........................................................................................9, 10

*ACLU v. Office of Director of National Intelligence,*
 10 Civ. 4419 (RJS), 2012 WL 1117114 (S.D.N.Y. March 30, 2012) ..............................23

*Allard K. Lowenstein Intern. Human Rights Project v. Dep't of Homeland Security,*
 626 F.3d 678 (2d Cir. 2010).......................................................................................22, 23

*Amnesty Int'l v. CIA,*
 728 F. Supp. 2d 479 (S.D.N.Y. 2010)........................................................................11, 16

*Baldrige v. Shapiro,*
 455 U.S. 345 (1982).....................................................................................................9, 15

*Brennan Center v. DOJ,*
 697 F.3d 184 (2d Cir. 2012)..............................................................................18, 20, 21

*Brinton v. Dep't of State,*
 636 F.2d 600 (D.C. Cir. 1980) ...............................................................................18, 21

*CIA v. Sims,*
 471 U.S. 159 (1985)...........................................................................................................16

*Carney v. DOJ,*
 19 F.3d 807 (2d Cir. 1994)................................................................................................9

*Center for Nat'l Sec. Studies v. DOJ,*
  331 F.3d 918 (D.C. Cir. 2003) ..............................................................................10

*Citizens for Responsibility and Ethics in Washington v. Office of Adm'n,*
  249 F.R.D. 1 (D.D.C. 2008) ..................................................................................21

*Department of the Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ............................................................................................9, 17

*Diamond v. FBI,*
  707 F.2d 75 (2d Cir. 1983) ......................................................................................9

*Electric Privacy Info. Ctr. v. DOJ,*
  584 F. Supp. 2d 65 (D.D.C. 2008) .........................................................................21

*Essential Info. Inc. v. U.S. Info. Agency,*
  134 F.3d 1165 (D.C. Cir. 1998) .............................................................................15

*Ferguson v. FBI,*
  No. 89 Civ. 5071, 1995 WL 32930 (S.D.N.Y. June 1, 1995)
    *aff'd,* 83 F.3d 41 (2d Cir. 1996) .........................................................................9

*Fitzgibbon v. CIA,*
  911 F.2d 755 (D.C. Cir. 1990) ...............................................................................15

*Frugone v. CIA,*
  169 F.3d 772 (D.C. Cir. 1999) ...............................................................................10

*Grand Cent. Partnership, Inc. v. Cuomo,*
  166 F.3d 473 (2d Cir. 1999) .............................................................................18, 19

*Halperin v. CIA,*
  629 F.2d 144 (D.C. Cir. 1980) ...............................................................................10

*Hogan v. Huff,*
  00 Civ. 6753 (VM), 2002 WL 1359722 (S.D.N.Y. June 21, 2002) ................................14

*Hopkins v. HUD,*
  929 F.2d 81 (2d Cir. 1991) .........................................................................17, 18, 19

iii

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989)....................................................................................................8

*Klamath Siskiyou Wildlands Ctr. v. Dep't of Interior*,
    Civ. No. 07-325-CL, 2007 WL 4180685 (D. Or. Nov. 21, 2007) ....................................24

*Krikorian v. Dep't of State*,
    984 F.2d 461 (D.C. Cir. 1993) ...............................................................................15, 16

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ......................................................................................10

*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) .........................................................................................16

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ....................................................................................11

*Nat'l Council of La Raza v. DOJ*,
    411 F.3d 350 (2d Cir. 2005).........................................................................................18

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211, 220-21 (D.D.C. 2005)................................................................24

*New York Times Co. v. DOJ*,
    12 Civ. 3215 (JSR), 2013 WL 174222 (S.D.N.Y. Jan. 7, 2013) .................................20, 21

*New York Times Co. v. DOJ*,
    11 Civ. 9336 (CM), 2013 WL 50209 (S.D.N.Y. Jan. 3, 2013)................................. passim

*New York Times Co. v. DOJ*,
    872 F. Supp.2d 309 (S.D.N.Y. 2012)....................................................................... passim

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975)................................................................................................18, 19

*PHE, Inc. v. Dep't of Justice*,
    983 F.2d 248 (D.C. Cir. 1993) ......................................................................................22

*Rockwell Int'l Corp. v. Dep't of Justice*,
     235 F.3d 598 (D.C. Cir. 2001) .......................................................................................22

*Renegotiation Bd. Grumman Eng'g Corp.*,
     421 U.S. 168 (1975) ........................................................................................................17

*Tigue v. DOJ*,
     312 F.3d 70 (2d Cir. 2002)......................................................................................18, 19

*Wilner v. NSA*,
     592 F.3d 60 (2d Cir. 2009).................................................................................. passim

*Wolf v. CIA*,
     473 F.3d 370 (D.C. Cir. 2007) .................................................................................9, 10

*Wolf v. CIA*,
      357 F. Supp. 2d 112 (D.D.C. 2004) ..........................................................................14

*Wood v. FBI*,
     432 F.3d 78 (2d Cir. 2005)...........................................................................................23

## STATUTES

5 U.S.C. § 552................................................................................................................ passim

50 U.S.C. § 403-1(i)..............................................................................................................15

50 U.S.C. § 1801 *et seq*........................................................................................................2

50 U.S.C. § 1861(a) (1)..................................................................................................1, 2, 3

PATRIOT Sunsets Extension Act of 2011, § 2,
     Pub. L. No. 112-14, 125 Stat. 216 (May 26, 2011) .......................................................3

USA PATRIOT Act, Pub. L. 107-56 (Oct. 26, 2001) .............................................................2, 3

## PRELIMINARY STATEMENT

Defendants Federal Bureau of Investigation ("FBI") and United States Department of Justice ("DOJ") (together, the "Government"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for summary judgment.

Plaintiff American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "ACLU") brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. As explained more fully below, the ACLU seeks records related to Section 215 of the USA PATRIOT Act. With respect to one of the documents that the ACLU seeks, the Court previously granted the Government summary judgment. *See New York Times Co. v. DOJ*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012). Specifically, in *New York Times*, the Court upheld the Government's decision to withhold from the New York Times and the ACLU a classified report to Congress from the Attorney General and the Director of National Intelligence relating to a Government intelligence collection operation authorized by Section 215. That report was the only document sought by the New York Times, but was just one of the documents responsive to the ACLU's FOIA request. This motion is intended to resolve the ACLU's claims regarding the remainder of the documents responsive to the ACLU's FOIA request.

Section 215 permits the Government to apply to the Foreign Intelligence Surveillance Court (the "FISC") for a court order directing the production of "any tangible things" for certain authorized investigations. 50 U.S.C. § 1861(a)(1). As we have previously explained, the Government's use of this authority—much of which is classified—is critical to countering security threats to the nation.

As set forth below, and in the supporting declarations submitted in support of the Government's motion, the documents remaining at issue are exempt from disclosure under FOIA, and the Court should therefore grant the Government summary judgment.[1]

## **FACTUAL BACKGROUND**

### A.    **Section 215 of the USA PATRIOT Act**

Section 215—originally enacted on October 26, 2001 as part of the USA PATRIOT Act, Pub. L. 107-56 (Oct. 26, 2001)—amends the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq* (the "FISA"). Section 215 permits the Government to apply to the FISC for a court order directing the production of "any tangible things" for certain authorized investigations. 50 U.S.C. § 1861(a)(1). In order to issue such an order, the FISC must determine that there are reasonable grounds to believe that: (1) the tangible things sought are relevant to an authorized national security investigation; (2) the investigation is being conducted under guidelines approved by the Attorney General under Executive Order 12333, as amended; and (3) if a U.S. person is the subject of the investigation, the investigation is not being conducted solely on the basis of First Amendment protected activities. *See* 50 U.S.C. § 1861. In addition, the FISC may

---

[1] In support of this motion, the Government is submitting an unclassified declaration from Mark A. Bradley, the Director of the Freedom of Information Act and Declassification Unit of the Office of Law and Policy in the National Security Division of the Department of Justice ("Bradley Decl."); a classified declaration from Mr. Bradley and related exhibits ("Classified Bradley Decl."); the declaration of Vanessa R. Brinkmann, Counsel to the Initial Request Staff of the Office of Information Policy of the Department of Justice ("Brinkmann Decl."); the declaration of Paul P. Colborn, Special Counsel in the Office of Legal Counsel of the United States Department of Justice ("Colborn Decl."); and the declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division of the Federal Bureau of Investigation ("Hardy Decl."). In addition, the Government is submitting a declaration from Assistant U.S. Attorney Emily E. Daughtry attaching certain relevant exhibits ("Daughtry Decl."). Because the Classified Bradley Declaration contains information that cannot be disclosed on the public record, the Government is providing it for the Court's review *ex parte* and *in camera*. *See infra* at 16 n.6.

only require the production of records that can be obtained with a grand jury subpoena or any other court order directing the production of records or tangible things.  *See* 50 U.S.C. § 1861(c)(2)(D).

As initially enacted, Section 215 was set to expire on December 31, 2005.  Pub. L. 107-56, § 224.  Congress subsequently reauthorized Section 215 for limited periods of time on several occasions.  *See* 50 U.S.C. § 1861 note.  Most recently, on May 26, 2011, Congress reauthorized Section 215 until June 1, 2015.  *See* PATRIOT Sunsets Extension Act of 2011, § 2, Pub. L. No. 112-14, 125 Stat. 216 (May 26, 2011).

### B.    The ACLU's FOIA Request

On May 31, 2011, the ACLU submitted a FOIA request to certain components of the Department of Justice—the National Security Division ("NSD"), the Office of Information Policy ("OIP"), the Office of Legal Counsel ("OLC"), and the FBI—seeking "any and all records concerning the Government's interpretation or use of Section 215 . . ."  ACLU Complaint ("Compl.") ¶¶ 22, 29-37.  On August 22, 2011, NSD released three documents in response to the ACLU requests and stated that it was withholding additional documents in full.  Unclassified Bradley Declaration ¶ 5.

The ACLU filed its complaint in this action on October 26, 2011.  Compl. ¶¶38-44.[2]

---

[2]  The ACLU complaint was related to a complaint the New York Times had filed on October 5, 2011.  *See New York Times Co. v. United States Department of Justice*, 11 Civ. 6990 (WHP).  The New York Times' FOIA request sought a single record:  a report provided to Congress by the Attorney General and the Director of National Intelligence on February 2, 2011 pertaining to certain "intelligence collection authorities."  New York Times Complaint at ¶ 2 (quoting FOIA request).  Because the record sought by the New York Times was also responsive to the ACLU's FOIA request, the parties suggested to the Court that they proceed with dispositive motion briefing with respect to that single record.  The Court granted the Government's motion for summary judgment in the *New York Times* case and for partial

C.      **The ACLU's Narrowing of the FOIA Request**

1.      **The December 9, 2011 Stipulation**

Since the filing of the ACLU's complaint, the parties have substantially narrowed the

scope of the dispute.  First, on December 9, 2011, the Court entered the parties' stipulation

narrowing the scope of the ACLU's FOIA request.  Pursuant to the stipulation, the parties have

agreed to limit the ACLU's FOIA request to final, non-draft versions of documents

memorializing the following:

- Legal opinions or memoranda concerning or interpreting Section 215;
- Guidelines for government personnel regarding the use of Section  215;
- Reports provided to Congress by the FBI or DOJ concerning or memorializing the Executive Branch's interpretation or use of Section 215;
- Rulings, opinions or memoranda of the FISC concerning or interpreting Section 215; and
- Legal opinions or memoranda concerning or interpreting rulings, opinions, or memoranda of the FISC interpreting Section 215.

Stipulation, approved by the Court on December 9, 2011, ¶ 1(a)-(e) (the "December 2011

Stipulation") (attached as Exhibit 1 to Declaration of Emily E. Daughtry, dated February 8,

2013).  In addition, the parties have stipulated that: (a) acquisition applications or supporting

documentation submitted to the FISC are excluded from the FOIA Request; (b) electronic mail

messages are excluded from the FOIA Request; (c) with respect to OLC, the FOIA request is

limited to OLC legal opinions and memoranda concerning or interpreting Section 215; and

finally (d) records located within or in the possession of DOJ's Office of Public Affairs are

excluded from the request.  *See* December 2011 Stipulation ¶¶ 2-6 (Daughtry Decl., Ex. 1).

---

summary judgment in this case regarding that record.  *See New York Times v. DOJ*, 872 F. Supp.
2d 309 (S.D.N.Y. 2012).

After the December 2011 Stipulation was entered by the Court, the other three DOJ components finalized their responses to the ACLU.  On March 15, 2012, OIP informed the ACLU it had found sixteen documents responsive to ACLU's FOIA request.  Of those sixteen documents, twelve were released in full, and four were withheld in full.  Brinkman Decl. ¶ 7.  Also on March 15, 2012, OLC informed the ACLU that it had identified and was withholding in full two documents.  Colborn Decl. ¶ 8.  Lastly, on March 15, 2012, April 15, 2012, and May 15, 2012, the FBI released responsive material to the ACLU.  On August 20, 2012, the FBI made a final supplemental release.  Hardy Decl. ¶ 25.

### 2.    The December 13, 2012 Email

On December 13, 2012, after an exchange of information and discussions between the parties, the ACLU informed the Government that it was further narrowing its challenge to the Government's withholding of the following documents that the Government had previously identified as responsive to the FOIA request:

FBI Documents:    Six documents consisting primarily of forms and procedures;

NSD Documents:    All documents relating to four categories—

1.  Congressional reporting and supporting documentation;
2.  Materials submitted to, or opinions and/or orders issued by, the FISC ("FISC materials");
3.  Internal Executive Branch communications and analysis;
4.  Guidelines and training documents.

OIP Document:    One document identified as a Classified letter from Ronald Weich, Associate Attorney General, Office of Legislative Affairs, to Representative John Conyers, Chairman of House Judiciary Committee regarding the reauthorization of several sections of the USA PATRIOT Act (the "Weich Letter");

OLC Document:    One document identified as a legal memorandum prepared by OLC providing legal advice to the Department of Commerce regarding the

interaction between disclosure provisions of the USA PATRIOT Act, and prohibitions on disclosure in the Census Act, 13 U.S.C. §§ 8, 9, 214 (2006) (the "OLC Census Memorandum").

Email from Alexander Abdo, Esq. to Assistant U.S. Attorneys John Clopper and Emily E. Daughtry, dated December 13, 2013 ("ACLU December 2012 Email") (Daughtry Decl., Ex. 2); *see also* Letter, dated October 1, 2012, from Assistant U.S. Attorney John Clopper to Stuart Youngs, Esq., at 1, and attachments (Daughtry Decl., Ex 3); Email, dated July 25, 2012, from Assistant U.S. Attorney John Clopper to Stuart Youngs, Esq. (Daughtry Decl., Ex. 4).

In its December 2012 email, the ACLU further narrowed it request to include only "any information in the [listed documents] that would reveal either (a) the types of information or 'tangible things' that the government believes Section 215 authorizes it to collect, or (b) the nature of the relevance standard that the government or the FISA Court uses to determine whether an application under Section 215 is valid." ACLU December 2012 Email, fifth paragraph (Daughtry Decl., Ex. 2). The ACLU further stated: "We do *not* challenge, however, the withholding of information (even if it satisfies either of the criteria above) that would disclose the targets of a Section 215 order or the type of information that the government has sought or is seeking in a particular Section 215 application. Plaintiffs also do not seek information about the specific technologies that the government uses to collect the types of information it believes Section 215 authorizes it to collect," but do seek disclosure of "the types of information that may be collected under Section 215" to the extent they "can be segregated from the particular investigation discussed in the document." ACLU December 2012 Email, sixth and seventh paragraphs (Daughtry Decl., Ex. 2). The ACLU also clarified that it does not seek disclosure of any names or personally identifying information, withheld pursuant to Exemptions 6 or 7(c), in any of the documents at issue in this case. *See* Email, dated January 24,

2013, from Alexander Abdo, Esq. to Assistant U.S. Attorney Emily E. Daughtry (Daughtry

Decl., Ex. 5).

### D.  The Government's February 8, 2013 Release of Information

On February 8, 2013, NSD released 35 responsive documents, consisting of redacted

versions of reports to Congress from the Department of Justice.  *See* Unclassified Bradley Decl.

¶ 10 and Ex. A.  These documents were drawn from the first category of NSD documents—

Congressional reporting and supporting documentation—and had previously been withheld in

full by NSD.  The reports encompass the time period from April 2006 to April 2012, and include

reports required to be made to Congress periodically pursuant to the Intelligence Reform and

Terrorism Prevention Act of 2004, 50 U.S.C. § 403, *et seq*., and the FISA.  *Id*. Ex. A.  The

information in the redacted portions of the reports is being withheld pursuant to Exemption 1.

*Id.* ¶ 10.

### E.  Responsive Records at Issue and FOIA Exemptions Claimed

Based on the documents identified by the ACLU in its December 2012 email, there are

six FBI documents, one OLC document, one OIP document, and four categories of NSD

documents at issue in this case.

Specifically, the FBI is withholding its six records in full pursuant to FOIA Exemption

(b)(7)(e) as law enforcement guidelines or techniques.  The records include instructions and

internal FBI forms used in completing a business records request, a form outlining procedures

for obtaining a business records order, and two memoranda on FBI policy and procedures for

obtaining and/or securing electronic records.  *See* Hardy Decl., Ex. G.  The FBI is also

withholding these last two memoranda in full pursuant to FOIA Exemption 1 because they are

classified.  *Id.*

In addition, OLC is withholding the OLC Census Memorandum pursuant to the deliberative process privilege under Exemption 5.  Colborn Decl. ¶¶ 13-21.

OIP is withholding the Weich Letter pursuant to Exemption 1 as classified.  Brinkmann Decl. ¶ 9.  However, the basis for withholding this letter pursuant to Exemption 1 is set forth in the Unclassified and Classified Bradley Declarations.  *Id.*, Unclassified Bradley Decl. ¶ 9, 11-13, Classified Bradley Decl.

NSD is withholding in full or in part, pursuant to Exemptions 1 and/or 3, documents that fall into four categories:  9 documents reflecting internal Executive Branch communications and analyses, 40 documents reflecting internal guidelines or training documents, 59 documents reflecting congressional reporting and supporting documentation (35 of which have been released in part, and another 24 of which have been withheld in full), and an unspecified number of records reflecting materials submitted to, and/or orders and opinions issued by, the FISC ("FISC Materials").  The precise number of FISC Materials that have been withheld in full pursuant to Exemptions 1 and 3, as well as descriptions of these records, have been provided to the Court in a classified Vaughn Index, which is attached to the Classified Bradley Declaration.  Because this information is itself classified, the Government has provided it to the Court *ex parte* and *in camera*.

## ARGUMENT

**I.     Governing FOIA Standards**

As the Court noted in its *New York Times* decision, FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *See New York Times*, 872 F. Supp. 2d at 314 (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *John Doe Agency v.*

*John Doe Corp.*, 493 U.S. 146, 152 (1989) (same).  Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982), and mandates that records need not be disclosed if "the documents fall within [the statute's] enumerated exemptions," *New York Times,* 872 F. Supp. 2d at 314 (quoting *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

Most FOIA actions are resolved through summary judgment.  *See, e.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *New York Times Company v. DOJ*, -- F. Supp.2d --, 11 Civ. 9336 (CM), 2013 WL 50209, at *35  (S.D.N.Y. Jan. 3, 2013).  Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA case, "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden."  *Carney*, 19 F.3d at 812 (footnote omitted).  In that regard, the agency's declarations in support of its determinations are "accorded a presumption of good faith."  *Id*. (quotation marks omitted).[3]

Moreover, courts must accord "substantial weight" to agencies' affidavits regarding national security.  *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009); *accord ACLU v. DOJ*, 681 F.3d 61, 69 (2d Cir. 2012); *Diamond v. FBI*, 707 F.2d 75, 79 (2d Cir. 1983); *Wolf v. CIA*, 473

---

[3] Because ACLU has not challenged the adequacy of the Government's searches for responsive documents, the Government does not address the searches' adequacy in this memorandum.  Further, because agency affidavits alone will support a grant of summary judgment in a FOIA case, consistent with the general practice in this Circuit, the Government has not submitted a Local Rule 56.1 statement.  *See, e.g., New York Times*, 872 F. Supp. 2d at 314; *see also Ferguson v. FBI*, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995) (noting "the general rule in this Circuit"), *aff 'd*, 83 F.3d 41 (2d Cir. 1996).

F.3d 370, 374 (D.C. Cir. 2007).  In FOIA cases involving matters of national security, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency."  *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980); *see also ACLU*, 681 F.3d at 70-71 ("Recognizing the relative competencies of the executive and the judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by government's intelligence agencies regarding whether disclosure of the [withheld information] would pose a threat to national security." (quoting *Wilner*, 592 F.3d at 76) (internal quotation marks omitted)); *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) (courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review"); *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) ("courts have little expertise in either international diplomacy or counterintelligence operations"); *accord Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).  Rather, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.'"  *New York Times*, 872 F. Supp. 2d at 315 (quoting *Wilner*, 592 F.3d at 73); *accord ACLU*, 681 F.3d at 69; *Wolf*, 473 F.3d at 374-75.

Applying this deferential standard, the Government's declarations amply demonstrate that it has properly withheld responsive records and information pursuant to FOIA's Exemptions 1, 3, 5 and 7(E).  As set forth in more detail below, the Government is therefore entitled to summary judgment dismissing the remainder of the ACLU's complaint.

## II.    The Defendants Have Properly Withheld Records Under FOIA Exemption 1

Exemption 1 provides that FOIA's disclosure mandate does not apply to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in

the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  As noted above, under Exemption 1, courts owe deference to an agency affidavit concerning national security matters. *Wilner*, 592 F.3d at 73. "[L]ittle proof or explanation is required beyond a plausible assertion that information is properly classified."  *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).  Indeed, in national security cases, "'the government's burden is a light one,'" *New York Times*, 872 F. Supp. 2d at 315 (quoting *ACLU v. DOD*, 628 F.3d at 624), and "'an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible,'" *id.* at 315 (quoting *Wilner*, 592 F.3d at 73).  *See also Amnesty Int'l v. CIA*, 728 F. Supp. 2d 479, 508 (S.D.N.Y. 2010) (explaining decision to "defer[] to [] executive declarations predicting harm to the national security").

The current standard for classification is set forth in Executive Order ("E.O.") 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526").  Section 1.1 of the Executive Order lists four requirements for the classification of national security information: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [] under the control of the United States Government;" (3) the information must fall within one or more of eight protected categories of information listed in section 1.4 of the E.O.; and (4) an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage."  E.O. 13526 § 1.1(a)(1)-(4).

Here, the ACLU seeks classified records maintained by NSD, FBI, and OIP.  The classified records withheld by NSD in this case, either in full or in part, broadly fall into four categories:  59 documents provided to the Congress, including to the House Permanent Select

Committee on Intelligence ("HPSCI") and the Senate Select Committee on Intelligence ("SSCI");  9 documents consisting of internal Executive Branch communications and analysis; 40 documents consisting of internal Executive Branch guidelines and training documents; and materials submitted to, or opinions and/or orders issued by, the FISC.  Bradley Decl. ¶ 8.  In addition, the FBI has withheld in full two classified, intra-office memoranda:  one on procedures for obtaining electronic records and one regarding the FBI's policy on securing electronic records.  *See* Hardy Decl. ¶ 37 and Ex. G.  Lastly, OIP has withheld in full one classified letter from Associate Attorney General Ronald Weich to Representative John Conyers, then-Chairman of the House Judiciary Committee.  Brinkmann Decl. ¶ 9.

The withheld classified records satisfy all the criteria for withholding under Exemption 1. First, an original classification authority has classified all of the withheld materials at issue.  *See* Unclassified Bradley Decl. ¶¶ 2, 11; Classified Bradley Decl. and accompanying exhibits; Hardy Decl. ¶¶ 33, 39.  Second, the information is "owned by, produced by or for, or under the control of the United States Government."  E.O. 13526; Unclassified Bradley Decl. ¶ 13; Hardy Decl. ¶ 33.  Third, the withheld classified records contain information regarding "intelligence activities (including covert action), intelligence sources or methods, or cryptology," one of the eight protected categories of information set forth in Section 1.4 of Executive Order 13526.  E.O. 13526, § 1.4(c); Unclassified Bradley Decl. ¶ 11; Hardy Decl. ¶ 34.  In addition, certain of the withheld NSD records also contain information regarding "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans or protection services relating to national security," another of the eight protected categories, set forth in Section 1.4(g) of E.O. 13526. Unclassified Bradley Decl. ¶ 11.

- 12 -

Finally, NSD and FBI have submitted declarations and Vaughn indices in support of this

motion, explaining that the unauthorized disclosure of the withheld information, classified at the

SECRET and TOP SECRET levels, could be expected to cause serious or exceptionally grave

damage to the national security of the United States.  *See* Unclassified Bradley Decl. ¶ 12;

Classified Bradley Decl. and Exhibits; Hardy Decl. ¶ 39.  Furthermore, the withheld NSD

documents and the one OIP record (i.e., the Weich letter)[4] – whether they be notifications to

Congress, internal memoranda, training materials, or pleadings submitted to the FISC – contain

"specific descriptions of the manner and means by which the United States Government acquires

tangible things for certain authorized investigations pursuant to Section 215," the disclosure of

which "would provide our adversaries and foreign intelligence targets with insight into the

United States Government's foreign intelligence collection capabilities, which in turn could be

used to develop the means to degrade and evade those collection capabilities."  Unclassified

Bradley Decl. ¶ 12.  Some of these documents relate to the same intelligence collection program

that was described by the report that was at issue in the Court's *New York Times* decision.  As

with respect to that document, the Court should again defer to the Government's assertion of the

harm to national security that would result from disclosing the withheld classified information.

*See New York Times*, 872 F. Supp. 2d at 316 (agreeing that "disclosing this information could

enable America's adversaries to develop means to degrade and evade the nation's foreign

intelligence collection capabilities," citing Declaration of Mark Bradley, dated February 27,

2012.).  Similarly, the withheld FBI memoranda contain "foreign intelligence methods and

---

[4] As explained in the Brinkmann Declaration, because of the national security interest in
this document, OIP coordinated with NSD on its potential disclosure, and ultimately withheld the
document in full at the request of NSD.  The Government's basis for withholding the Weich
Letter as classified pursuant to Exemption 1 is contained in the Unclassified and Classified
Bradley Declarations.  *See* Unclassified Bradley Decl. ¶¶ 11-13; Classified Bradley Declaration.

procedures used in obtaining business records orders," the disclosure of which "would reveal important information that is used in obtaining these orders," and "disrupt current and future foreign intelligence investigations."  Hardy Decl. ¶ 37.

Where, as here, the Government has satisfied the conditions for classification under E.O. 13526, such classified information is exempt from disclosure.  *See, e.g., New York Times,* 872 F. Supp. 2d at 316; *New York Times*, -- F. Supp. 2d --, 11 Civ. 9336 (CM), 2013  WL 50209, at *18-19; *ACLU v. DOD*, 752 F. Supp. 2d 361, 371 (S.D.N.Y. 2010) (records properly withheld under Exemption 1 where Government demonstrated withheld information logically falls within Exemption 1); *Hogan v. Huff*, 00 Civ. 6753 (VM), 2002 WL 1359722, at *8 (S.D.N.Y. June 21, 2002) (information properly withheld under Exemption 1 where disclosure of the information "would potentially harm the agency by exposing its methods"); *Wolf v. CIA*, 357 F. Supp. 2d 112, 116 (D.D.C. 2004) (classification warranted where "disclosure could reveal general CIA methods of information gathering").  As the Government has described the justification for nondisclosure with reasonably specific detail and demonstrated that the information withheld logically and plausibly falls within Exemption 1, the Court should uphold the Government's withholding of the classified information at issue in this case.  *Wilner*, 592 F.3d at 73.

## III.   The Defendants Have Properly Withheld Records Under FOIA Exemption 3

The Government has also properly invoked Exemption 3, which applies to records that are "specifically exempted from disclosure" by other federal statutes "if that statute—establishes particular criteria for withholding or refers to the particular types of material to be withheld." 5 U.S.C. § 552(b)(3).  *See generally New York Times*, 872 F. Supp. 2d at 316 (applying Exemption 3).  In enacting FOIA, Congress included Exemption 3 to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such

statutes within FOIA's exemptions. *See Baldrige v. Shapiro*, 455 U.S. at 352-53; *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998). Under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72; *Fitzgibbon v. CIA*, 911 F.2d at 761-62.

In examining an Exemption 3 claim, a court determines whether the claimed statute is an exemption statute under FOIA and whether the withheld material satisfies the criteria for the exemption statute. *CIA v. Sims*, 471 U.S. 159, 167 (1985); *ACLU*, 681 F.3d at 72-73; *Wilner*, 592 F.3d at 72. Thus, a court should "'not closely scrutinize the contents of a withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute.'" *New York Times,* 872 F. Supp. 2d at 316 (quoting *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993). Moreover, to support its claim that information may be withheld pursuant to Exemption 3, the Government need not show that there would be any harm to national security from disclosure, only that the withheld information falls within the purview of the exemption statute. *See Larson*, 565 F.3d at 868.

In this case, Exemption 3 applies to certain documents withheld by NSD by virtue of Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i) (the "National Security Act").[5] Unclassified Bradley Decl. ¶ 15; Classified Bradley Decl. and accompanying materials. As Mr. Bradley explains in his public declaration, these materials are properly withheld under Exemption 3 because their release would reveal intelligence sources and methods. And, as Mr.

---

[5] This Court has recognized that the National Security Act qualifies as an Exemption 3 statute. *New York Times*, 872 F. Supp. 2d at 316-17.

Bradley also explains, the National Security Act protects intelligence sources and methods from unauthorized disclosure. *See* Unclassified Bradley Decl. ¶ 15.

The Classified Bradley Declaration, and accompanying materials, provide further information regarding which documents are withheld pursuant to Exemption 3, as well as the intelligence sources and methods discussed in the withheld documents. Because the specific information relating to these documents and the intelligence sources and methods them is itself classified, it cannot be disclosed on the public record. *See* Unclassified Bradley Decl. ¶ 16. The information is accordingly being provided to the Court *ex parte* and *in camera*.[6]

As the Court reasoned in *New York Times*, "it is principally the duty of the Executive Branch, 'not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the [Government's] intelligence-gathering process.'" *New York Times*, 872 F. Supp. 2d at 317 (quoting *Sims*, 471 U.S. at 180). The *Sims* Court observed that, in the National Security Act, Congress did not limit the scope of "intelligence sources and methods" in any way. 471 U.S. at 169. Rather, it "simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the [responsible agency] needs to perform its statutory duties with respect to [the relevant intelligence activities]." *Id.* at 169-170. Applying this deferential standard, the Government's submission establishes that the documents are

---

[6] *In camera*, *ex parte* review of classified declarations in FOIA cases is appropriate where a more detailed public explanation cannot be provided without revealing the very information that is sought to be protected. *See, e.g., Amnesty Int'l USA*, 728 F. Supp. 2d at 507 (S.D.N.Y. 2010); *Krikorian v. Dep't of State*, 984 F.2d 461, 464-65 (D.C. Cir. 1993); *Maynard v. CIA*, 986 F.2d 547, 557 (1st Cir. 1993); *Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C. Cir. 1979); *cf. In re New York Times Co.*, 577 F.3d 401, 410 n. 4 (2d Cir. 2009) (noting in proceeding to unseal wiretap and search warrant materials that although there are circumstances in which a nonpublic proceeding is appropriate, "courts seek to balance the need for transparency in the judiciary with the effective protection of sensitive information").

protected from disclosure under Exemption 3.  *See* Unclassified Bradley Decl. ¶ 15; Classified

Bradley Decl. and accompanying materials.

### IV.     The Office of Legal Counsel Properly Withheld the Census Memorandum Pursuant to Exemption 5

Pursuant to the deliberative process privilege under FOIA Exemption 5, OLC properly

withheld a legal memorandum, dated January 4, 2010, providing confidential legal advice to the

Department of Commerce regarding the interaction between the disclosure provisions in the

Patriot Act, as amended, and the prohibitions on disclosure in the Census Act, 13 U.S.C. §§ 8, 9,

214 (2006) (the "Census Memorandum").  *See* Colborn Decl ¶ 13.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would

not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  "By

this language, Congress intended to incorporate into the FOIA all the normal civil discovery

privileges."  *Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991); *accord Renegotiation Bd. v.*

*Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  In enacting Exemption 5, "[o]ne

privilege that Congress specifically had in mind was the 'deliberative process' or 'executive'

privilege, which protects the decisionmaking processes of the executive branch in order to

safeguard the quality and integrity of governmental decisions."  *Hopkins*, 929 F.2d at 84; *accord*

H.R. Rep. No. 89-1497, at 10 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2427 ("a full and

frank exchange of opinions would be impossible if all internal communications were made

public," and "advice . . . and the exchange of ideas among agency personnel would not be

completely frank if they were forced to 'operate in a fishbowl' "); *Klamath*, 532 U.S. at 8–9

("officials will not communicate candidly among themselves if each remark is a potential item of

discovery and front page news").  Documents covered by Exemption 5 include those "reflecting

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  Legal advice, no less than other types of advisory opinions, "fits exactly within the deliberative process rationale for Exemption 5." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980); *accord Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 356–57 (2d Cir. 2005).

An agency record must satisfy two criteria to qualify for the deliberative process privilege:  it "must be both 'predecisional' and 'deliberative.'" *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d. 1999) (citations omitted); *accord Tigue v. DOJ*, 312 F.3d 70, 76–77 (2d Cir. 2002); *Hopkins*, 929 F.2d at 84.  A document is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Brennan Center v. DOJ*, 697 F.3d 184, 194 (2d Cir. 2012) (quoting *La Raza*, 411 F.3d 350, 356 (2d. Cir. 2005)).  While a document is predecisional if it "precedes, in temporal sequence, the 'decision' to which it relates," *Grand Cent. P'ship*, 166 F.3d at 482, the government need not "identify a specific decision" made by the agency to establish the predecisional nature of a particular record. *Sears*, 421 U.S. at 153 n.18; *accord Tigue*, 312 F.3d at 80.  Rather, so long as the document "was prepared to assist [agency] decisionmaking on a specific issue," it is predecisional. *Tigue*, 312 F.3d at 80.  "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Sears*, 421 U.S. at 153 n.18.

A document is deliberative when it is "actually . . . related to the process by which policies are formulated." *Brennan Center*, 697 F.3d at 194 (quoting *La Raza*, 411 F.3d at 356). In determining whether a document is deliberative, courts inquire as to whether it "formed an important, if not essential, link in [the agency's] consultative process," *Grand Cent. P'ship*, 166

- 18 -

F.3d at 483, whether it reflects the opinions of the author rather than the policy of the agency, *id.* at 483; *Hopkins*, 929 F.2d at 84, and whether it might "reflect inaccurately upon or prematurely disclose the views of [the agency]," *Grand Cent. P'ship*, 166 F.3d at 483; *see also Brennan Center* 697 F.3d at 202.  Predecisional deliberative documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Tigue*, 312 F.3d at 80 (internal quotation marks omitted); *Grand Cent. P'ship*, 166 F.3d at 482.  Thus, the privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Hopkins*, 929 F.2d at 84–85 (quoting *Sears*, 421 U.S. at 150).

The Census Memorandum, which provides confidential legal advice, is both predecisional and deliberative.  As explained in the Colborn Declaration, it is predecisional "because it was prepared by OLC to aid the Department of Commerce in considering what actions to take, consistent with the agency's legal obligations, with respect to potential disclosure of census information to federal law enforcement or national security officers."  Colborn Decl. ¶ 15.  Furthermore, the Census Memorandum is deliberative "because it constitutes legal advice from OLC to the Department of Commerce for use in the agency's deliberations regarding how to comply with its legal obligations regarding the confidentiality of census information." *Id.* Any policy decision, to the extent there exists such a decision on this issue, would have been made by the Department of Commerce as "OLC does not purport to make policy decisions, and in fact lacks the authority to make such decisions."  Colborn Decl. ¶ 2.  Protecting the confidentiality of OLC memoranda such as the Census Memorandum "is essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined

candidly, effectively, and in writing," and also to ensure that Executive Branch officials, such as those in the Department of Commerce, "continue to rely on frank legal advice from OLC on sensitive matters."  Colborn Decl. ¶ 16.  *Cf. Brennan Center*, 697 F.3d at 194 ("[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process") (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)).

The Second Circuit has recently discussed two situations where the protections of the deliberative process privilege under Exemption 5 do not apply: first, where a document constitutes the decisionmaking agency's "effective law and policy" and has "operative effect," thereby constituting the "working law" of an agency (and thus, by definition, is not predecisional), and second, where the decisionmaker expressly adopts the conclusion and rationale of predecisional advice as the basis for the final policy decision.  *See Brennan Center*, 697 F.3d at 195, 198, 201.  Neither circumstance is applicable here: the Census Memorandum does not constitute the "working law" of an agency; nor has it been expressly adopted or incorporated by reference by a decisionmaker (here, the Commerce Department) as the basis for an agency decision.  *Cf. id.*  With respect to "working law," as noted in a recent decision in this District, "the Second Circuit . . . [has] held that this exception is inapplicable in the context of an advisory OLC memorandum."  *New York Times Co. v. DOJ*, No. 12 Civ. 3215 (JSR), 2013 WL 174222, at * 5 (S.D.N.Y. Jan. 7, 2013).  Pointing out that "the Second Circuit noted that OLC lacks the authority to make policy decisions," the district court found in that decision that an OLC opinion regarding the President's power to make recess appointments was not "working law"; OLC memoranda "inform the decisionmaking of Executive Branch officials," and therefore do not constitute "working law" or the agency's "effective law and policy."  *Id.*

- 20 -

(quoting *Brennan Center*, 697 F.3d at 203); *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 75 (D.D.C. 2008) ("If OLC provides legal advice as part of a decision-making process, this legal advice is protected under the deliberative process privilege.").

Furthermore, the Census Memorandum "has never been publicly adopted or incorporated by reference by any policymaker as a basis for a policy decision."  Colborn Decl. ¶ 19.  The Second Circuit has emphasized that an OLC memorandum must be *expressly* adopted, as evidenced by some considered public reference to the memorandum demonstrating reliance on both the conclusion and the reasoning of the document as the basis for agency policy, in order to overcome the deliberative process privilege.  *See Brennan Center*, 697 F.3d at 204-205 (holding that one OLC memorandum was expressly adopted on basis of two public references to document in explaining policy, but two draft OLC memoranda were not expressly adopted in absence of any specific public reference to them by agencies); *accord Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005) (finding no express adoption where there was no evidence that agency had adopted reasoning of memo at issue); *La Raza*, 411 F.3d. at 357-358 (finding express adoption where officials made "repeated references" to an OLC memo to "justify and explain" a policy).

Where there is no evidence of express adoption of both the conclusion and the reasoning of an OLC memorandum as a basis for agency policy, it remains protected from disclosure under the deliberative process privilege.  *See, e.g.,  Brennan Center*, 697 F.3d at 207; *Brinton*, 636 F.2d at 605; *New York Times Company v. DOJ*, 2013 WL 174222, at * 8; *New York Times,* -- F. Supp.2d --, 11 Civ. 9336 (CM), 2013 WL 50209 at * 32- 35  (S.D.N.Y. Jan. 3, 2013); *Citizens for Responsibility and Ethics in Washington v. Office of Adm'n*, 249 F.R.D. 1, 8 (D.D.C. 2008). Here, there is no evidence of adoption—express or otherwise— of even the conclusion, much less the reasoning, of the Census Memorandum by the Department of Commerce or any other

agency.  Accordingly, the Census Memorandum is properly withheld from disclosure pursuant to the deliberative process privilege under Exemption 5. [7]

## V.   The FBI Has Properly Withheld Records Under FOIA Exemption 7(E)

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . [1] would disclose techniques and procedures for law enforcement investigations or prosecutions, or [2] would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes as well as techniques and procedures used to investigate crimes after they have been committed.  *See, e.g., Allard K. Lowenstein Intern. Human Rights Project v. Dep't of Homeland and Security,* 626 F.3d 678, 681 (2d Cir. 2010); *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and

---

[7] As Mr. Colborn explains in his declaration, the Census Memorandum was shared with the U.S. Senate Select Committee on Intelligence in April 2011.  Colborn Decl. ¶ 17 & Exhibit D. In a letter accompanying the memorandum, the Department of Justice "asked that 'the Committee maintain the confidentiality of this opinion, which provided confidential legal advice to a client and has not been released publicly.'"  *Id.*  The Government does not now assert that the Census Memorandum is protected by the attorney-client privilege because the attorney-client privilege can potentially be waived by a disclosure outside the attorney-client relationship.  Disclosure to a congressional committee of a document protected by the deliberative process privilege does not waive *that* privilege, however.  *See, e.g.*, *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001).  This is particularly true when, as here, the disclosure is accompanied by a request that the congressional committee preserve the document's confidentiality. *Id.*

sources of information available to investigators were protected by Exemption 7(E)).  *See also*

*Milner v. Dep't of Navy*, --- U.S. ----, 131 S. Ct. 1259, 1272-73 (2011) (Alito, J., concurring)

(stating that "Particularly in recent years, terrorism prevention and national security measures

have been recognized as vital to effective law enforcement efforts in our Nation[;]" also stating

that "'law enforcement purposes'" under FOIA Exemption 7 "involve more than just

investigation and prosecution," and that "security measures are critical to effective law

enforcement as we know it.").

The FBI has asserted Exemption 7(E) to protect certain confidential FBI investigative

techniques and procedures used by FBI agents and support personnel in obtaining Section 215

business records orders.  *See* Hardy Decl. ¶¶ 45-47.  Although Mr. Hardy discusses the harm that

could reasonably be expected to flow from public release of this information, *id.*, such

techniques and procedures are categorically protected by the Exemption, without any need for

inquiry into the harm that would result from their disclosure. *See Lowenstein*, 626 F.3d at 681;

*see also ACLU Found. v. Dep't of Justice*, 833 F. Supp. 399, 407 (S.D.N.Y. 1993).

The records at issue easily meet the other requirement of Exemption 7(E)—that they

were "compiled for law enforcement purposes" within the meaning of FOIA. The FBI is a law

enforcement agency, and ACLU requested only information related to Section 215, a tool the

FBI has at its disposal to obtain business record information pursuant to a court order and as part

of authorized national security investigations.  Hardy Decl. ¶ 43.  Accordingly, the records

regarding use of Section 215 by the FBI were compiled for law enforcement purposes.  *See*

*American Civil Liberties Union v. Office of Director of Nat. Intelligence,* No. 10 Civ. 4419

(RJS), 2012 WL 1117114, at *5 (S.D.N.Y. March 30, 2012) (upholding Exemption 7(E)

withholding for FBI "internal e-mails, training slides, legal opinions and interpretations of

techniques, Standard Operating Procedures, electronic communications concerning

investigations, case write-ups, and miscellaneous reports").

Accordingly, the Court should grant summary judgment for the FBI as to its Exemption

7(E) withholdings.

## VI.    The Defendants Have Produced Any Reasonably Segregable
##         Portion of the Responsive Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt under this

subsection." 5 U.S.C. § 552(b)(9). This provision does not require disclosure of records in which

the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v.*

*CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable

information exists because "the non-exempt information would produce only incomplete,

fragmented, unintelligible sentences composed of isolated, meaningless words."); *see also*

*Klamath Siskiyou Wildlands Ctr. v. Dep't of Interior*, Civ. No. 07-325-CL, 2007 WL 4180685, at

*8 (D. Or. Nov. 21, 2007) ("In cases where nonexempt material is inextricably intertwined with

exempt material and the deletion of the exempt material would leave only meaningless words

and phrases, the entire document is exempt.").  The Government has reviewed the withheld

material and has disclosed all non-exempt information that reasonably could be disclosed.  *See*

Unclassified Bradley Decl. ¶ 14, Colborn Decl. ¶ 15; Hardy Decl. ¶ 48.  Indeed, after an

extensive and rigorous segregability review, the Government released in part 35 documents that

it had previously withheld in full.  *See* Unclassified Bradley Decl. ¶ 10.  Accordingly, the

Department of Justice has produced all "reasonably segregable portion[s]" of the responsive

records. 5 U.S.C. § 552(b).

## <u>CONCLUSION</u>

For the foregoing reasons, the Government's motion for summary judgment dismissing the remaining claims in *American Civil Liberties Union v. Federal Bureau of Investigation*, 11 Civ. 7562 (WHP), should be granted.

Dated:    New York, New York
             February 8, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    ___/s/ John Clopper_____
JOHN D. CLOPPER
EMILY E. DAUGHTRY
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2716 (Clopper)
                 (212) 637-2777 (Daughtry)
Facsimile: (212) 637-0033
john.clopper@usdoj.gov
emily.daughtry@usdoj.gov