UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:11-cv-07562 (WHP) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1) I am the Counsel to the Initial Request (IR) Staff of the Office of Information Policy (OIP), United States Department of Justice. In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests processed by OIP. The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six Senior Leadership Offices of the Department of Justice; specifically, the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs. The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the Senior Leadership Offices and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

2)  I make the statements herein on the basis of personal knowledge, as well as on

information acquired by me in the course of performing my official duties.

<center>Plaintiff's FOIA Request</center>

3)  By letter dated May 31, 2011, Alexander Abdo, on behalf of plaintiff American Civil

Liberties Union Foundation, submitted a FOIA request addressed to various Department of

Justice components, including the Office of Information Policy.  Mr. Abdo's FOIA request

sought records drafted, finalized, or issued after March 9, 2006, "concerning the government's

interpretation or use of Section 215" of the USA PATRIOT Act.  (A copy of plaintiff's May 31,

2011 letter is attached hereto as Exhibit A.)

4)  OIP received plaintiff's FOIA request on May 31, 2011, and subsequently initiated

records searches on behalf of OAG, ODAG, OASG, OLA, and OLP.

<center>OIP Responses to Plaintiff's FOIA Request</center>

5)  By letter dated June 9, 2011, OIP acknowledged receipt of plaintiff's request on

behalf of OAG, ODAG, OASG, OLA, and OLP.  (A copy of OIP's letter dated June 9, 2011 to

plaintiff is attached hereto as Exhibit B.)

6)  By letter dated June 22, 2011, OIP provided an interim response to plaintiff on behalf

of OLP, advising that the records search in OLP was complete, and no responsive records had

been located in that Office.  OIP further advised that it was continuing to process plaintiff's

request on behalf of OAG, ODAG, OASG, and OLA.  (A copy of OIP's letter dated June 22,

2011 to plaintiff is attached hereto as Exhibit C.)

7)  By letter dated March 15, 2012, OIP provided a final response to plaintiff on behalf of

OAG, ODAG, OASG and OLA, advising that records searches were complete in those Offices,

as well as in the Departmental Executive Secretariat, which is the official records repository for

OAG, ODAG, and OASG, and maintains certain OLA records.  OIP's March 15, 2012 letter

further advised plaintiff that the National Security Division (NSD) had separately referred

material to OIP for processing and that a search had also been conducted of the records indices,

which supplement the electronic database of the Departmental Executive Secretariat and list file

folder titles, arranged according to subject, for the records of former OAG, ODAG, and OASG

staff.  OIP's March 15, 2012 letter advised plaintiff that a total of sixteen records, totaling 262

pages, were located that were responsive to plaintiff's request.  Of these records, OIP withheld

four documents, totaling ten pages, in full from plaintiff pursuant to Exemptions 1 and 5 of the

FOIA, 5 U.S.C. § 552(b)(1), (b)(5). The remaining twelve documents, totaling 252 pages, were

either released in full, determined to be duplicative of material previously withheld by NSD, or

were referred to  the Department's Offices of Legal Counsel (OLC) and Inspector General (OIG)

for processing and final response to plaintiff.  (A copy of OIP's March 15, 2012 response is

attached hereto as Exhibit D.)

    8)  In order to narrow the issues before the Court, a draft *Vaughn* Index was provided to

plaintiff, through counsel, on October 1, 2012.  (A copy of OIP's draft *Vaughn* index is attached

hereto as Exhibit E.)

    9)  Upon review of OIP's draft *Vaughn* Index, by e-mail to Department Counsel dated

December 13, 2012, plaintiff advised that it would only be challenging OIP's withholding of one

document: a two-page, classified letter dated December 17, 2009 from former OLA Assistant

Attorney General Ronald Weich to Representative John Conyers, then-Chairman of the House

Judiciary Committee.  Mr. Weich's letter was in response to a letter dated October 5, 2009, from

Representative Conyers, Representative Jerrold Nadler, and Representative Bobby Scott,

regarding the reauthorization of several sections of the USA PATRIOT Act (Document No. 1 in

OIP's draft *Vaughn* Index). Due to the national security interest in this document, OIP

coordinated with NSD on its potential disclosure, and subsequently withheld the document in full

at the request of NSD pursuant to Exemption 1 of the FOIA, which protects information properly

classified in the interest of national security pursuant to Section 1.4(c) of Executive Order 13526.

The basis for withholding OIP Document No. 1 pursuant to FOIA Exemption 1 is separately

addressed in the February 8, 2013 Declaration of Mark Bradley, Director, Freedom of

Information Act and Declassification, NSD.

    I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann

Executed this 8th day of February, 2013.

# Exhibit A

AG| 2011-00790
DAG| 2011-00791
ASG| 2011-00792
OLA| 2011-00793
OLP| 2011-00794

American Civil Liberties Union
125 Broad Street
New York, NY 10004
Ph: (212) 549-2500

**ACLU National**
**Legal Department**

FOIA
SBT RECEIVED

MAY 3 1 2011

Office of Information Policy

# Fax

| To: | Carmen L. Mallon | From: | Alexander Abdo, ACLU |
|---|---|---|---|
| Fax: | 202-514-1009 | Pages: | 11 (excl. cover sheet) |
| Phone: | 212-284-7322 | Date: | May 31, 2011 |
| Re: | Freedom of Information Act Request | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

NATIONAL SECURITY PROJECT



**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
1/212 649 2900
WWW.ACLU.ORG

**OFFICERS AND DIRECTORS**
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

RICHARD ZACKS
TREASURER

FOIA/PA Mail Referral Unit
Department of Justice
LOC Building, Room 115
Washington, DC 20530-0001

Carmen L. Mallon
Chief of Staff
Office of Information Policy
Department of Justice
    Attn: FOI/PA Request
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530-0001

Office of Public Affairs
Department of Justice
950 Pennsylvania Avenue, NW., Room 1128
Washington DC 20530-0001

Federal Bureau of Investigation
Record/Information Dissemination Section
    Attn: FOI/PA Request
170 Marcel Drive
Winchester, VA 22602-4843

Elizabeth Farris,
Supervisory Paralegal
Office of Legal Counsel
Department of Justice
    Attn: FOI/PA Request
950 Pennsylvania Avenue, NW, Room 5515
Washington, DC 20530-0001

National Security Division
U.S. Department of Justice
    Attn: FOI/PA Request
950 Pennsylvania Avenue, N.W., Room 6150
Washington, D.C. 20530-0001

May 31, 2011

Dear Freedom of Information Officer,

This letter constitutes a request under the Freedom of
Information Act, 5 U.S.C. § 552 ("FOIA"). It is submitted on behalf of
the American Civil Liberties Union and the American Civil Liberties
Foundation (together, the "ACLU").[1]

## I. Background

This request pertains to the use by the Federal Bureau of
Investigation ("FBI") of the powers enumerated in Pub. L. 107-56, the
Uniting and Strengthening America by Providing Appropriate Tools
Required to Intercept and Obstruct Terrorism Act, commonly known as
the USA PATRIOT Act ("PATRIOT Act"). Specifically, this request
pertains to the FBI's use and interpretation of Section 215 of the
PATRIOT Act, as amended, which permits the government to apply for
court orders requiring the production of "tangible things."

## II. Records Requested

We request that you release to us any and all records concerning
the government's interpretation or use of Section 215, including but not
limited to: legal opinions or memoranda interpreting that provision;
guidelines informing government personnel how that provision can be
used; records containing statistics about the use or misuse of the
provision; reports provided by the executive branch to Congress relating
to the executive's interpretation, use, or misuse of the provision; forms
used by executive agencies in connection with the use of Section 215;
and legal papers filed by the government or any other party in the
Foreign Intelligence Surveillance Court, and opinions of that court,
pertaining to the interpretation, use, or proposed use of Section 215.

With respect to the records described above, we seek only those
records drafted, finalized, or issued after March 9, 2006. We do not ask
you to disclose the names or identities of those entities or individuals

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3)
organization that provides legal representation free of charge to individuals and
organizations in civil rights and civil liberties cases, and educates the public about the
civil liberties implications of pending and proposed state and federal legislation,
provides analyses of pending and proposed legislation, directly lobbies legislators, and
mobilizes its members to lobby their legislators. The American Civil Liberties Union is
a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the
public about the civil liberties implications of pending and proposed state and federal
legislation, provides analysis of pending and proposed legislation, directly lobbies
legislators, and mobilizes its members to lobby their legislators.

who have been served with Section 215 orders or the names or identities of those individuals or entities about whom records have been sought, but we ask that you disclose any and all records indicating the kinds or types of information that may, as a matter of policy or law, be obtained through the use of Section 215.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, we request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, bates-stamped files.

If any aspect of our request is unclear, we would welcome the opportunity to clarify it. We would also welcome the opportunity to discuss an appropriate processing schedule.

### III. Application for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E); 28 C.F.R. § 16.5(d). Expedited processing is warranted because the records sought are urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity, 28 C.F.R. § 16.5(d)(1)(ii), and because the records sought relate to a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," *id.* § 16.5(d)(1)(iv).

#### A. Expedited processing is warranted under 28 C.F.R. § 16.5(d)(ii)

The records requested are needed to inform the public about federal government activity. The records relate to the FBI's use of a highly controversial surveillance authority. Specifically, the records requested relate to the FBI's use of Section 215 and to the process the FBI has put in place to ensure that the FBI's use of Section 215 powers conforms to the requirements of the Constitution and statutory law. The records are urgently needed because of recent allegations by some members of the Senate Select Committee on Intelligence that the Justice Department has adopted an overly broad interpretation of Section 215,[2]

---

[2] *See* Charlie Savage, *Senators Say Patriot Act Is Being Misinterpreted*, N.Y. Times, May 26, 2011, *available at* http://www.nytimes.com/2011/05/27/us/27patriot.html; Spencer Ackerman, *There's a Secret Patriot Act, Senator Says*, Wired.com, May 25, 2011, *available at* http://www.wired.com/dangerroom/2011/05/secret-patriot-act/; 157

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

and because there is an ongoing debate about the appropriate scope of the government's surveillance authorities.[3]

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(ii). Disseminating information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public is a critical and substantial component of the ACLU's work and one of its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (internal citation omitted)).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

Cong. Rec. S3259-60 (daily ed. May 24, 2011), *available at* http://www.gpo.gov/fdsys/pkg/CREC-2011-05-24/pdf/CREC-2011-05-24-pt1-PgS3247-7.pdf#page=1.

[1] *See, e.g., Obama signs Patriot Act extension; will continue anti-terror surveillance powers*, Assoc. Press, May 25, 2011, *available at* http://www.washingtonpost.com/politics/senate-moves-patriot-act-toward-4-year-extension-before-thursday-midnight-deadline/2011/05/25/AGnYjXBII_story.html; *New tea party senator gets Senate's attention*, Assoc. Press, May 25, 2011, ("[Sen. Rand] Paul has delayed action on the intelligence-gathering measures, contending they should expire because the Patriot Act gives the government too much power to monitor people's lives."), *available at* http://www.foxnews.com/us/2011/05/25/new-tea-party-senator-gets-senates-attention/; Editorial, *A chance to put protections in the Patriot Act*, Wash. Post, May 25, 2011, *available at* http://www.washingtonpost.com/opinions/a-chance-to-put-protections-in-the-patriot-act/2011/05/25/AGsSPXBH_story.html; Felicia Sonmez, *Vote on Patriot Act extension delayed as Rand Paul pushes for amendment on gun rights*, Wash. Post, May 25, 2011, *available at* http://www.washingtonpost.com/blogs/2chambers/post/vote-on-patriot-act-extension-delayed-as-rand-paul-pushes-for-amendment-on-gun-rights/2011/05/25/AGhzDJBH_blog.html; David Kravets, *Lawmakers Punt Again on Patriot Act Reform*, Wired.com, May 20, 2011, *available at* http://www.wired.com/threatlevel/2011/05/patriot-act-reform/; David Kravets, *House Fails to Extend Patriot Act Spy Powers*, Kristy Sidor, *The Patriot Act Expiration Controversy*, The Observer at Boston College, Feb. 22, 2011, *available at* http://www.thebcobserver.com/2011/02/22/the-patriot-act-expiration-controversy/; Wired.com, Feb. 8, 2011, *available at* http://www.wired.com/threatlevel/2011/02/patriot-act-notextended/; Charlie Savage, *Battle Looms Over the Patriot Act*, N.Y. Times, Sept. 19, 2009, *available at* http://www.nytimes.com/2009/09/20/us/politics/20patriot.html?partner=rss&emc=rss; Julian Sanchez, *A Chance to Fix the PATRIOT Act?* Cato At Liberty, Sept. 17, 2009, *available at* http://www.cato-at-liberty.org/a-chance-to-fix-the-patriot-act/; David Kravets, *Obama Backs Extending Patriot Act Spy Provisions*, Wired, Sept. 15, 2009, *available at* http://www.wired.com/threatlevel/2009/09/obama-backs-expiring-patriot-act-spy-provisions/; Adam Cohen, *Democratic Pressure on Obama to Restore the Rule of Law*, N.Y. Times, Nov. 18, 2008, *available at* http://www.nytimes.com/2008/11/14/opinion/14frj4.html.

The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. Its material is available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee. Since 2007, ACLU national projects have published and disseminated over 30 reports. Many ACLU reports include description and analysis of government documents obtained through FOIA.[4]

The ACLU also disseminates information through its website, www.aclu.org. The website addresses civil liberties issues in depth, provides features on civil liberties issues in the news, and contains hundreds of documents that relate to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, the ACLU also provides the public with educational material about the particular civil liberties issue or problem; recent news about the issue; analyses of Congressional or executive branch action on the issue; government documents obtained through FOIA about the issue; and more in-depth analytic and educational multi-media features on the issue.[5] The ACLU website includes many features on information obtained through the FOIA.[6] For example, the ACLU's "Torture

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[4] *See, e.g.*, ACLU, Reclaiming Patriotism: A Call to Reconsider the Patriot Act (March 2009), available at  http://www.aclu.org/pdfs/safefree/patriot_report_20090310.pdf; ACLU, The Excluded: Ideological Exclusion and the War on Ideas (Oct. 2007), available at  http://www.aclu.org/national-security/excluded-ideological-exclusion-and-war-ideas; ACLU, History Repeated: The Dangers of Domestic Spying by Federal Law Enforcement (May 2007), available at
http://www.aclu.org/files/FilesPDFs/mlkreport.pdf; ACLU, No Real Threat: The Pentagon's Secret Database on Peaceful Protest (Jan. 2007), available at http://www.aclu.org/national-security/no-real-threat-pentagons-secret-database-peaceful-protest; ACLU, Unpatriotic Acts: The FBI's Power to Rifle Through Your Records and Personal Belongings Without Telling You (July 2003), available at http://www.aclu.org/files/FilesPDFs/spies_report.pdf.

[5] For example, the ACLU's website about national security letter ("NSL") cases, www.aclu.org/nsl, includes, among other things, an explanation of what NSLs are; information about and document repositories for the ACLU's NSL cases; links to documents obtained through FOIA about various agencies' use of NSLs; NSL news in the courts, Congress, and executive agencies; links to original blog posts commenting on and analyzing NSL-related news; educational web features about the NSL gag power; public education reports about NSLs and the Patriot Act; news about and analysis of the Department of Justice Inspector General's reviews of the FBI's use of NSLs; the ACLU's policy analysis and recommendations for reform of the NSL power; charts with analyzed data about the government's use of NSLs; myths and facts documents; and links to information and analysis of related issues.

[6] *See, e.g.*, http://www.aclu.org/accountability/released.html (Torture FOIA); http://www.aclu.org/accountability/olc.html (OLC Memos);

FOIA" webpage, http://www.aclu.org/accountability/released.html, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, and an advanced search engine permitting webpage visitors to search approximately 150,000 pages of documents obtained through the FOIA.

The ACLU has also published a number of charts that collect, summarize, and analyze information it has obtained through FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA—the ACLU has created a chart that provides the public and news media with a comprehensive index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition and surveillance and that describes what is publicly known about the memos and their conclusions, who authored them and for whom, and whether the memos remain secret or have been released to the public in whole or in part.[7] Similarly, the ACLU produced a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA.[8]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

B. Expedited processing is warranted under 28 C.F.R. § 16.5(d)(iv)

The records requested also relate to a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

Since the PATRIOT Act's enactment in 2001, Section 215 has been the subject of considerable and sustained media attention.[9] Over the

---

http://www.aclu.org/national-security/csrt-foia (CSRT FOIA); http://www.aclu.org/national-security/aclu-v-doj-lawsuit-enforce-nsawarrantless-surveillance-foia-request (NSA FOIA); http://www.aclu.org/national-security/patriot-foia (Patriot Act FOIA); http://www.aclu.org/national-security_technology-and-liberty/spyfiles (Spy Files).

[7] The chart is available at http://www.aclu.org/files/assets/olcmemos_chart.pdf.

[8] The chart is available at http://www.aclu.org/files/assets/nsl_stats.pdf.

[9] See, e.g., Editorial, *Breaking a Promise on Surveillance*, N.Y. Times, July 29, 2010, *available at* http://www.nytimes.com/2010/07/30/opinion/30fri1.html; Editorial, *Patriot Act Excesses*, N.Y. Times, Oct. 7, 2009, *available at* http://www.nytimes.com/2009/10/08/opinion/08thu1.html; Press Release, Leahy renews effort to extend expiring PATRIOT Act provisions, *available at* http://vtdigger.org/2011/01/27/leahy-renews-effort-to-extend-expiring-patriot-act-provisions/; Fred H. Kate, Legal Restrictions on Transborder Data Flows to Prevent Government Access to Personal Data: Lessons from British Columbia, The Ctr. for Info. and Policy Leadership, Aug. 2005, *available at*

last months, as Congress has debated reauthorization of certain PATRIOT Act provisions, including Section 215, media and public attention has intensified.[10] Many recent news stories have included allegations by members of the Senate Select Committee on Intelligence that the Department of Justice has adopted an overbroad construction of Section 215.[11] While the Department of Justice claimed only to have

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

http://blog.surveymonkey.com/wp-content/uploads/2011/05/various-Canadians-have-made-similar-points.pdf; Taking Issue: The Patriot Act: Section 215, NPR.org, July 21, 2005, *available at*
http://www.npr.org/takingissue/20050721_takingissue_patriotact.html; Heather McDonald, *Patriot Act: Let Investigators Do Their Job*, NPR.org, July 20, 2005, *available at* http://www.npr.org/templates/story/story.php?storyId=4763326; Larry Abramson and Maria Godoy, *The Patriot Act: Key Controversies*, NPR, Dec. 16, 2005, *available at* http://www.npr.org/news/specials/patriotact/patriotactdeal.html; Dahlia Lithwick and Julia Turner, *A Guide to the Patriot Act, Part 1*, Slate, Sept. 8, 2003, *available at* http://www.slate.com/id/2087984/.

[10] *See, e.g.*, Charlie Savage, *Patriot Battle Could Hinder Investigators*, N.Y. Times, May 25, 2011, *available at*
http://www.nytimes.com/2011/05/26/us/politics/26patriot.html; *Senate moves to break impasse, vote on controversial provision of Patriot Act*, Assoc. Press, May 24, 2011, *available at* http://www.washingtonpost.com/politics/congress-races-to-extend-patriot-act-send-to-obama-in-europe-before-friday-deadline/2011/05/24/AFrxmlAH_story.html; Charlie Savage, *Deal Reached on Extension of Patriot Act*, N.Y. Times, May 19, 2011, *available at* http://www.nytimes.com/2011/05/20/us/20patriot.html; Editorial, *In Patriot Act vote, Tea Party stands up for civil liberties*, Boston Globe, Feb. 14, 2011, *available at* http://www.boston.com/bostonglobe/editorial_opinion/editorials/articles/2011/02/14/in_patriot_act_vote_tea_party_stands_up_for_civil_liberties/; Tom Gantert, *Civil Liberties Concerns Caused Amash to Vote Against PATRIOT Act*, Michigan Capitol Confidential, Feb. 11, 2011, *available at* http://www.michigancapitolconfidential.com/14549; Charlie Savage, *Battle Looms Over the Patriot Act, supra* note 3.

[11] *See, e.g.*, *4 senators win promise of a Patriot Act hearing*, Assoc. Press, May 26, 2011, *available at*
http://www.boston.com/news/nation/washington/articles/2011/05/26/2_senators_win_promise_of_patriot_act_hearings/; Spencer Ackerman, *There's a Secret Patriot Act, Senator Says*, Wired.com, *see supra* note 2; *"Secret" legal interpretation of Patriot Act provisions troubles 4 Senators*, Assoc. Press, May 26, 2011, *available at* http://www.washingtonpost.com/politics/secret-legal-interpretation-of-patriot-act-provisions-troubles-2-senators/2011/05/26/AGFczGCH_story.html; *"Secret" legal interpretation of Patriot Act provisions troubles 2 Senators*, Assoc. Press, May 26, 2011, *available at* http://www.washingtonpost.com/politics/secret-legal-interpretation-of-patriot-act-provisions-troubles-2-senators/2011/05/26/AG7ffICH_story.html; Charlie Savage, *Senators Say Patriot Act Is Being Misinterpreted*, N.Y. Times, May 26, 2011, *see supra*, note 2; Steven Aftergood, *Sen. Wyden Decries "Secret Law" on PATRIOT Act*, Secrecy News, May 25, 2011, *available at* http://www.fas.org/blog/secrecy/2011/05/wyden_secret_law.html; Marcy Wheeler, *Wyden and Udall Want Obama to Admit to Secret Collection Program*, Emptywheel, May 24, 2011, *available at* http://emptywheel.firedoglake.com/2011/05/24/wyden-and-udall-want-obama-to-admit-to-secret-collection-program/.

used Section 215 powers 21 times in 2009[12] and 96 times in 2010,[13] Senators Ron Wyden and Mark Udall, along with others, recently proffered an amendment to address the government's "secret[] reinterpretation [of] public laws and statutes in a manner that is inconsistent with the public's understanding of these laws."[14] In that same congressional session, Senator Ron Wyden stated in open Congress that he "certainly believe[s] the public will be surprised again when they learn about some of the interpretations of the PATRIOT Act," suggesting that the FBI's numbers or public statements may be misleading or incomplete.[15]

<div align="center">IV. Application for Waiver or Limitation of Fees</div>

A. A waiver of search, review, and duplication fees is warranted under 28 C.F.R. § 16.11(k)(1).

The ACLU is entitled to a waiver of search, review, and duplication fees because disclosure of the requested records is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11(k)(1).

The requesters are making this request specifically to further the public's understanding of the government's use of surveillance powers inside the United States. As the dozens of new articles cited above make clear, disclosure of the requested records will contribute significantly to public understanding of the operations and activities of the government. *See* 28 C.F.R. § 16.11(k)(1)(i). Disclosure is not in the ACLU's commercial interest. Any information disclosed by the government in response to this FOIA request will be made available to the public at no

<div style="margin-left:-2em">AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION</div>

---

[12] *See* Letter to the Hon. Joseph R. Biden, Jr., Department of Justice, Office of Legislative Affairs, Apr. 30, 2011, *available at* http://www.fas.org/irp/agency/doj/fisa/2009rept.pdf.

[13] *See* Letter to the Hon. Harry Reid, Department of Justice, Office of Legislative Affairs, Apr. 29, 2011, *available at* http://www.fas.org/irp/agency/doj/fisa/2010rept.pdf.

[14] *See* 157 Cong. Rec. S3283 (daily ed. May 24, 2011) (SA 339, amendment of Mr. Wyden), *available at* http://www.gpo.gov/fdsys/pkg/CREC-2011-05-24/pdf/CREC-2011-05-24-pt1-PgS3281.pdf#page=3

[15] *See* 157 Cong. Rec. S3258-62, (daily ed. May 24, 2011), *available at* http://www.gpo.gov/fdsys/pkg/CREC-2011-05-24/pdf/CREC-2011-05-24-pt1-PgS3247-7.pdf#page=1.

cost. A fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requests.'" (citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (Dec. 31, 2007) (finding that "disclosure, not secrecy, is the dominant objective of the Act," but that "in practice, the Freedom of Information Act has not always lived up to the ideals of the Act").

B.  A waiver of search and review fees is warranted under 5 U.S.C. § 551(a)(4)(A)(ii) and 28 C.F.R. 16.11(c)(1)-(3), (d)(1).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

A waiver of search and review fees is warranted because the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 551(a)(4)(A)(ii); 28 C.F.R. §§ 16.11(c)(1)-(3), (d)(1). The ACLU is a representative of the news media in that it is an organization "actively gathering news for an entity that is organized and operated to publish or broadcast news to the public," where "news" is defined as "information that is about current events or that would be of current interest to the public." 5 U.S.C. § 552(a)(4)(A)(ii)(II); 28 C.F.R. § 16.11(b)(6). Accordingly, fees associated with the processing of the Request should be "limited to reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II); 28 C.F.R. § 16.11 (d) (search and review fees shall not be charged to "representatives of the news media"); *id.* § 16.11(c)(3) (review fees charged only for "commercial use request[s]").

The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that "gathers information from a variety of sources," exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *cf. ACLU v. Dep't of Justice*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information." *See e.g., Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding nonprofit public interest group that disseminated an electronic newsletter and

published books was a "representative of the media" for purposes of FOIA).[16]

If the request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Please be advised that, because we are requesting expedited processing under 28 C.F.R. §§ 16.11(d)(1)(iv) as well as 16.11(d)(1)(ii), we are sending a copy of this letter to DOJ's Office of Public Affairs. Whatever the determination of that office, we look forward to your reply within 20 business days, as the statue requires under section 552(a)(6)(A)(I).

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Jameel Jaffer
Deputy Legal Director
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[16] On account of these factors, fees associated with responding to FOIA requests are regularly waived on the grounds that the ACLU is a "representative of the news media." In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the Department of State granted a fee waiver to the ACLU with respect to its request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the Department of Justice granted the ACLU a fee waiver with respect to the same request. In May 2005, the Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with respect to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views. Also, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge and belief.

Alexander Abdo
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. 212-519-7814
Fax 212-549-2654

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Exhibit B

**U.S. Department of Justice**

Office of Information Policy



---

*Telephone: (202) 514-3642*                         *Washington, D.C. 20530*

**JUN 0 9 2011**

Re:   AG/11-00790 (F)
         DAG/11-00791 (F)
         ASG/11-00792 (F)
         OLA/11-00793 (F)
         OLP/11-00794 (F)
         CLM:LAD:SBT

Mr. Alexander Abdo
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY  10004

Dear Mr. Abdo:

    This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on May 31, 2011, in which you requested all records drafted, finalized, or issued after March 9, 2006 concerning the government's interpretation or use of Section 215 of the USA PATRIOT Act.  This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Legislative Affairs, and Legal Policy.

    You have requested expedited processing pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  See 28 C.F.R. § 16.5(d)(1)(iv) (2010).  Pursuant to Department policy, we directed your request to the Director of Public Affairs, who makes the decision whether to grant or deny expedited processing under this standard.  See id. § 16.5(d)(2).  The Director has determined that your request for expedited processing should be granted.  Accordingly, your request has been assigned to a FOIA Specialist in this Office and records searches have been initiated.

    We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.

    If you have any questions or wish to discuss the processing of your request, you may contact Sara Tennant, the analyst processing this request, by telephone at the above number or you may write to her at Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001.  Lastly, you may contact our FOIA Public Liaison at the telephone number listed above to discuss any aspect of your request.

Sincerely,

Carmen L. Mallon
Chief of Staff

Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

**JUN 2 2 2011**

Re:   AG/11-00790 (F)
          DAG/11-00791 (F)
Mr. Alexander Abdo                                    ASG/11-00792 (F)
American Civil Liberties Union Foundation             OLA/11-00793 (F)
125 Broad Street, 18th Floor                          OLP/11-00794 (F)
New York, NY  10004                                   CLM:VRB:SBT

Dear Mr. Abdo:

     This is an interim response to your Freedom of Information Act request dated and received in this Office on May 31, 2011, for all records from March 9, 2006 to the present concerning the government's interpretation or use of section 215 of the USA PATRIOT Act. This response is made on behalf of the Office of Legal Policy.

     Please be advised that a search has been conducted in the Office of Legal Policy and no records responsive to your request have been located.  We are continuing our records searches in the remaining Offices above and will respond to you again once those searches are complete and disclosure determinations are made, should records be located.

     If you are not satisfied with my response on behalf of the Office of Legal Policy, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001.  Your appeal must be received within sixty days from the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

     Sincerely,

     Carmen L. Mallon
     Chief of Staff

Exhibit D



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

MAR 1 5 2012

Re:   AG/11-00790 (F)

Mr. Alexander Abdo                                    DAG/11-00791 (F)
American Civil Liberties Union                        ASG/11-00792 (F)
125 Broad Street, 18th Floor                          OLA/11-00793 (F)
New York, NY 10004                                    VRB:DRH:SBT

Dear Mr. Abdo:

    This responds to your Freedom of Information Act (FOIA) request dated and received in this Office on May 31, 2011, for all records concerning the government's interpretation or use of section 215 of the PATRIOT Act from March 9, 2006 to the present. The scope of your request was subsequently narrowed per stipulation filed December 9, 2011. This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, and Legislative Affairs.

    Please be advised that searches have been conducted in the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, and Legislative Affairs (OLA), as well as of the electronic database of the Departmental Executive Secretariat, which is the official records repository for the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, and maintains certain OLA records. We also conducted a search of the records indices of the administration of former Attorneys General Gonzales and Mukasey. The indices supplement the electronic database of the Departmental Executive Secretariat and list file folder titles, arranged according to subject, for the records of former Office of the Attorney General, Deputy Attorney General, and Associate Attorney General staff. In addition, as we advised in our letter of August 31, 2011, the National Security Division located and referred material to this Office. In total, sixteen records, totaling 262 pages, have been located that are responsive to your request.

    I have determined that eight documents, totaling twenty-six pages, are appropriate for release without excision and copies are enclosed.

    Additionally, four documents, totaling ten pages, are being withheld in full pursuant to Exemptions 1 and 5 of the FOIA, 5 U.S.C. § 552(b)(1), (b)(5), which pertain to information that is properly classified in the interest of national security pursuant to Section 1.4(c) of Executive Order 13526 and to certain inter- or intra-agency communications protected by the deliberative process privilege. For your information, the withheld material consists of briefing material and three classified letters between the Department and Congress that are identical but for the addressee. None of the information being withheld is appropriate for discretionary disclosure.

-2-

Moreover, one document, totaling five pages, is a duplicate of material previously withheld in full pursuant to Exemption 1 by the National Security Division. This material is already the subject of litigation in the Southern District of New York, *New York Times Co. v. DOJ*, 11 Civ. 6990 (WHP) and *ACLU et al. v. FBI et al.,* 11 Civ. 07562 (WHP).

Because one document, totaling thirteen pages, originated with the Office of the Legal Counsel (OLC), we have referred that material to OLC for processing and direct response to you. You may contact OLC as follows:

> Elizabeth Farris, Supervisory Paralegal
> Office of Legal Counsel
> Room 5515
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001
>
> Telephone: (202) 514-2038
> Email: usdoj-officeoflegalcounsel@usdoj.gov

Additionally, because two classified documents, totaling 208 pages, originated with the Office of the Inspector General (OIG), we have referred that material to OIG for further processing. You may contact OIG as follows:

> Deborah Waller, Paralegal Specialist
> Office of the Inspector General
> Room 4726
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530
>
> Telephone: (202) 616-0646
> E-mail: oigfoia@usdoj.gov

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Vanessa R. Brinkmann
Counsel, Initial Request Staff

Enclosures

1551472

DIANNE FEINSTEIN, CALIFORNIA, CHAIRMAN
CHRISTOPHER S. BOND, MISSOURI, VICE CHAIRMAN

JOHN D. ROCKEFELLER IV, WEST VIRGINIA        ORRIN HATCH, UTAH
RON WYDEN, OREGON                            OLYMPIA J. SNOWE, MAINE
EVAN BAYH, INDIANA                           SAXBY CHAMBLISS, GEORGIA
BARBARA A. MIKULSKI, MARYLAND                RICHARD BURR, NORTH CAROLINA
RUSSELL D. FEINGOLD, WISCONSIN               TOM COBURN, OKLAHOMA
BILL NELSON, FLORIDA                         JAMES E. RISCH, IDAHO
SHELDON WHITEHOUSE, RHODE ISLAND

HARRY REID, NEVADA, EX OFFICIO
MITCH McCONNELL, KENTUCKY, EX OFFICIO
CARL LEVIN, MICHIGAN, EX OFFICIO
JOHN McCAIN, ARIZONA, EX OFFICIO

DAVID GRANNIS, STAFF DIRECTOR
LOUIS B. TUCKER, MINORITY STAFF DIRECTOR
KATHLEEN P. McGHEE, CHIEF CLERK

## United States Senate

SELECT COMMITTEE ON INTELLIGENCE
WASHINGTON, DC 20510

SSCI #2009-1438

March 31, 2009

The Honorable Eric H. Holder, Jr.
Attorney General
Department of Justice
Washington, D.C. 20530

The Honorable Dennis C. Blair
Director of National Intelligence
Washington, D.C. 20511

Dear Attorney General Holder and Director Blair:

Three provisions of the Foreign Intelligence Surveillance Act of 1978, as amended, are scheduled to sunset on December 31, 2009. Two of them—on roving wiretaps and business records—were enacted or significantly amended by sections 206 and 215 of the USA PATRIOT Act of 2001, and extended for four years by the USA PATRIOT Improvement and Reauthorization Act of 2005. The third—on lone wolf surveillance authority—was enacted as section 6001 of the Intelligence Reform and Terrorism Prevention Act of 2004, and also extended for four years by the Reauthorization Act.

We would like to begin consideration of these provisions soon so that legislation can be enacted in advance of the end of the year. We would, therefore, appreciate receiving from you, by May 1, 2009, your recommendations together with a written presentation of the facts and reasons that support those recommendations. To the extent that national security permits, please do so in an unclassified manner to enhance public understanding of your recommendations. Please supplement that unclassified presentation with a classified annex as appropriate.

If there are further recommendations you would like to make jointly to our Committee for legislative consideration this year based on experience under the FISA Amendments Act of 2008 or other matters relating to national security investigations, please include them in your response to this request.

The Honorable Eric H. Holder, Jr.
The Honorable Dennis C. Blair
March 31, 2009
Page Two

    We intend to schedule a hearing in May that will provide the Committee with an initial opportunity to consider your recommendations.

Sincerely,

Dianne Feinstein
Chairman

Christopher S. Bond
Vice Chairman



U.S. Department of Justice

Office of Legislative Affairs

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

September 14, 2009

The Honorable Dianne Feinstein
Chairwoman
The Honorable Christopher S. Bond
Vice Chairman
Select Committee on Intelligence
United States Senate
Washington, D.C. 20510

Dear Senators Feinstein and Bond:

Thank you for your letter requesting our recommendations on the three provisions of the Foreign Intelligence Surveillance Act ("FISA") currently scheduled to expire on December 31, 2009. We believe that the best legislation will emerge from a careful examination of these matters. In this letter, we provide our recommendations for each provision, along with a summary of the supporting facts and rationale. We have discussed these issues with the Office of the Director of National Intelligence, which concurs with the views expressed in this letter.

We also are aware that Members of Congress may propose modifications to provide additional protection for the privacy of law abiding Americans. As President Obama said in his speech at the National Archives on May 21, 2009, "We are indeed at war with al Qaeda and its affiliates. We do need to update our institutions to deal with this threat. But we must do so with an abiding confidence in the rule of law and due process; in checks and balances and accountability." Therefore, the Administration is willing to consider such ideas, provided that they do not undermine the effectiveness of these important authorities.

1. **Roving Wiretaps, USA PATRIOT Act Section 206 (codified at 50 U.S.C. § 1805(c)(2))**

We recommend reauthorizing section 206 of the USA PATRIOT Act, which provides for roving surveillance of targets who take measures to thwart FISA surveillance. It has proven an important intelligence-gathering tool in a small but significant subset of FISA electronic surveillance orders.

This provision states that where the Government sets forth in its application for a surveillance order "specific facts" indicating that the actions of the target of the order "may have the effect of thwarting" the identification, at the time of the application, of third parties necessary to accomplish the ordered surveillance, the order shall direct such third parties, when identified to furnish the Government with all assistance necessary to accomplish surveillance of the target identified in the order. In other words, the "roving" authority is only available when the

The Honorable Dianne Feinstein
The Honorable Christopher S. Bond
Page 2

Government is able to provide specific information that the target may engage in counter-surveillance activity (such as rapidly switching cell phone numbers. The language of the statute does not allow the Government to make a general, "boilerplate" allegation that the target may engage in such activities; rather, the Government must provide specific facts to support its allegation.

There are at least two scenarios in which the Government's ability to obtain a roving wiretap may be critical to effective surveillance of a target. The first is where the surveillance targets a traditional foreign intelligence officer. In these cases, the Government often has years of experience maintaining surveillance of officers of a particular foreign intelligence service who are posted to locations within the United States. The FBI will have extensive information documenting the tactics and tradecraft practiced by officers of the particular intelligence service, and may even have information about the training provided to those officers in their home country. Under these circumstances, the Government can represent that an individual who has been identified as an officer of that intelligence service is likely to engage in counter-surveillance activity.

The second scenario in which the ability to obtain a roving wiretap may be critical to effective surveillance is the case of an individual who actually has engaged in counter-surveillance activities or in preparations for such activities. In some cases, individuals already subject to FISA surveillance are found to be making preparations for counter-surveillance activities or instructing associates on how to communicate with them through more secure means. In other cases, non-FISA investigative techniques have revealed counter-surveillance preparations (such as buying "throwaway" cell phones or multiple calling cards). The Government then offers these specific facts to the FISA court as justification for a grant of roving authority.

Since the roving authority was added to FISA in 2001, the Government has sought to use it in a relatively small number of cases (on average, twenty-two applications a year). We would be pleased to brief Members or staff regarding actual numbers, along with specific case examples, in a classified setting. The FBI uses the granted authority only when the target actually begins to engage in counter-surveillance activity that thwarts the already authorized surveillance, and does so in a way that renders the use of roving authority feasible.

Roving authority is subject to the same court-approved minimization rules that govern other electronic surveillance under FISA and that protect against the unjustified acquisition or retention of non-pertinent information. The statute generally requires the Government to notify the FISA court within 10 days of the date upon which surveillance begins to be directed at any new facility. Over the past seven years, this process has functioned well and has provided effective oversight for this investigative technique.

The Honorable Dianne Feinstein
The Honorable Christopher S. Bond
Page 3

We believe that the basic justification offered to Congress in 2001 for the roving authority remains valid today. Specifically, the ease with which individuals can rapidly shift between communications providers, and the proliferation of both those providers and the services they offer, almost certainly will increase as technology continues to develop. International terrorists, foreign intelligence officers, and espionage suspects — like ordinary criminals — have learned to use these numerous and diverse communications options to their advantage. Any effective surveillance mechanism must incorporate the ability to rapidly address an unanticipated change in the target's communications behavior. The roving electronic surveillance provision has functioned as intended and has addressed an investigative requirement that will continue to be critical to national security operations. Accordingly, we recommend reauthorizing this feature of FISA.

2. "Business Records," USA PATRIOT Act Section 215 (codified at 50 U.S.C. § 1861-62)

We also recommend reauthorizing section 215 of the USA PATRIOT Act, which allows the FISA court to compel the production of "business records." The business records provision addresses a gap in intelligence collection authorities and has proven valuable in a number of contexts.

The USA PATRIOT Act made the FISA authority relating to business records roughly analogous to that available to FBI agents investigating criminal matters through the use of grand jury subpoenas. The original FISA language, added in 1998, limited the business records authority to four specific types of records, and required the Government to demonstrate "specific and articulable facts" supporting a reason to believe that the target was an agent of a foreign power. In the USA PATRIOT Act, the authority was changed to encompass the production of "any tangible things" and the legal standard was changed to one of simple relevance to an authorized investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities.

The Government first used the USA PATRIOT Act business records authority in 2004 after extensive internal discussions over its proper implementation. The Department's inspector general evaluated the Department's implementation of this new authority at length, in reports that are now publicly available. Other parts of the USA PATRIOT Act, specifically those eliminating the "wall" separating intelligence operations and criminal investigations, also had an effect on the operational environment. The greater access that intelligence investigators now have to criminal tools (such as grand jury subpoenas) reduces but does not eliminate the need for intelligence tools such as the business records authority. The operational security requirements of most intelligence investigations still require the secrecy afforded by the FISA authority.

For the period 2004-2007, the FISA court has issued about 220 orders to produce business records. Of these, 173 orders were issued in 2004-06 in combination with FISA pen

The Honorable Dianne Feinstein
The Honorable Christopher S. Bond
Page 4

register orders to address an anomaly in the statutory language that prevented the acquisition of subscriber identification information ordinarily associated with pen register information. Congress corrected this deficiency in the pen register provision in 2006 with language in the USA PATRIOT Improvement and Reauthorization Act. Thus, this use of the business records authority became unnecessary.

The remaining business records orders issued between 2004 and 2007 were used to obtain transactional information that did not fall within the scope of any other national security investigative authority (such as a national security letter). Some of these orders were used to support important and highly sensitive intelligence collection operations, of which both Members of the Intelligence Committee and their staffs are aware. The Department can provide additional information to Members or their staff in a classified setting.

It is noteworthy that no recipient of a FISA business records order has ever challenged the validity of the order, despite the availability, since 2006, of a clear statutory mechanism to do so. At the time of the USA PATRIOT Act, there was concern that the FBI would exploit the broad scope of the business records authority to collect sensitive personal information on constitutionally protected activities, such as the use of public libraries. This simply has not occurred, even in the environment of heightened terrorist threat activity. The oversight provided by Congress since 2001 and the specific oversight provisions added to the statute in 2006 have helped to ensure that the authority is being used as intended.

Based upon this operational experience, we believe that the FISA business records authority should be reauthorized. There will continue to be instances in which FBI investigators need to obtain transactional information that does not fall within the scope of authorities relating to national security letters and are operating in an environment that precludes the use of less secure criminal authorities. Many of these instances will be mundane (as they have been in the past), such as the need to obtain driver's license information that is protected by State law. Others will be more complex, such as the need to track the activities of intelligence officers through their use of certain business services. In all these cases, the availability of a generic, court-supervised FISA business records authority is the best option for advancing national security investigations in a manner consistent with civil liberties. The absence of such an authority could force the FBI to sacrifice key intelligence opportunities.

3. **"Lone Wolf," Intelligence Reform and Terrorism Prevention Act of 2004
Section 6001 (codified at 50 U.S.C. § 1801(b)(1)(C))**

Section 6001 of the Intelligence Reform and Terrorism Prevention Act of 2004 defines a "lone wolf" agent of a foreign power and allows a non-United States person who "engages in international terrorism activities" to be considered an agent of a foreign power under FISA even though the specific foreign power (*i.e.*, the international terrorist group) remains unidentified. We also recommend reauthorizing this provision.

The Honorable Dianne Feinstein
The Honorable Christopher S. Bond
Page 5

Enacted in 2004, this provision arose from discussions inspired by the Zacarias Moussaoui case. The basic idea behind the authority was to cover situations in which information linking the target of an investigation to an international group was absent or insufficient, although the target's engagement in "international terrorism" was sufficiently established. The definition is quite narrow: it applies only to non-United States persons; the activities of the person must meet the FISA definition of "international terrorism;" and the information likely to be obtained must be foreign intelligence information. What this means, in practice, is that the Government must know a great deal about the target (in order to satisfy the definition of "international terrorism"), but still be unable to connect the individual to any group that meets the FISA definition of a foreign power.

To date, the Government has not encountered a case in which this definition was both necessary and available, i.e., the target was a non-United States person. Thus, the definition has never been used in a FISA application. However, we do not believe that this means the authority is now unnecessary. Subsection 101(b) of FISA provides ten separate definitions for the term "agent of a foreign power" (five applicable only to non-United States persons, and five applicable to all persons). Some of these definitions cover the most common fact patterns; others describe narrow categories that may be encountered rarely. However, this latter group includes legitimate targets that could not be accommodated under the more generic definitions and would escape surveillance but for the more specific definitions.

We believe that the "lone wolf" provision falls squarely within this class. While we cannot predict the frequency with which it may be used, we can foresee situations in which it would be the only avenue to effective surveillance. For example, we could have a case in which a known international terrorist affirmatively severed his connection with his group, perhaps following some internal dispute. The target still would be an international terrorist, and an appropriate target for intelligence surveillance. However, the Government could no longer represent to the FISA court that he was currently a member of an international terrorist group or acting on its behalf. Lacking the "lone wolf" definition, the Government could have to postpone FISA surveillance until the target could be linked to another group. Another scenario is the prospect of a terrorist who "self-radicalizes" by means of information and training provided by a variety of international terrorist groups via the Internet. Although this target would have adopted the aims and means of international terrorism, the target would not actually have contacted a terrorist group. Without the lone wolf definition, the Government might be unable to establish FISA surveillance.

These scenarios are not remote hypotheticals; they are based on trends we observe in current intelligence reporting. We cannot determine how common these fact patterns will be in the future or whether any of the targets will so completely lack connections to groups that they cannot be accommodated under other definitions. However, the continued availability of the

The Honorable Dianne Feinstein
The Honorable Christopher S. Bond
Page 6

lone wolf definition eliminates any gap.  The statutory language of the existing provision ensures
its narrow application, so the availability of this potentially useful tool carries little risk of
overuse.  We believe that it is essential to have the tool available for the rare situation in which it
is necessary rather than to delay surveillance of a terrorist in the hopes that the necessary links
are established.

    Thank you for the opportunity to present our views.  We would be happy to meet with
your staff to discuss them.  The Office of Management and Budget has advised us that from the
perspective of the Administration's program, there is no objection to submission of this letter.

                                Sincerely,

                                Ronald Weich
                                Assistant Attorney General



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

September 14, 2009

The Honorable Patrick J. Leahy
Chairman
Committee on the Judiciary
United States Senate
Washington, D.C. 20510

Dear Mr. Chairman:

Thank you for your letter requesting our recommendations on the three provisions of the Foreign Intelligence Surveillance Act ("FISA") currently scheduled to expire on December 31, 2009. We believe that the best legislation will emerge from a careful examination of these matters. In this letter, we provide our recommendations for each provision, along with a summary of the supporting facts and rationale. We have discussed these issues with the Office of the Director of National Intelligence, which concurs with the views expressed in this letter.

We also are aware that Members of Congress may propose modifications to provide additional protection for the privacy of law abiding Americans. As President Obama said in his speech at the National Archives on May 21, 2009, "We are indeed at war with al Qaeda and its affiliates. We do need to update our institutions to deal with this threat. But we must do so with an abiding confidence in the rule of law and due process; in checks and balances and accountability." Therefore, the Administration is willing to consider such ideas, provided that they do not undermine the effectiveness of these important authorities.

## 1. Roving Wiretaps, USA PATRIOT Act Section 206 (codified at 50 U.S.C. § 1805(c)(2))

We recommend reauthorizing section 206 of the USA PATRIOT Act, which provides for roving surveillance of targets who take measures to thwart FISA surveillance. It has proven an important intelligence-gathering tool in a small but significant subset of FISA electronic surveillance orders.

This provision states that where the Government sets forth in its application for a surveillance order "specific facts" indicating that the actions of the target of the order "may have the effect of thwarting" the identification, at the time of the application, of third parties necessary to accomplish the ordered surveillance, the order shall direct such third parties, when identified to furnish the Government with all assistance necessary to accomplish surveillance of the target identified in the order. In other words, the "roving" authority is only available when the Government is able to provide specific information that the target may engage in counter-surveillance activity (such as rapidly switching cell phone numbers. The language of the statute does not allow the Government to make a general, "boilerplate" allegation that the target may

The Honorable Patrick J. Leahy
Page 2

engage in such activities; rather, the Government must provide specific facts to support its allegation.

There are at least two scenarios in which the Government's ability to obtain a roving wiretap may be critical to effective surveillance of a target. The first is where the surveillance targets a traditional foreign intelligence officer. In these cases, the Government often has years of experience maintaining surveillance of officers of a particular foreign intelligence service who are posted to locations within the United States. The FBI will have extensive information documenting the tactics and tradecraft practiced by officers of the particular intelligence service, and may even have information about the training provided to those officers in their home country. Under these circumstances, the Government can represent that an individual who has been identified as an officer of that intelligence service is likely to engage in counter-surveillance activity.

The second scenario in which the ability to obtain a roving wiretap may be critical to effective surveillance is the case of an individual who actually has engaged in counter-surveillance activities or in preparations for such activities. In some cases, individuals already subject to FISA surveillance are found to be making preparations for counter-surveillance activities or instructing associates on how to communicate with them through more secure means. In other cases, non-FISA investigative techniques have revealed counter-surveillance preparations (such as buying "throwaway" cell phones or multiple calling cards). The Government then offers these specific facts to the FISA court as justification for a grant of roving authority.

Since the roving authority was added to FISA in 2001, the Government has sought to use it in a relatively small number of cases (on average, twenty-two applications a year). We would be pleased to brief Members or staff regarding actual numbers, along with specific case examples, in a classified setting. The FBI uses the granted authority only when the target actually begins to engage in counter-surveillance activity that thwarts the already authorized surveillance, and does so in a way that renders the use of roving authority feasible.

Roving authority is subject to the same court-approved minimization rules that govern other electronic surveillance under FISA and that protect against the unjustified acquisition or retention of non-pertinent information. The statute generally requires the Government to notify the FISA court within 10 days of the date upon which surveillance begins to be directed at any new facility. Over the past seven years, this process has functioned well and has provided effective oversight for this investigative technique.

We believe that the basic justification offered to Congress in 2001 for the roving authority remains valid today. Specifically, the ease with which individuals can rapidly shift between communications providers, and the proliferation of both those providers and the services they offer, almost certainly will increase as technology continues to develop. International terrorists, foreign intelligence officers, and espionage suspects — like ordinary

The Honorable Patrick J. Leahy
Page 3

criminals — have learned to use these numerous and diverse communications options to their advantage. Any effective surveillance mechanism must incorporate the ability to rapidly address an unanticipated change in the target's communications behavior. The roving electronic surveillance provision has functioned as intended and has addressed an investigative requirement that will continue to be critical to national security operations. Accordingly, we recommend reauthorizing this feature of FISA.

2.  "Business Records," USA PATRIOT Act Section 215 (codified at 50 U.S.C. § 1861-62)

We also recommend reauthorizing section 215 of the USA PATRIOT Act, which allows the FISA court to compel the production of "business records." The business records provision addresses a gap in intelligence collection authorities and has proven valuable in a number of contexts.

The USA PATRIOT Act made the FISA authority relating to business records roughly analogous to that available to FBI agents investigating criminal matters through the use of grand jury subpoenas. The original FISA language, added in 1998, limited the business records authority to four specific types of records, and required the Government to demonstrate "specific and articulable facts" supporting a reason to believe that the target was an agent of a foreign power. In the USA PATRIOT Act, the authority was changed to encompass the production of "any tangible things" and the legal standard was changed to one of simple relevance to an authorized investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities.

The Government first used the USA PATRIOT Act business records authority in 2004 after extensive internal discussions over its proper implementation. The Department's inspector general evaluated the Department's implementation of this new authority at length, in reports that are now publicly available. Other parts of the USA PATRIOT Act, specifically those eliminating the "wall" separating intelligence operations and criminal investigations, also had an effect on the operational environment. The greater access that intelligence investigators now have to criminal tools (such as grand jury subpoenas) reduces but does not eliminate the need for intelligence tools such as the business records authority. The operational security requirements of most intelligence investigations still require the secrecy afforded by the FISA authority.

For the period 2004-2007, the FISA court has issued about 220 orders to produce business records. Of these, 173 orders were issued in 2004-06 in combination with FISA pen register orders to address an anomaly in the statutory language that prevented the acquisition of subscriber identification information ordinarily associated with pen register information. Congress corrected this deficiency in the pen register provision in 2006 with language in the USA PATRIOT Improvement and Reauthorization Act. Thus, this use of the business records authority became unnecessary.

The Honorable Patrick J. Leahy
Page 4

    The remaining business records orders issued between 2004 and 2007 were used to obtain transactional information that did not fall within the scope of any other national security investigative authority (such as a national security letter). Some of these orders were used to support important and highly sensitive intelligence collection operations, of which both Members of the Intelligence Committee and their staffs are aware. The Department can provide additional information to Members or their staff in a classified setting.

    It is noteworthy that no recipient of a FISA business records order has ever challenged the validity of the order, despite the availability, since 2006, of a clear statutory mechanism to do so. At the time of the USA PATRIOT Act, there was concern that the FBI would exploit the broad scope of the business records authority to collect sensitive personal information on constitutionally protected activities, such as the use of public libraries. This simply has not occurred, even in the environment of heightened terrorist threat activity. The oversight provided by Congress since 2001 and the specific oversight provisions added to the statute in 2006 have helped to ensure that the authority is being used as intended.

    Based upon this operational experience, we believe that the FISA business records authority should be reauthorized. There will continue to be instances in which FBI investigators need to obtain transactional information that does not fall within the scope of authorities relating to national security letters and are operating in an environment that precludes the use of less secure criminal authorities. Many of these instances will be mundane (as they have been in the past), such as the need to obtain driver's license information that is protected by State law. Others will be more complex, such as the need to track the activities of intelligence officers through their use of certain business services. In all these cases, the availability of a generic, court-supervised FISA business records authority is the best option for advancing national security investigations in a manner consistent with civil liberties. The absence of such an authority could force the FBI to sacrifice key intelligence opportunities.

    3.  "Lone Wolf," Intelligence Reform and Terrorism Prevention Act of 2004
        Section 6001 (codified at 50 U.S.C. § 1801(b)(1)(C))

    Section 6001 of the Intelligence Reform and Terrorism Prevention Act of 2004 defines a "lone wolf" agent of a foreign power and allows a non-United States person who "engages in international terrorism activities" to be considered an agent of a foreign power under FISA even though the specific foreign power (*i.e.*, the international terrorist group) remains unidentified. We also recommend reauthorizing this provision.

    Enacted in 2004, this provision arose from discussions inspired by the Zacarias Moussaoui case. The basic idea behind the authority was to cover situations in which information linking the target of an investigation to an international group was absent or insufficient, although the target's engagement in "international terrorism" was sufficiently established. The definition is quite narrow: it applies only to non-United States persons; the activities of the person must meet the FISA definition of "international terrorism;" and the

The Honorable Patrick J. Leahy
Page 5

information likely to be obtained must be foreign intelligence information. What this means, in practice, is that the Government must know a great deal about the target, including the target's purpose and plans for terrorist activity (in order to satisfy the definition of "international terrorism"), but still be unable to connect the individual to any group that meets the FISA definition of a foreign power.

To date, the Government has not encountered a case in which this definition was both necessary and available, *i.e.*, the target was a non-United States person. Thus, the definition has never been used in a FISA application.   However, we do not believe that this means the authority is now unnecessary. Subsection 101(b) of FISA provides ten separate definitions for the term "agent of a foreign power" (five applicable only to non-United States persons, and five applicable to all persons). Some of these definitions cover the most common fact patterns; others describe narrow categories that may be encountered rarely. However, this latter group includes legitimate targets that could not be accommodated under the more generic definitions and would escape surveillance but for the more specific definitions.

We believe that the "lone wolf" provision falls squarely within this class. While we cannot predict the frequency with which it may be used, we can foresee situations in which it would be the only avenue to effective surveillance. For example, we could have a case in which a known international terrorist affirmatively severed his connection with his group, perhaps following some internal dispute. The target still would be an international terrorist, and an appropriate target for intelligence surveillance. However, the Government could no longer represent to the FISA court that he was currently a member of an international terrorist group or acting on its behalf. Lacking the "lone wolf" definition, the Government could have to postpone FISA surveillance until the target could be linked to another group. Another scenario is the prospect of a terrorist who "self-radicalizes" by means of information and training provided by a variety of international terrorist groups via the Internet. Although this target would have adopted the aims and means of international terrorism, the target would not actually have contacted a terrorist group. Without the lone wolf definition, the Government might be unable to establish FISA surveillance.

These scenarios are not remote hypotheticals; they are based on trends we observe in current intelligence reporting. We cannot determine how common these fact patterns will be in the future or whether any of the targets will so completely lack connections to groups that they cannot be accommodated under other definitions. However, the continued availability of the lone wolf definition eliminates any gap. The statutory language of the existing provision ensures its narrow application, so the availability of this potentially useful tool carries little risk of overuse. We believe that it is essential to have the tool available for the rare situation in which it is necessary rather than to delay surveillance of a terrorist in the hopes that the necessary links are established.

The Honorable Patrick J. Leahy
Page 6

     Thank you for the opportunity to present our views.  We would be happy to meet with your staff to discuss them.  The Office of Management and Budget has advised us that from the perspective of the Administration's program, there is no objection to submission of this letter.

                Sincerely,

                Ronald Weich
                Assistant Attorney General

cc:     The Honorable Jeff Sessions
        Ranking Minority Member



U.S. Department of Justice

Office of Legislative Affairs

Office of the Assistant Attorney General                 *Washington, DC*

April 30, 2010

The Honorable Patrick J. Leahy                The Honorable Dianne Feinstein
Chairman                                      Chairman
Committee on the Judiciary                    Select Committee on Intelligence
United States Senate                          United States Senate
Washington, D.C. 20510                        Washington, D.C. 20510

The Honorable John Conyers, Jr.               The Honorable Silvestre Reyes
Chairman                                      Chairman
Committee on the Judiciary                    Permanent Select Committee on Intelligence
U.S. House of Representatives                 U.S. House of Representatives
Washington, D.C. 20515                        Washington, D.C. 20515

Dear Madam and Messrs. Chairmen:

    This report is submitted pursuant to sections 107 and 502 of the Foreign
Intelligence Surveillance Act of 1978 (the "Act"), as amended, 50 U.S.C. § 1801 *et seq.*,
and section 118 of USA PATRIOT Improvement and Reauthorization Act of 2005, Pub.
L. No. 109-177 (2006). In accordance with those provisions, this report covers all
applications made by the Government during calendar year 2009 for authority to conduct
electronic surveillance for foreign intelligence purposes under the Act, all applications
made by the Government during calendar year 2009 for access to certain business records
(including the production of tangible things) for foreign intelligence purposes, and certain
requests made by the Federal Bureau of Investigation pursuant to national security letter
authorities. In addition, while not required to do so by statute, the Government is
providing information concerning the number of applications made during calendar year
2009 for authority to conduct physical searches for foreign intelligence purposes.

    **Applications for Electronic Surveillance Made During Calendar Year 2009**
    **(section 107 of the Act, 50 U.S.C. § 1807)**

    During calendar year 2009, the Government made 1,376 applications to the
Foreign Intelligence Surveillance Court (hereinafter "FISC") for authority to conduct
electronic surveillance and physical searches for foreign intelligence purposes. The 1,376
applications include applications made solely for electronic surveillance, applications

The Honorable Patrick J. Leahy
The Honorable Dianne Feinstein
The Honorable John Conyers, Jr.
The Honorable Silvestre Reyes

Page 2

made solely for physical search, and combined applications requesting authority for electronic surveillance and physical search. Of these, 1,329 applications included requests for authority to conduct electronic surveillance.

Of these 1,329 applications, eight were withdrawn by the Government. The FISC denied one application in whole, and one in part, and made modifications to the proposed orders in fourteen applications. Thus, the FISC approved collection activity in a total of 1,320 of the applications that included requests for authority to conduct electronic surveillance.

**Applications for Access to Certain Business Records (Including the Production of Tangible Things) Made During Calendar Year 2009** (section 502 of the Act, 50 U.S.C. § 1862(c)(1))

During calendar year 2009, the Government made twenty-one applications to the FISC for access to certain business records (including the production of tangible things) for foreign intelligence purposes. The FISC did not deny, in whole or in part, any such application filed by the Government during calendar year 2009. The FISC made modifications to nine proposed orders in applications for access to business records.

**Requests Made for Certain Information Concerning Different United States Persons Pursuant to National Security Letter Authorities During Calendar Year 2009** (USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177 (2006))

Pursuant to Section 118 of the USA PATRIOT Improvement and Reauthorization Act, Pub. L. 109-177 (2006), the Department of Justice provides Congress with annual reports regarding requests made by the Federal Bureau of Investigation (FBI) pursuant to the National Security Letter (NSL) authorities provided in 12 U.S.C. § 3414, 15 U.S.C. § 1681u, 15 U.S.C. § 1681v, 18 U.S.C. § 2709, and 50 U.S.C. § 436.

In 2009, the FBI made 14,788 NSL requests (excluding requests for subscriber information only) for information concerning United States persons. These sought information pertaining to 6,114 different United States persons.

The Honorable Patrick J. Leahy
The Honorable Dianne Feinstein
The Honorable John Conyers, Jr.
The Honorable Silvestre Reyes

Page 3

      We hope this information is helpful. Please do not hesitate to contact this office if you need additional assistance regarding this matter.

                             Sincerely,

                             Ronald Weich
                             Assistant Attorney General

cc:     The Honorable Jeff Sessions
        Ranking Minority Member
        Senate Committee on the Judiciary

        The Honorable Christopher S. Bond
        Vice Chairman
        Senate Select Committee on Intelligence

        The Honorable Lamar S. Smith
        Ranking Minority Member
        House Committee on the Judiciary

        The Honorable Peter Hoekstra
        Ranking Minority Member
        House Permanent Select Committee on Intelligence



U.S. Department of Justice

Office of Legislative Affairs

Office of the Assistant Attorney General

*Washington, D.C. 20530*

April 29, 2011

The Honorable Joseph R. Biden, Jr.
President
United States Senate
Washington, DC 20510

Dear Mr. President:

This report is submitted pursuant to sections 107 and 502 of the Foreign Intelligence Surveillance Act of 1978 (the "Act"), as amended, 50 U.S.C. § 1801 *et seq.*, and section 118 of USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177 (2006). In accordance with those provisions, this report covers all applications made by the Government during calendar year 2010 for authority to conduct electronic surveillance for foreign intelligence purposes under the Act, all applications made by the Government during calendar year 2010 for access to certain business records (including the production of tangible things) for foreign intelligence purposes, and certain requests made by the Federal Bureau of Investigation pursuant to national security letter authorities. In addition, while not required to do so by statute, the Government is providing information concerning the number of applications made during calendar year 2010 for authority to conduct physical searches for foreign intelligence purposes.

**Applications Made to the Foreign Intelligence Surveillance Court During Calendar Year 2010 (section 107 of the Act, 50 U.S.C. § 1807)**

During calendar year 2010, the Government made 1,579 applications to the Foreign Intelligence Surveillance Court (hereinafter "FISC") for authority to conduct electronic surveillance and/or physical searches for foreign intelligence purposes. The 1,579 applications include applications made solely for electronic surveillance, applications made solely for physical search, and combined applications requesting authority for electronic surveillance and physical search. Of these, 1,511 applications included requests for authority to conduct electronic surveillance.

Of these 1,511 applications, five were withdrawn by the Government. The FISC did not deny any applications in whole, or in part. The FISC made modifications to the proposed orders in fourteen applications. Thus, the FISC approved collection activity in a total of 1,506 of the applications that included requests for authority to conduct electronic surveillance.

The Honorable Joseph R. Biden, Jr.
Page 2

**Applications for Access to Certain Business Records (Including the Production of Tangible Things) Made During Calendar Year 2010 (section 502 of the Act, 50 U.S.C. § 1862(c)(1))**

During calendar year 2010, the Government made 96 applications to the FISC for access to certain business records (including the production of tangible things) for foreign intelligence purposes. The FISC did not deny, in whole or in part, any such application filed by the Government during calendar year 2010. The FISC made modifications to 43 proposed orders in applications for access to business records.

**Requests Made for Certain Information Concerning Different United States Persons Pursuant to National Security Letter Authorities During Calendar Year 2010 (USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177 (2006))**

Pursuant to Section 118 of the USA PATRIOT Improvement and Reauthorization Act, Pub. L. 109-177 (2006), the Department of Justice provides Congress with annual reports regarding requests made by the Federal Bureau of Investigation (FBI) pursuant to the National Security Letter (NSL) authorities provided in 12 U.S.C. § 3414, 15 U.S.C. § 1681u, 15 U.S.C. § 1681v, 18 U.S.C. § 2709, and 50 U.S.C. § 436.

In 2010, the FBI made 24,287 NSL requests (excluding requests for subscriber information only) for information concerning United States persons. These sought information pertaining to 14,212 different United States persons.

We hope that this information is helpful. Please do not hesitate to contact this office if you would like additional assistance regarding this or any other matter.

Sincerely,

Ronald Weich
Assistant Attorney General

# United States Senate
**WASHINGTON, DC 20510**

DEPT OF JUSTICE
EXECUTIVE SECRETARIAT

2011 SEP 22  AM 10: 45

September 21, 2011

The Honorable Eric Holder
Attorney General
United States Department of Justice
Washington, D.C.  20530

Dear Attorney General Holder:

As you know, we have been concerned for some time that the U.S. government is relying on secret interpretations of surveillance authorities that – in our judgment – differ significantly from the public's understanding of what is permitted under U.S. law.

We believe that policymakers can have legitimate differences of opinion about what types of domestic surveillance should be permitted, but we also believe that the American people should be able to learn what their government thinks that the law means, so that voters have the ability to ratify or reject decisions that elected officials make on their behalf.

Unfortunately, however, the decision to classify the government's interpretations of the law itself makes an informed debate on this issue impossible.  Moreover, the absence of publicly available information about the government's understanding of its authorities increases the risk of the public being misled or misinformed about the official interpretation of public laws.

While we are sure that you would agree that government officials should not describe government authorities in a way that misleads the public, during your tenure Justice Department officials have – on a number of occasions – made what we believe are misleading statements pertaining to the government's interpretation of surveillance law.

The first set of statements that concern us are the repeated claims by Justice Department officials that the government's authority to obtain business records or other 'tangible things' under section 215 of the USA Patriot Act is analogous to the use of a grand jury subpoena.  This comparison – which we consider highly misleading – has been made by Justice Department officials on multiple occasions, including in testimony before Congress.  As you know, Section 215 authorities are not interpreted in the same way that grand jury subpoena authorities are, and we are concerned that when Justice Department officials suggest that the two authorities are "analogous" they provide the public with a false understanding of how surveillance law is interpreted in practice.

More recently, we were troubled to learn that a Justice Department spokesman stated that "Section 215 [of the Patriot Act] is not a secret law, nor has it been implemented under secret legal opinions by the Justice Department."  This statement is also extremely misleading.  As the NSA General Counsel testified in July of this year, significant

interpretations of section 215 of the Patriot Act are contained in classified opinions of the Foreign Intelligence Surveillance Court and these opinions – and the legal interpretations they contain – continue to be kept secret. In our judgment, when the government relies on significant interpretations of public statutes that are kept secret from the American public, the government is effectively relying on secret law.

Again, we hope you will agree that misleading statements of this nature are not in the public interest and must be corrected. Americans will eventually and inevitably come to learn about the gap that currently exists between the public's understanding of government surveillance authorities and the official, classified interpretation of these authorities. We believe that the best way to avoid a negative public reaction and an erosion of confidence in US intelligence agencies is to initiate an informed public debate about these authorities today. However, if the executive branch is unwilling to do that, then it is particularly important for government officials to avoid compounding the problem by making misleading statements such as the ones we have described here.

We urge you to correct the public record with regard to these statements, and ensure that everyone who speaks for the Justice Department on this issue is informed enough about it to avoid similarly misleading statements in the future.

Thank you for your attention to this matter.

Sincerely,

Ron Wyden
United States Senator

Mark Udall
United States Senator



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

October 19, 2011

The Honorable Ron Wyden
United States Senate
Washington, D.C.  20510

Dear Senator Wyden:

Thank you for your September 21, 2011 letter to the Attorney General concerning the government's authority to obtain records under section 215 of the USA PATRIOT Act.  We are sending an identical response to Senator Mark Udall, who joined in your letter.

As you know, section 215 allows the federal government to apply to the Foreign Intelligence Surveillance Court ("FISA Court") for a court order directing the production of any tangible things for an authorized investigation to protect against international terrorism or clandestine intelligence activities.  In order to issue an order, the FISA Court must determine that there are reasonable grounds to believe that: (1) the tangible things sought are relevant to an authorized national security investigation, other than a threat assessment; (2) the investigation is being conducted under Guidelines approved by the Attorney General under Executive Order 12333; and (3) if a U.S. person is the subject of the investigation, the investigation is not being conducted solely on the basis of First Amendment protected activities.  In addition, by law, the FISA Court may only require the production of records that can be obtained with a grand jury subpoena or any other court order directing the production of records or tangible things.  *See* 50 U.S.C. § 1861(c)(2)(D).

The government has made public that some orders issued by the FISA Court under section 215 have been used to support important and highly sensitive intelligence collection operations, on which members of Congress have been fully and repeatedly briefed.  During the last Congress (in December 2009), and in the current Congress (February 2011), the Department of Justice and the Intelligence Community provided a document to the House and Senate intelligence committees to be made available to all members of the House and Senate describing the classified uses of section 215 in detail.  The Intelligence and Judiciary Committees have been briefed on these operations multiple times and have had access to copies of the classified FISA Court orders and opinions relevant to the use of section 215 in those matters.  In addition, the Department of Justice has provided Congress with classified and unclassified annual and semi-annual written reports on section 215 use, and, over the years, has provided extensive briefings

The Honorable Ron Wyden
Page Two

and testimony on the way this statute has been implemented pursuant to lawful FISA Court
orders. Most recently, in connection with the reauthorization of the PATRIOT Act, the Attorney
General, the Director of the FBI, and relevant heads of Intelligence Community agencies have all
testified or briefed members of Congress on the operation of section 215, in addition to multiple
congressional hearings at which other senior Department of Justice and Intelligence Community
officials testified and briefed the issue over the past year. Armed with this information, the
Congress, on a bipartisan basis and by large majorities, has repeatedly reauthorized section 215.
In May 2011, the Senate approved the legislation to reauthorize the statute and two other
provisions of the USA PATRIOT Act by a vote of 72-23 and the House voted in favor of the
legislation by 250-153.

Against this backdrop, we do not believe the Executive Branch is operating pursuant to
"secret law" or "secret opinions of the Department of Justice." Rather, the Intelligence
Community is conducting court-authorized intelligence activities pursuant to a public statute,
with the knowledge and oversight of Congress and the Intelligence Committees of both Houses.
There is also extensive oversight by the Executive Branch, including the Department of Justice
and relevant agency General Counsels and Inspectors General, as well as annual and semi-annual
reports to Congress as required by law.

To be sure, the FISA Court opinions and orders relevant to the use of section 215 and
many other intelligence collection authorities are classified. This is necessary because public
disclosure of the activities they discuss would harm national security and impede the
effectiveness of the intelligence tools that Congress has authorized. This is true of many other
intelligence activities that our government throughout its history has carried out in a classified
manner in the interest of national security. Since it is not possible to disclose these activities to
the public, Congress established the Senate and House Intelligence committees to ensure that
Congress is able to perform its proper oversight role on behalf of the American people.

We appreciate and share your interest in an informed public debate on how the
government interprets and uses its intelligence collection authorities. However, the Intelligence
Community has determined that public disclosure of the classified uses of section 215 would
expose sensitive sources and methods to our adversaries and therefore harm national security.
As you know, the Attorney General and a senior member of the Intelligence Community testified
in June 2011 in a closed hearing before the Senate Select Committee on Intelligence concerning
the classified uses of section 215. Their classified testimony addressed in detail the operations
carried out under the statute, their legal basis, their importance to national security, and the
reasons why neither the operations nor their detailed legal basis can be disclosed publicly. As
they explained, the Executive Branch has done everything it can to ensure that the people's
elected representatives are fully informed of the intelligence collection operations at issue and
how they function.

The Honorable Ron Wyden
Page Three

Finally, with regard to the analogy between section 215 and grand jury subpoenas, as noted above, section 215 expressly provides that the court "may only require the production of a tangible thing if such thing can be obtained with a subpoena duces tecum issued by a court of the United States in aid of a grand jury investigation or with any other order issued by a court of the United States directing the production of records or tangible things." 50 U.S.C. §1861(c)(2)(D). Grand jury subpoenas do not require the approval of a court but rather may be obtained with the approval of a single prosecutor and may request a wide variety of records; the government is not required to make any showing of relevance to a court before issuing such a subpoena. The records obtained pursuant to a grand jury subpoena may concern the lawful activities of U.S. citizens if those records are relevant to an investigation. A motion to quash a grand jury subpoena will be denied unless there is "no reasonable possibility" that the category of information the government seeks will produce information relevant to the general subject of the grand jury's investigation. In contrast, as discussed above, records collected under Section 215 require approval of an Article III judge sitting on the FISA Court, and the government must make an affirmative showing to that Court that the records are relevant to an authorized national security investigation. Particularly in light of the statutory requirement that a section 215 order may only obtain records that could be obtained via a grand jury subpoena (or court order), we continue to believe that the analogy between section 215 and a grand jury subpoena is apt. This is not to say, of course, that the factual context in which section 215 may be used for classified intelligence collection operations is the same as it is for ordinary criminal matters.

In sum, given the constraints as to what can be discussed in an unclassified setting, we believe that we have been as forthcoming as possible in our discussions of section 215.

Thank you for the opportunity to present our views, and please do not hesitate to contact this office if we can be of further assistance regarding this or any other matter.

Sincerely,

Ronald Welch
Assistant Attorney General

1685352 DA

JOHN CONYERS, JR., Michigan
CHAIRMAN

HOWARD L. BERMAN, California
RICK BOUCHER, Virginia
JERROLD NADLER, New York
ROBERT C. "BOBBY" SCOTT, Virginia
MELVIN L. WATT, North Carolina
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
MAXINE WATERS, California
WILLIAM D. DELAHUNT, Massachusetts
ROBERT WEXLER, Florida
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
PEDRO, PIERLUISI, Puerto Rico
MIKE QUIGLEY, Illinois
LUIS V. GUTIERREZ, Illinois
BRAD SHERMAN, California
TAMMY BALDWIN, Wisconsin
CHARLES A. GONZALEZ, Texas
ANTHONY D. WEINER, New York
ADAM B. SCHIFF, California
DANIEL B. MAFFEI, New York
LINDA T. SÁNCHEZ, California
DEBBIE WASSERMAN SCHULTZ, Florida

LAMAR S. SMITH, Texas
RANKING MINORITY MEMBER

F. JAMES SENSENBRENNER, JR., Wisconsin
HOWARD COBLE, North Carolina
ELTON GALLEGLY, California
BOB GOODLATTE, Virginia
DANIEL E. LUNGREN, California
DARRELL E. ISSA, California
J. RANDY FORBES, Virginia
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
THOMAS ROONEY, Florida
GREGG HARPER, Mississippi

ONE HUNDRED ELEVENTH CONGRESS

# Congress of the United States
## House of Representatives
### COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515–6216
(202) 225–3951
http://www.house.gov/judiciary

October 5, 2009

The Honorable Eric H. Holder
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC  20530

Dear Mr. Attorney General:

As the Committee continues its work concerning the USA Patriot Act and related legislation, several sections of which expire this year, we are writing to ask that the Department of Justice make publicly available additional information on the implementation of the Act. We appreciated the Department's September 22 testimony before the Subcommittee on the Constitution, Civil Rights, and Civil Liberties, in which it expressed the Administration's willingness to work with Congress on Patriot Act proposals to better protect Americans' privacy and civil liberties, and in which it publicly provided important information about the use of the "lone wolf" provision of the Act. In order for Congress to meaningfully consider whether and how to extend the "business records" section of the Act, however, we ask that the Department work to provide additional public information on the use of that provision.

Specifically, at the September 22 hearing, Deputy Assistant Attorney General Hinnen testified that orders under Section 215 of the Act, which authorizes compulsory production of "business records," have been used to obtain "transactional information" to support "important and highly sensitive intelligence collection." He explained that some members of the Subcommittee and cleared staff have received some briefings on this topic, and that additional information could be made available to them "in a classified setting."

We have appreciated the information that has been provided, and fully understand the importance of safeguarding our country's national security secrets. Too often in 2007 and 2008, however, crucial information remained unknown to the pubic and many members of Congress when Congress voted on important surveillance legislation affecting the interests of all Americans. As has also been requested in the Senate, we ask that the Department work to make publicly available additional basic information on the use of Section 215, so that Congress can

The Honorable Eric H. Holder
October 5, 2009
Page Two

more openly and thoroughly consider the future of this authority while fully protecting our national security secrets.

   Please contact the Judiciary Committee office, 2138 Rayburn House Office Building, Washington, D.C. 20515 (tel.; 202-225-3951; fax: 202-225-7680) in response to this request. Thank you for your prompt attention to this matter.

Sincerely,

John Conyers, Jr.
Chairman

Jerrold Nadler
Chairman, Subcommittee
on the Constitution, Civil
Rights and Civil Liberties

Bobby Scott
Chairman, Subcommittee
on Crime, Terrorism and
Homeland Security

cc: Ron Weich
     The Honorable Lamar Smith

# Exhibit E

# EXHIBIT C:  OIP DRAFT INDEX

**American Civil Liberties Union v. U.S. Department of Justice**
**Civil Action No. 1:11-CV-07562 (WHP)**
**U.S. District Court for the Southern District of New York**

This index contains a description of the ten pages of records protected in full by OIP, pursuant to Freedom of Information Act Exemption 1 (national security) or 5 (deliberative process privilege).

| Document Numbers | Date | Description | Exemption | Pages |
|---|---|---|---|---|
| 1 | 12/17/09 | Classified letter from Ronald Weich, Associate Attorney General, Office of Legislative Affairs, to Representative John Conyers, Chairman of House Judiciary Committee, in response to an October 5, 2009 letter to the Attorney General, from Representative Conyers, Representative Jerrold Nadler, and Representative Bobby Scott, regarding the reauthorization of several sections of the USA PATRIOT Act.  (Documents 2 and 3 below are identical to Document 1, except for the addressee.  Additionally, the October 5, 2009 letter was released to Plaintiff on March 15, 2012.) | Exemption 1 (National security information) | 2 |
| 2 | 12/17/09 | Classified letter from Ronald Weich, Associate Attorney General, Office of Legislative Affairs, to Representative Jerrold Nadler, Chairman of the House Subcommittee on the Constitution, Civil Rights and Civil Liberties, in response to an October 5, 2009 letter to the Attorney General, from Representative John Conyers, Representative Nadler, and Representative Bobby Scott, regarding the reauthorization of several sections of the USA PATRIOT Act (the October 5, 2009 letter was released to Plaintiff). | Exemption 1 (National security information) | 2 |
| 3 | 12/17/09 | Classified letter from Ronald Weich, Associate Attorney General, Office of Legislative Affairs, to Representative Bobby Scott, Chairman of House Subcommittee on Crime, Terrorism and Homeland Security, in response to an October 5, 2009 letter to the Attorney General, from Representative John Conyers, Representative Jerrold Nadler, and Representative Scott, regarding the reauthorization of several sections of the USA PATRIOT Act (the October 5, 2009 letter was released to Plaintiff). | Exemption 1 (National security information) | 2 |
| 4 | (undated) | Briefing material for the Attorney General entitled "USA PATRIOT Act/FISA Authorities Renewal" containing talking points regarding the Department's views concerning the renewal of the three Foreign Intelligence Surveillance Act (FISA) provisions scheduled to sunset on May 27, 2011 | Exemption 5 (Deliberative process privilege) | 4 |