UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
................................................................x

AMERICAN CIVIL LIBERTIES UNION,
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                 Plaintiffs,

  - against -

FEDERAL BUREAU OF INVESTIGATION,
UNITED STATES DEPARTMENT OF
JUSTICE,

                 Defendants.

................................................................x

ECF Case

11 Civ. 7562 (WHP)

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1.      I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department") and a career member of the Senior Executive Service. I joined OLC in 1986, and since 1987 I have had the responsibility, among other things, of supervising OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I submit this declaration in support of the Government's Motion for Summary Judgment. These statements are based on my personal knowledge, on information provided to me by OLC attorneys and staff working under my direction, and on information provided to me by others within the Executive Branch of the Government.

## OLC'S RESPONSIBILITIES

2.      The principal function of OLC is to assist the Attorney General in his role as legal adviser to the President of the United States and to departments and agencies of the Executive Branch.  OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch.  OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions.  OLC's legal advice and analysis may inform the decision-making of Executive Branch officials on matters of policy, but OLC's legal advice does not dictate the policy choice to be made.

3.      Although OLC publishes some opinions and makes discretionary releases of others, OLC legal advice is generally kept confidential.  One important reason OLC legal advice often needs to stay confidential is that it is part of a larger deliberative process—a process that itself requires confidentiality to be effective.  The Supreme Court long ago recognized that "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" *Envtl. Protection Agency v. Mink*, 410 U.S. 73, 87 (1973) (quoting S. Rep. No. 89-813, at 9 (1965)).  If government agencies and OLC had to conduct deliberations with knowledge that their deliberations would be open to public view, such discussions would naturally be chilled or inhibited, and the effectiveness and efficiency of government policy making would suffer as a result.

4.      These deliberative confidentiality concerns apply with particular force to OLC advice because of OLC's role in the decision-making process:  OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law in connection with ongoing Executive Branch deliberations.  Frequently, such issues arise in connection with highly

complex and sensitive activities of the Executive Branch. So that Executive Branch officials

may continue to request, receive, and rely on candid legal advice from OLC on such sensitive

matters in connection with their internal deliberations, it is essential that OLC legal advice

provided in the context of such deliberations not be inhibited by concerns about public

disclosure.

## PLAINTIFFS' FOIA REQUEST

5.      On May 31, 2011, OLC received a FOIA request of the same date from Jameel

Jaffer, Deputy Legal Director of the American Civil Liberties Union, on behalf of the American

Civil Liberties Union and the American Civil Liberties Union Foundation (collectively,

"ACLU"). *See* Exhibit A, attached hereto. The request sought agency records drafted, finalized,

or issued after May 9, 2006 concerning the government's interpretation or use of Section 215 of

the Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001

("Patriot Act"),[1] and included a list of illustrative types of documents.

6.      On October 26, 2011, ACLU filed this lawsuit.

7.      On December 9, 2011, the parties entered into a Stipulation and Order (Doc. 10),

approved by the Court, in which the ACLU agreed to narrow its request, with respect to OLC's

records, to "OLC legal opinions and memoranda concerning or interpreting Section 215."

8.      By letter dated March 15, 2012, I responded to the ACLU's FOIA request, as

narrowed, on behalf of OLC. The letter informed Mr. Jaffer of the ACLU that OLC had

searched its files and found two documents responsive to the request, which OLC was

---

[1]  Section 215 of the Patriot Act, Pub. L. No. 107-56 (2001), codified as amended at 50
U.S.C. §1861-1862, amended the Foreign Intelligence Surveillance Act of 1978 to authorize the
Director of the Federal Bureau of Investigation, or a designee, to apply for an order requiring the
production of "any tangible things" for an investigation to obtain foreign intelligence information
not concerning a United States person or to protect against international terrorism or clandestine
intelligence activities.

withholding pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5), on the grounds that the documents were protected by the deliberative process privilege. *See* Exhibit B, attached hereto.

9.      On March 8, 2012, the Office of Information Policy ("OIP"), which was processing the same FOIA request from the ACLU for the Department's senior management offices, had referred one document to OLC for direct response to the ACLU.  In the same March 15, 2012 letter referred to in paragraph 8, I informed Mr. Jaffer that the document referred by OIP to our office for processing was the same document as one of the two documents OLC was withholding as a result of its own search. *See* Exhibit B.

## OLC'S SEARCH

10.     OLC's final work product, such as the legal opinions or memoranda that the ACLU requested here, is stored principally in two locations, depending on whether the final work product is classified or unclassified.  First, OLC's final unclassified work product is stored electronically in a shared central storage system that consists of documents in their original file format (e.g., Microsoft Office, WordPerfect, PDF) collected in folders, which are organized by date, on a shared network drive on the Department of Justice electronic file server.  While OLC maintains physical files containing its final unclassified work product, it is OLC's practice to save all final unclassified work product to its electronic central storage system; accordingly, if OLC has provided any unclassified written advice or has memorialized any unclassified oral advice in writing, that advice should be accessible and searchable through this system.  OLC uses a sophisticated search engine, called Isys Search Software ("Isys"), to perform keyword searches of this collection of final work product files.  Isys searches the full text of documents (including PDF files) within this collection of final work product, as opposed to searching only document titles or e-mail subject lines.

11.     Second, OLC may have classified substantive records that could be responsive to a FOIA request. Paper files containing classified documents must be stored either in individual safes or in OLC's Sensitive Compartmented Information Facility ("SCIF"). In its SCIF OLC maintains a file of classified legal memoranda and opinions that is not part of any individual custodian's files but rather is intended to serve as part of the Office's records regarding final classified legal advice that has been provided by OLC. It is OLC's practice to include copies of any classified legal memoranda and opinions in this file; accordingly, any such memoranda or opinion should be located in this file.

12.     In this instance, an OLC attorney initiated a search for OLC opinions and legal memoranda concerning Section 215 of the Patriot Act with the assistance of an OLC paralegal. First, the OLC paralegal conducted a search for unclassified opinions and legal memoranda on OLC's central storage system using Isys to perform a keyword search for responsive records. As indicated above, OLC identified two documents responsive to that request, which OLC withheld pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5). Second, the OLC attorney asked two Deputy Assistant Attorneys General of OLC who are primarily responsible for national security matters whether OLC had rendered any classified opinions or legal memoranda concerning Section 215. These senior OLC officials indicated to the OLC attorney that they did not recall any classified OLC legal opinions or memoranda concerning the interpretation or use of section 215.[2]

---

[2]  At the time OLC responded to the ACLU's request, it had already conducted this search and processed the results in connection with other FOIA requests seeking the same records.

## DOCUMENT PROTECTED UNDER EXEMPTION FIVE

13.    The ACLU seeks one of the two unclassified documents withheld by OLC under Exemption Five.  That document is a legal memorandum dated January 4, 2010 prepared by OLC providing confidential legal advice to the Department of Commerce regarding the interaction between disclosure provisions in the Patriot Act, as amended, and prohibitions on disclosure in the Census Act, 13 U.S.C. §§ 8, 9, 214 (2006) ("Census Memorandum").  The memorandum does not describe or analyze the application of section 215 in the context of any particular national security investigation or program.  The Census Memorandum is also the document referred by OIP to OLC.

14.    FOIA's Exemption Five exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption Five incorporates the traditional privileges that the government may assert in civil litigation against a private litigant and exempts from FOIA's reach documents covered by such privileges.  Exemption Five applies to the Census Memorandum because the document is protected by the deliberative process privilege.

15.    The Census Memorandum is protected by the deliberative process privilege because the Memorandum is pre-decisional and provided legal advice as part of an Executive Branch deliberative process.  The Memorandum is pre-decisional because it was prepared by OLC to aid the Department of Commerce in considering what actions to take, consistent with the agency's legal obligations, with respect to the potential disclosure of census information to federal law enforcement or national security officers. The Memorandum is deliberative because it constitutes legal advice from OLC to the Department of Commerce for use in the agency's

deliberations regarding how to comply with its legal obligations regarding the confidentiality of census information. The Census Memorandum contains no non-privileged, segregable information that can be released.

16. Compelled disclosure of the Census Memorandum would harm the deliberative processes of the Executive Branch. Attorneys at OLC are often asked to provide advice and analysis with respect to very difficult and unsettled questions of law. It is essential to the proper functioning of the Executive Branch that OLC's legal advice not be inhibited by concerns about the risk of public disclosure. Protecting the confidentiality of OLC's memoranda conveying legal advice provided in the context of Executive Branch deliberations is essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the President, his advisers, and other Executive Branch officials continue to request and rely on frank legal advice from OLC on sensitive matters.

17. To the best of my knowledge, the Census Memorandum has not been made public, and it has been disclosed only within the federal government for legitimate government purposes. When OIP referred the Census Memorandum to OLC for direct response to the requester, OIP informed us that the Memorandum had been shared in confidence by the Office of Legislative Affairs ("OLA") in the Department of Justice with the U.S. Senate Select Committee on Intelligence in April 2011. In a April 7, 2011 letter to Senators Dianne Feinstein, Chairman, and Saxby Chambliss, Vice Chairman, of the U.S. Senate Select Committee on Intelligence, Ronald Weich, Assistant Attorney General for OLA, responded to a request from committee staff for the Census Memorandum. The letter states that the Census Memorandum was provided to the Foreign Intelligence Surveillance Court ("FISC") in connection with an application

submitted by the Department in a matter that was concluded.  The letter indicated that the Department had provided the Senate Committee with the application (including the memorandum) and asked that "the Committee maintain the confidentiality of this opinion, which provided confidential legal advice to a client and has not been released publicly." *See* Exhibit C, attached hereto.

18.     Disclosure to a congressional committee of a document protected by the deliberative process privilege does not waive that privilege. *See, e.g.*, *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001).  This is particularly true when, as here, the disclosure is accompanied by a request that the congressional committee preserve the document's confidentiality. *Id.*  Since the attorney-client privilege can potentially be waived by a disclosure outside the attorney-client relationship, OLC has decided to rely in this litigation only on the deliberative process privilege as a basis for continued withholding of the document, and not also on the attorney-client privilege.

19.     To the best of my knowledge, the Census Memorandum has never been publicly adopted or incorporated by reference by any policymaker as a basis for a policy decision.

20.     It is important to recognize the adverse consequences that compelled disclosure of the Census Memorandum would inflict on Executive Branch deliberative processes.  As discussed above, such forced disclosure would seriously undermine substantial confidentiality interests of the Executive Branch in receiving full and frank advice from legal advisers.  If the confidentiality of such advice is readily breached, Executive Branch officials will be reluctant to continue to request and rely on legal advice from OLC on sensitive matters—a result that would undermine the public's interest in an Executive Branch that strives to abide by the rule of law.

21.     In sum, I respectfully submit that the Census Memorandum is covered by the deliberative process privilege and thus may properly be withheld pursuant to FOIA Exemption Five.  The compelled disclosure of the document would harm the deliberative processes of the Executive Branch.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: January _30_, 2013

_____

PAUL P. COLBORN

# EXHIBIT A



FOIA/PA Mail Referral Unit
Department of Justice
LOC Building, Room 115
Washington, DC 20530-0001

Carmen L. Mallon
Chief of Staff
Office of Information Policy
Department of Justice
      Attn: FOI/PA Request
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530-0001

Office of Public Affairs
Department of Justice
950 Pennsylvania Avenue, NW., Room 1128
Washington DC 20530-0001

Federal Bureau of Investigation
Record/Information Dissemination Section
      Attn: FOI/PA Request
170 Marcel Drive
Winchester, VA 22602-4843

Elizabeth Farris,
Supervisory Paralegal
Office of Legal Counsel
Department of Justice
      Attn: FOI/PA Request
950 Pennsylvania Avenue, NW, Room 5515
Washington, DC 20530-0001

National Security Division
U.S. Department of Justice
      Attn: FOI/PA Request
950 Pennsylvania Avenue, N.W., Room 6150
Washington, D.C. 20530-0001

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

RICHARD ZACKS
TREASURER

May 31, 2011

Dear Freedom of Information Officer,

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). It is submitted on behalf of the American Civil Liberties Union and the American Civil Liberties Foundation (together, the "ACLU").[1]

## I. Background

This request pertains to the use by the Federal Bureau of Investigation ("FBI") of the powers enumerated in Pub. L. 107-56, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act, commonly known as the USA PATRIOT Act ("PATRIOT Act"). Specifically, this request pertains to the FBI's use and interpretation of Section 215 of the PATRIOT Act, as amended, which permits the government to apply for court orders requiring the production of "tangible things."

## II. Records Requested

We request that you release to us any and all records concerning the government's interpretation or use of Section 215, including but not limited to: legal opinions or memoranda interpreting that provision; guidelines informing government personnel how that provision can be used; records containing statistics about the use or misuse of the provision; reports provided by the executive branch to Congress relating to the executive's interpretation, use, or misuse of the provision; forms used by executive agencies in connection with the use of Section 215; and legal papers filed by the government or any other party in the Foreign Intelligence Surveillance Court, and opinions of that court, pertaining to the interpretation, use, or proposed use of Section 215.

With respect to the records described above, we seek only those records drafted, finalized, or issued after March 9, 2006. We do not ask you to disclose the names or identities of those entities or individuals

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

who have been served with Section 215 orders or the names or identities of those individuals or entities about whom records have been sought, but we ask that you disclose any and all records indicating the kinds or types of information that may, as a matter of policy or law, be obtained through the use of Section 215.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, we request that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, bates-stamped files.

If any aspect of our request is unclear, we would welcome the opportunity to clarify it. We would also welcome the opportunity to discuss an appropriate processing schedule.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

### III. Application for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E); 28 C.F.R. § 16.5(d). Expedited processing is warranted because the records sought are urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity, 28 C.F.R. § 16.5(d)(1)(ii), and because the records sought relate to a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," *id.* § 16.5(d)(1)(iv).

#### A. Expedited processing is warranted under 28 C.F.R. § 16.5(d)(ii)

The records requested are needed to inform the public about federal government activity. The records relate to the FBI's use of a highly controversial surveillance authority. Specifically, the records requested relate to the FBI's use of Section 215 and to the process the FBI has put in place to ensure that the FBI's use of Section 215 powers conforms to the requirements of the Constitution and statutory law. The records are urgently needed because of recent allegations by some members of the Senate Select Committee on Intelligence that the Justice Department has adopted an overly broad interpretation of Section 215,[2]

---

[2] *See* Charlie Savage, *Senators Say Patriot Act Is Being Misinterpreted*, N.Y. Times, May 26, 2011, *available at* http://www.nytimes.com/2011/05/27/us/27patriot.html; Spencer Ackerman, *There's a Secret Patriot Act, Senator Says*, Wired.com, May 25, 2011, *available at* http://www.wired.com/dangerroom/2011/05/secret-patriot-act/; 157

and because there is an ongoing debate about the appropriate scope of the government's surveillance authorities.[3]

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(ii). Disseminating information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public is a critical and substantial component of the ACLU's work and one of its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (internal citation omitted)).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

Cong. Rec. S3259-60 (daily ed. May 24, 2011), *available at* http://www.gpo.gov/fdsys/pkg/CREC-2011-05-24/pdf/CREC-2011-05-24-pt1-PgS3247-7.pdf#page=1.

[3] *See, e.g., Obama signs Patriot Act extension; will continue anti-terror surveillance powers*, Assoc. Press, May 25, 2011, *available at* http://www.washingtonpost.com/politics/senate-moves-patriot-act-toward-4-year-extension-before-thursday-midnight-deadline/2011/05/25/AGnYjXBH_story.html; *New tea party senator gets Senate's attention*, Assoc. Press, May 25, 2011, ("[Sen. Rand] Paul has delayed action on the intelligence-gathering measures, contending they should expire because the Patriot Act gives the government too much power to monitor people's lives."), *available at* http://www.foxnews.com/us/2011/05/25/new-tea-party-senator-gets-senates-attention/; Editorial, *A chance to put protections in the Patriot Act*, Wash. Post, May 25, 2011, *available at* http://www.washingtonpost.com/opinions/a-chance-to-put-protections-in-the-patriot-act/2011/05/25/AGsSPXBH_story.html; Felicia Sonmez, *Vote on Patriot Act extension delayed as Rand Paul pushes for amendment on gun rights*, Wash. Post, May 25, 2011, *available at* http://www.washingtonpost.com/blogs/2chambers/post/vote-on-patriot-act-extension-delayed-as-rand-paul-pushes-for-amendment-on-gun-rights/2011/05/25/AGhzDJBH_blog.html; David Kravets, *Lawmakers Punt Again on Patriot Act Reform*, Wired.com, May 20, 2011, *available at* http://www.wired.com/threatlevel/2011/05/patriot-act-reform/; David Kravets, *House Fails to Extend Patriot Act Spy Powers*, Kristy Sidor, *The Patriot Act Expiration Controversy*, The Observer at Boston College, Feb. 22, 2011, *available at* http://www.thebcobserver.com/2011/02/22/the-patriot-act-expiration-controversy/; Wired.com, Feb. 8, 2011, *available at* http://www.wired.com/threatlevel/2011/02/patriot-act-notextended/; Charlie Savage, *Battle Looms Over the Patriot Act*, N.Y. Times, Sept. 19, 2009, *available at* http://www.nytimes.com/2009/09/20/us/politics/20patriot.html?partner=rss&emc=rss; Julian Sanchez, *A Chance to Fix the PATRIOT Act?* Cato At Liberty, Sept. 17, 2009, *available at* http://www.cato-at-liberty.org/a-chance-to-fix-the-patriot-act/; David Kravets, *Obama Backs Extending Patriot Act Spy Provisions*, Wired, Sept. 15, 2009, *available at* http://www.wired.com/threatlevel/2009/09/obama-backs-expiring-patriot-act-spy-provisions/; Adam Cohen, *Democratic Pressure on Obama to Restore the Rule of Law*, N.Y. Times, Nov. 18, 2008, *available at* http://www.nytimes.com/2008/11/14/opinion/14fri4.html.

The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. Its material is available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee. Since 2007, ACLU national projects have published and disseminated over 30 reports. Many ACLU reports include description and analysis of government documents obtained through FOIA.[4]

The ACLU also disseminates information through its website, www.aclu.org. The website addresses civil liberties issues in depth, provides features on civil liberties issues in the news, and contains hundreds of documents that relate to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, the ACLU also provides the public with educational material about the particular civil liberties issue or problem; recent news about the issue; analyses of Congressional or executive branch action on the issue; government documents obtained through FOIA about the issue; and more in-depth analytic and educational multi-media features on the issue.[5] The ACLU website includes many features on information obtained through the FOIA.[6] For example, the ACLU's "Torture

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[4] *See, e.g.*, ACLU, Reclaiming Patriotism: A Call to Reconsider the Patriot Act (March 2009), available at  http://www.aclu.org/pdfs/safefree/patriot_report_20090310.pdf; ACLU, The Excluded: Ideological Exclusion and the War on Ideas (Oct. 2007), available at  http://www.aclu.org/national-security/excluded-ideological-exclusion-and-war-ideas; ACLU, History Repeated: The Dangers of Domestic Spying by Federal Law Enforcement (May 2007), available at http://www.aclu.org/files/FilesPDFs/mlkreport.pdf; ACLU, No Real Threat: The Pentagon's Secret Database on Peaceful Protest (Jan. 2007), available at http://www.aclu.org/national-security/no-real-threat-pentagons-secret-database-peaceful-protest; ACLU, Unpatriotic Acts: The FBI's Power to Rifle Through Your Records and Personal Belongings Without Telling You (July 2003), available at http://www.aclu.org/files/FilesPDFs/spies_report.pdf.

[5] For example, the ACLU's website about national security letter ("NSL") cases, www.aclu.org/nsl, includes, among other things, an explanation of what NSLs are; information about and document repositories for the ACLU's NSL cases; links to documents obtained through FOIA about various agencies' use of NSLs; NSL news in the courts, Congress, and executive agencies; links to original blog posts commenting on and analyzing NSL-related news; educational web features about the NSL gag power; public education reports about NSLs and the Patriot Act; news about and analysis of the Department of Justice Inspector General's reviews of the FBI's use of NSLs; the ACLU's policy analysis and recommendations for reform of the NSL power; charts with analyzed data about the government's use of NSLs; myths and facts documents; and links to information and analysis of related issues.

[6] *See, e.g.*, http://www.aclu.org/accountability/released.html (Torture FOIA); http://www.aclu.org/accountability/olc.html (OLC Memos);

FOIA" webpage, http://www.aclu.org/accountability/released.html, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, and an advanced search engine permitting webpage visitors to search approximately 150,000 pages of documents obtained through the FOIA.

The ACLU has also published a number of charts that collect, summarize, and analyze information it has obtained through FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA—the ACLU has created a chart that provides the public and news media with a comprehensive index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition and surveillance and that describes what is publicly known about the memos and their conclusions, who authored them and for whom, and whether the memos remain secret or have been released to the public in whole or in part.[7] Similarly, the ACLU produced a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA.[8]

<div style="margin-left:2em">

**B.** Expedited processing is warranted under 28 C.F.R. § 16.5(d)(iv)

</div>

The records requested also relate to a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

Since the PATRIOT Act's enactment in 2001, Section 215 has been the subject of considerable and sustained media attention.[9] Over the

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

http://www.aclu.org/national-security/csrt-foia (CSRT FOIA); http://wwwv.aclu.org/national-security/aclu-v-doj-lawsuit-enforce-nsawarrantless-surveillance-foia-request (NSA FOIA); http://www.aclu.org/national-security/patriot-foia (Patriot Act FOIA); http://www.aclu.org/national-security_technology-and-liberty/spyfiles (Spy Files).

[7] The chart is available at http://www.aclu.org/files/assets/olcmemos_chart.pdf.

[8] The chart is available at http://www.aclu.org/files/assets/nsl_stats.pdf.

[9] *See, e.g.,* Editorial, *Breaking a Promise on Surveillance,* N.Y. Times, July 29, 2010, *available at* http://www.nytimes.com/2010/07/30/opinion/30fri1.html; Editorial, *Patriot Act Excesses,* N.Y. Times, Oct. 7, 2009, *available at* http://www.nytimes.com/2009/10/08/opinion/08thu1.html; Press Release, Leahy renews effort to extend expiring PATRIOT Act provisions, *available at* http://vtdigger.org/2011/01/27/leahy-renews-effort-to-extend-expiring-patriot-act-provisions/; Fred H. Kate, Legal Restrictions on Transborder Data Flows to Prevent Government Access to Personal Data: Lessons from British Columbia, The Ctr. for Info. and Policy Leadership, Aug. 2005, *available at*

last months, as Congress has debated reauthorization of certain PATRIOT Act provisions, including Section 215, media and public attention has intensified.[10] Many recent news stories have included allegations by members of the Senate Select Committee on Intelligence that the Department of Justice has adopted an overbroad construction of Section 215.[11] While the Department of Justice claimed only to have

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

http://blog.surveymonkey.com/wp-content/uploads/2011/05/various-Canadians-have-made-similar-points.pdf; Taking Issue: The Patriot Act: Section 215, NPR.org, July 21, 2005, *available at*
http://www.npr.org/takingissue/20050721_takingissue_patriotact.html; Heather McDonald, *Patriot Act: Let Investigators Do Their Job*, NPR.org, July 20, 2005, *available at* http://www.npr.org/templates/story/story.php?storyId=4763326; Larry Abramson and Maria Godoy, *The Patriot Act: Key Controversies*, NPR, Dec. 16, 2005, *available at* http://www.npr.org/news/specials/patriotact/patriotactdeal.html; Dahlia Lithwick and Julia Turner, *A Guide to the Patriot Act, Part 1*, Slate, Sept. 8, 2003, *available at* http://www.slate.com/id/2087984/.

[10] *See, e.g.*, Charlie Savage, *Patriot Battle Could Hinder Investigators*, N.Y. Times, May 25, 2011, *available at*
http://www.nytimes.com/2011/05/26/us/politics/26patriot.html; *Senate moves to break impasse, vote on controversial provision of Patriot Act*, Assoc. Press, May 24, 2011, *available at* http://www.washingtonpost.com/politics/congress-races-to-extend-patriot-act-send-to-obama-in-europe-before-friday-deadline/2011/05/24/AFrxmIAH_story.html; Charlie Savage, *Deal Reached on Extension of Patriot Act*, N.Y. Times, May 19, 2011, *available at* http://www.nytimes.com/2011/05/20/us/20patriot.html; Editorial, *In Patriot Act vote, Tea Party stands up for civil liberties*, Boston Globe, Feb. 14, 2011, *available at* http://www.boston.com/bostonglobe/editorial_opinion/editorials/articles/2011/02/14/in_patriot_act_vote_tea_party_stands_up_for_civil_liberties/; Tom Gantert, *Civil Liberties Concerns Caused Amash to Vote Against PATRIOT Act*, Michigan Capitol Confidential, Feb. 11, 2011, *available at*
http://www.michigancapitolconfidential.com/14549; Charlie Savage, *Battle Looms Over the Patriot Act, supra* note 3.

[11] *See, e.g.*, *4 senators win promise of a Patriot Act hearing*, Assoc. Press, May 26, 2011, *available at*
http://www.boston.com/news/nation/washington/articles/2011/05/26/2_senators_win_promise_of_patriot_act_hearings/; Spencer Ackerman, *There's a Secret Patriot Act, Senator Says*, Wired.com, *see supra* note 2; "*Secret*" *legal interpretation of Patriot Act provisions troubles 4 Senators*, Assoc. Press, May 26, 2011, *available at* http://www.washingtonpost.com/politics/secret-legal-interpretation-of-patriot-act-provisions-troubles-2-senators/2011/05/26/AGFczGCH_story.html; "*Secret*" *legal interpretation of Patriot Act provisions troubles 2 Senators*, Assoc. Press, May 26, 2011, *available at* http://www.washingtonpost.com/politics/secret-legal-interpretation-of-patriot-act-provisions-troubles-2-senators/2011/05/26/AG7ffICH_story.html; Charlie Savage, *Senators Say Patriot Act Is Being Misinterpreted*, N.Y. Times, May 26, 2011; *see supra*, note 2; Steven Aftergood, *Sen. Wyden Decries "Secret Law" on PATRIOT Act*, Secrecy News, May 25, 2011, *available at* http://www.fas.org/blog/secrecy/2011/05/wyden_secret_law.html; Marcy Wheeler, *Wyden and Udall Want Obama to Admit to Secret Collection Program*, Emptywheel, May 24, 2011, *available at* http://emptywheel.firedoglake.com/2011/05/24/wyden-and-udall-want-obama-to-admit-to-secret-collection-program/.

used Section 215 powers 21 times in 2009[12] and 96 times in 2010,[13] Senators Ron Wyden and Mark Udall, along with others, recently proffered an amendment to address the government's "secret[] reinterpretation [of] public laws and statutes in a manner that is inconsistent with the public's understanding of these laws."[14] In that same congressional session, Senator Ron Wyden stated in open Congress that he "certainly believe[s] the public will be surprised again when they learn about some of the interpretations of the PATRIOT Act," suggesting that the FBI's numbers or public statements may be misleading or incomplete.[15]

### IV. Application for Waiver or Limitation of Fees

#### A. A waiver of search, review, and duplication fees is warranted under 28 C.F.R. § 16.11(k)(1).

The ACLU is entitled to a waiver of search, review, and duplication fees because disclosure of the requested records is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11(k)(1).

The requesters are making this request specifically to further the public's understanding of the government's use of surveillance powers inside the United States. As the dozens of new articles cited above make clear, disclosure of the requested records will contribute significantly to public understanding of the operations and activities of the government. *See* 28 C.F.R. § 16.11(k)(1)(i). Disclosure is not in the ACLU's commercial interest. Any information disclosed by the government in response to this FOIA request will be made available to the public at no

---

[12] *See* Letter to the Hon. Joseph R. Biden, Jr., Department of Justice, Office of Legislative Affairs, Apr. 30, 2011, *available at* http://www.fas.org/irp/agency/doj/fisa/2009rept.pdf.

[13] *See* Letter to the Hon. Harry Reid, Department of Justice, Office of Legislative Affairs, Apr. 29, 2011, *available at* http://www.fas.org/irp/agency/doj/fisa/2010rept.pdf.

[14] *See* 157 Cong. Rec. S3283 (daily ed. May 24, 2011) (SA 339, amendment of Mr. Wyden), *available at* http://www.gpo.gov/fdsys/pkg/CREC-2011-05-24/pdf/CREC-2011-05-24-pt1-PgS3281.pdf#page=3

[15] *See* 157 Cong. Rec. S3258-62, (daily ed. May 24, 2011), *available at* http://www.gpo.gov/fdsys/pkg/CREC-2011-05-24/pdf/CREC-2011-05-24-pt1-PgS3247-7.pdf#page=1.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

cost. A fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requests.'" (citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (Dec. 31, 2007) (finding that "disclosure, not secrecy, is the dominant objective of the Act," but that "in practice, the Freedom of Information Act has not always lived up to the ideals of the Act").

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

B.  <u>A waiver of search and review fees is warranted under 5 U.S.C. § 551(a)(4)(A)(ii) and 28 C.F.R. 16.11(c)(1)-(3), (d)(1).</u>

A waiver of search and review fees is warranted because the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 551(a)(4)(A)(ii); 28 C.F.R. §§ 16.11(c)(1)-(3), (d)(1). The ACLU is a representative of the news media in that it is an organization "actively gathering news for an entity that is organized and operated to publish or broadcast news to the public," where "news" is defined as "information that is about current events or that would be of current interest to the public." 5 U.S.C. § 552(a)(4)(A)(ii)(II); 28 C.F.R. § 16.11(b)(6). Accordingly, fees associated with the processing of the Request should be "limited to reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II); 28 C.F.R. § 16.11 (d) (search and review fees shall not be charged to "representatives of the news media"); *id.* § 16.11(c)(3) (review fees charged only for "commercial use request[s]").

The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that "gathers information from a variety of sources," exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *cf. ACLU v. Dep't of Justice*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information." *See e.g., Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding nonprofit public interest group that disseminated an electronic newsletter and

published books was a "representative of the media" for purposes of FOIA).[16]

If the request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Please be advised that, because we are requesting expedited processing under 28 C.F.R. §§ 16.11(d)(1)(iv) as well as 16.11(d)(1)(ii), we are sending a copy of this letter to DOJ's Office of Public Affairs. Whatever the determination of that office, we look forward to your reply within 20 business days, as the statue requires under section 552(a)(6)(A)(I).

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Jameel Jaffer
Deputy Legal Director
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[16] On account of these factors, fees associated with responding to FOIA requests are regularly waived on the grounds that the ACLU is a "representative of the news media." In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the Department of State granted a fee waiver to the ACLU with respect to its request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the Department of Justice granted the ACLU a fee waiver with respect to the same request. In May 2005, the Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with respect to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views. Also, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge and belief.

Alexander Abdo
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. 212-519-7814
Fax 212-549-2654

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

# EXHIBIT B

**U.S. Department of Justice**

Office of Legal Counsel

_Washington, D.C. 20530_

March 15, 2012

Jameel Jaffer
Deputy Legal Director
American Civil Liberties Union
125 Broad St., 18th Floor
New York, New York   10004

Dear Mr. Jaffer:

This letter responds to your Freedom of Information Act (FOIA) request to the Office of Legal Counsel (OLC) dated May 31, 2011.   We understand that the ACLU has stipulated in _ACLU v. FBI_, 11 Civ. 7562 (S.D.N.Y.), that the request is limited to OLC legal opinions and memoranda concerning or interpreting Section 215 of the USA Patriot Act.   We have searched OLC's files and found two documents that are responsive to your request.   We are withholding the documents pursuant to FOIA Exemption Five, 5 U.S.C. § 552(b)(5).   They are protected by the deliberative process privilege, and they are not appropriate for discretionary release.

In addition, in response to your FOIA request, the Office of Information Policy has referred one document to OLC for direct response to the ACLU.   That document is the same as one of the two documents described above.

Although I am aware that your request is the subject of ongoing litigation and appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.   Any administrative appeal must be received within 60 days of the date of this letter by the Office of Information Policy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001.   Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Paul P. Colborn
Special Counsel

# EXHIBIT C



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General          *Washington, D.C. 20530*

April 7, 2011

The Honorable Dianne Feinstein
Chairman
The Honorable Saxby Chambliss
Vice Chairman
Select Committee on Intelligence
United States Senate
Washington, D.C. 20510

Dear Madam Chairman and Mr. Vice Chairman:

    This responds to a request from Committee staff for an opinion by the Office of Legal Counsel dated January 4, 2010. This opinion was provided to the Foreign Intelligence Surveillance Court (FISC) in connection with an application submitted by the Department in a matter that is concluded.

    We provided the Committee with the Supplemental Order of the FISC and our underlying application because we determined that the Order constitutes a significant construction or interpretation of a provision of the Foreign Intelligence Surveillance Act of 1978, as amended. *See* 50 U.S.C. § 1871(c). We ask that the Committee maintain the confidentiality of this opinion, which provided confidential legal advice to a client and has not been released publicly.

    We hope that this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this, or any other matter.

Sincerely,

Ronald Weich
Assistant Attorney General

Enclosure