**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

Defendant.

11 Civ. 7562 (WHP)

**SECOND SUPPLEMENTAL DECLARATION OF MARK A. BRADLEY**

I, Mark A. Bradley, do hereby state and declare as follows:

1.      I am the Director of the Freedom of Information Act ("FOIA") and

Declassification Unit of the Office of Law and Policy in the National Security Division ("NSD")

of the United States Department of Justice ("DOJ" or "Department").  NSD is a component of

the Department.

2.      In addition, under a written delegation of authority pursuant to section 1.3(c) of

Executive Order 13526, I hold original classification authority at the TOP SECRET level.  I am

authorized, therefore, to conduct classification reviews and to make original classification and

declassification decisions.

3.      I submit this supplemental declaration in further support of DOJ's Motion for

Summary Judgment in the above-captioned case.  I make the statements herein on the basis of

personal knowledge, as well as on information acquired by me in the course of performing my

official duties.

4.      Attached hereto as Attachment A is an unclassified index setting forth certain

information regarding documents withheld in full and in part by NSD in this case.

   5.  On April 18, 2013, I submitted a supplemental declaration and unclassified

*Vaughn* index in *Electronic Frontier Foundation v. United States Department of Justice*, 11 Civ.

5211 (N.D. Cal.) ("*EFF v. DOJ*").  *See* Second Supplemental Public Declaration of Mark A.

Bradley ("April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration"), dated April

18, 2013, filed in *Electronic Frontier Foundation v. United States Department of Justice*, 11 Civ.

5211 (N.D. Cal.) (attached as Exhibit B).  Like this case, *EFF v. DOJ* involves a FOIA request

relating to Section 215 of the USA PATRIOT Act.  A significant number of documents that are

responsive to the FOIA request at issue in *EFF v. DOJ* are also responsive to the ACLU's

request in this case.

   6.  The April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration and

accompanying unclassified index were submitted in response to an order from the United States

District Court for the Northern District of California, dated March 26, 2013 ("March 26 N.D.

Cal. Order") (attached as Exhibit C).  In that order, the court required the Government to file a

further public declaration that set forth, for certain documents, the following information:

> (1) the number of pages;
> (2) the specific category of the document . . . ;
> (3) the FOIA exemption(s) claimed;
> (4) the basis for claiming the exemption(s), *i.e.*, an articulation of the harm to
> national security that would result from the disclosure of the information; and
> (5) an explanation of why there is no reasonably segregable portion of the
> document that can be disclosed.

March 26 N.D. Cal. Order, at 2-3.  In the alternative, the *EFF* court ordered the Government to

provide "an explanation as to why that information cannot be provided on the public record." *Id.*

at 3.  In the April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration and

accompanying unclassified index, the Government set forth additional information requested by

the *EFF* court for the withheld documents, including the total number of pages of each document; the specific category of the document; and the exemption(s) claimed.  The dates of the majority of the individual documents were also included along with an overall date range for the rest.  A true and complete copy of all materials submitted by the Government to the EFF court in response to the March 26 N.D. Cal. Order is attached hereto as Attachment B.

   7.  Because my supplemental declaration in response to the March 26 N.D. Cal. Order was publicly filed, and in order to ensure that the record in this case contains as much public information as reasonably possible, I am submitting the instant declaration, along with a supplemental unclassified index of the documents that have been withheld in this case.  As noted in Paragraph 4, the supplemental unclassified index is attached hereto as Attachment A.  The supplemental unclassified index being filed herewith contains the same information that is contained in the unclassified index accompanying the April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration.  The only differences between the unclassified index accompanying the April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration and the unclassified index attached hereto as Exhibit A consist of modifications of the numbering of the documents in the index to correlate to the numbering previously used in this case; to add to the index certain documents at issue in this case but not at issue in *EFF v. DOJ*; to remove from the index the document already addressed by the Court's ruling in *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012); and to add Exemption 3 to the exemptions asserted for Document 119.[1]

---

[1] For the Court's ease of reference, the Government has numbered the documents in the unclassified index to match the numbering contained in the Government's classified submission, dated February 8, 2013.  In the process of drafting the unclassified index, the Government noticed certain errors in the dates contained in the descriptions in the classified index of Documents 11, 31, 61, and 72.  The Government has corrected these typographical errors.

8.     In the April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration, I addressed the particular issues raised by the district court in that case, including: (i) the harm to national security that would result from disclosure of the information being withheld; (ii) a further explanation as to why information is not reasonably segregable from the withheld documents; (iii) a further explanation as to why only a general description can be provided for Foreign Intelligence Surveillance Court ("FISC") materials, orders and opinions (as well as why specific dates cannot be provided for those materials); (iv) the basis for withholding information pursuant to Exemption 3 of the FOIA (as applicable); and (v) the basis for withholding one particular document pursuant to Exemption 5 of the FOIA and, within that document, the names of two rank-and-file attorneys pursuant to Exemptions 6 and 7(c) of the FOIA.

**I.     Harm to National Security that Would Result from Disclosure of Information Withheld Pursuant to FOIA Exemption 1**

9.     The March 26 N.D. Cal. Order instructed the Government to provide a further "articulation of the harm to national security that would result from the disclosure of the information" at issue in that matter.   March 26 N.D. Cal. Order at 3.   The response I provided is set forth below and is equally applicable in this case:

> The articulation that I am able to provide publicly for the Exemption 1 withholding of each withheld document is the same in substance.  Specifically, all of the withheld NSD records at issue meet the criteria for classification as set forth in subparagraphs (c) and (g) of Section 1.4 of Executive Order 13526, which respectively authorize the classification of information concerning "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security," which includes defense against transnational terrorism.  All of the records withheld by NSD are properly classified at the TOP SECRET or SECRET levels.

> In more detailed (but still unclassified) terms, the withheld material contains specific descriptions of the manner and means by which the United States Government acquires tangible things for certain authorized investigations pursuant to Section 215.  The withheld information includes specific descriptions

of highly sensitive intelligence activities, sources and methods. Disclosure of this information would provide our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities. I have therefore determined that the disclosure of the withheld material could reasonably be expected to cause serious or exceptionally grave damage to the national security of the United States and, thus, that the withheld material is therefore properly classified at the SECRET and TOP SECRET levels, respectively.

In addition, all of the withheld, classified material describes intelligence sources and methods and cannot be disclosed under the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 which protects intelligence sources and methods from unauthorized disclosure. 50 U.S.C. § 403-1(i)(1). Thus, in documents for which Exemption 3 is invoked in Exhibit A to this Declaration, the withheld information is also protected from disclosure by FOIA Exemption 3 which states that FOIA's disclosure provisions do not apply to material that is specifically exempt from disclosure by statute. I respectfully refer the Court to the classified declaration I previously submitted for in camera, ex parte review, for a fuller explanation of the highly significant intelligence sources, methods and activities at issue and the harm to national security that would result from the disclosure of this information.

April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration, at ¶¶ 5-7.[2]

## II.   There Are No Reasonably Segregable Portions of the Documents Withheld In Full By NSD That Can Be Disclosed

10.    The *EFF* court also instructed the Government to "address the issue of segregability" and ordered that a further explanation be provided as to why no reasonably segregable portions of the document responsives to the request may be disclosed. March 26 N.D. Cal. Order, at 3. The response I provided is set forth below and is equally applicable in this case:

FOIA requires that the Government release "any reasonably segregable portion of a record" after proper application of the FOIA exemptions. 5 U.S.C. § 552(b). As set forth further below, after careful review, I have determined that none of the otherwise unclassified information in NSD's withheld documents can be reasonably segregated from this highly sensitive, classified information and released. I have found, in particular, that the legal analysis in the withheld

---

[2] As in *EFF v. DOJ*, the Government filed a classified declaration in this case. *See* Notice of Classified Filing, dated February 8, 2013, filed in *ACLU v. FBI*, 11 Civ. 7562 (WHP).

documents cannot reasonably be segregated and released without risking disclosure of the manner and means by which the United States Government acquires tangible things for certain authorized investigations pursuant to Section 215. I have also determined that segregating these documents would produce misleading and/or meaningless sets of words and phrases which would have minimal or no informational content.

As a general matter, the withheld documents are classified in full because they discuss the use of the government's FISA authority in court-authorized intelligence collection pursuant to Section 215. These applications of the FISA include descriptions of highly sensitive intelligence collection sources, methods and activities by the United States that are properly classified pursuant to subparagraphs (c) and (g) of Section 1.4 of Executive Order 13526 at the SECRET and TOP SECRET levels.

Executive Order 13526 § 1.7(e) states, "[c]ompilations of items of information that are individually unclassified may be classified if the compiled information reveals an additional association or relationship that … meets the standards for classification under [Executive Order 13526]." This provision of the Executive Order is a recognition that seemingly mundane and non-sensitive material could, when viewed in the context of other available information, reveal highly sensitive information to sophisticated adversaries of the United States. For the FISC materials, opinions and orders at issue in this case, it is my judgment that any information in those documents that, viewed in isolation, could be considered unclassified, when combined with other information that might be available to the public, can reasonably be expected to reveal (directly or by implication) classified national security information concerning the timing or nature of intelligence activities. In these circumstances, the disclosure of even seemingly mundane portions of the FISC materials, when considered in conjunction with other publicly available information, could reasonably be expected to assist a sophisticated adversary in deducing particular intelligence activities or sources and methods, and possibly lead to the use of countermeasures that may deprive the United States of critical intelligence.

For example, in my judgment, although certain legal analysis set forth in the FISC materials at issue in this case would be unclassified when viewed in isolation, it is not reasonably segregable because, particularly when viewed in the context of this FOIA request, it would tend to reveal information about classified intelligence sources, methods, and activities at issue in the balance of the document. In particular, legal analysis would tend to reveal the legal question being analyzed and the particular aspects of the statute being considered, and thus would reveal how statutory authority and judicial authority is being applied in a specific context to the use or application of a particular intelligence source and method. Accordingly, while it is unclassified that the FISA authorizes the United States Government to acquire tangible things for certain authorized investigations pursuant to Section 215, the legal analysis set forth in a FISC application, order, or opinion could tend to reveal how that authority is being applied in a particular

setting and, thus, the nature of the source and method being utilized by the
Government.   Even something as seemingly innocuous as a particular case
citation or statutory provision, when juxtaposed with the fact that the document in
question contains significant legal analysis of an application of Section 215, could
reveal the particular issue being examined and, thus, risks disclosure of the
existence, nature, or scope of an underlying intelligence collection method, or
other sensitive information concerning an intelligence method.   By the very nature
of how the law is set forth and examined in a particular application or opinion of
the FISC, the nature of how the Government has proposed to use FISA authority,
and how the FISC has analyzed whether to approve that use, would tend to reveal
the intelligence capabilities and particular activities far beyond the general notion
that the Government may be using Section 215 to collect information. For these
reasons, I have determined that the FISC materials, opinions and orders are not
reasonably segregable, including as to legal analysis they contain.[3]

April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration, at ¶¶ 8-11.

### A.   Revealing the Exact Dates of Certain Withheld Documents Would, Itself, Tend to Reveal Classified Information

11.      Finally, although not specifically raised by the *EFF* court's order, I stated in the

April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration that I had also

determined that providing further information regarding the particular dates for some of the

documents at issue in that request, including the FISC materials at issue would also tend to

reveal classified information.   My explanation is set forth below and is equally applicable in this

case:

> In my prior, unclassified declaration, I provided date ranges for various
> categories of withheld documents, such as stating that the withheld materials
> submitted to, or opinions and/or orders issued by, the FISC were dated between
> February 2006 and February 2011.   In my judgment, providing further
> information concerning the dates of withheld records that contain significant legal
> interpretation or analysis of Section 215 would tend to reveal non-public
> information about when the government was or was not using those authorities.
> When combined with information that is public or otherwise already known to

---

[3]It should also be noted that some of the material in the relevant portions of the
responsive documents that could, when viewed in isolation, be unclassified, is so inextricably
intertwined with the classified material that the release of that non-exempt information would
produce only incomplete, fragmented, unintelligible sentences and/or phrases that are devoid of
any meaning.   This unclassified material does not contain any meaningful information
responsive to the plaintiff's FOIA request.

adversaries of the United States, such information could be used to extrapolate how and when, and how often, the government has used its Section 215 authority and correlate the use of that authority to certain events that may be public or otherwise known to adversaries of the United States. Accordingly, I have determined that the disclosure of further information as to the specific dates of some of the withheld materials, particularly FISC materials, could tend to reveal information concerning an intelligence collection method and could reasonably be expected to cause serious or exceptionally grave damage to, *inter alia*, national security for the reasons I discussed above in paragraph 7.

April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration, at 12.

### B.    The Rules and Procedures of the Foreign Intelligence Surveillance Court Restrict the Government From Disclosing FISC Records.

12.    Next, in the April 18 *EFF v. DOJ* Second Supplemental Public Bradley

Declaration, I explained that the rules and procedures of the FISC restrict the Government from

disclosing FISC records. The explanation I provided is set forth below and is equally applicable

in this case:

> As I have discussed above, some of the withheld documents are opinions or orders issued by the FISC, a court established by statute but consisting of judges appointed pursuant to Article III of the Constitution. These opinions or orders are FISC records. Section 1803(c) of FISA states, "[r]ecords of proceedings under this Act, including applications made and orders granted, shall be maintained under security measures established by the Chief Justice in consultation with the Attorney General and the Director of National Intelligence." 50 U.S.C. § 1803(c). In addition, section 1861(f)(5) of FISA states, "All petitions under this subsection shall be filed under seal." 50 U.S.C. § 1861(f)(5). And under Rule 62(b) of the FISC rules, a FISC order or opinion may not be released by the Clerk "without a Court order." To date, the FISC has not issued any orders releasing these opinions or orders. Moreover, the FISC procedures, at Rule 62(c)(1), provide that the "government may provide copies of [FISC] orders, opinions, decisions, or other [FISC] records, to Congress, pursuant to . . . statutory requirement, without prior motion to and order by the [FISC]. The government, however, must contemporaneously notify the Court in writing whenever it provides copies of [FISC] records to Congress and must include in the notice a list of the documents provided." The FISC procedures do not authorize the government to provide FISC records to any other entity, including another Article III Court, without "prior motion to and order by" the FISC. The Government understands these FISC rules to prohibit the Government from releasing any portion of the opinions, including any unclassified portions,[4] without a FISC

---

[4] As I have explained, the FISC records withheld here are all properly classified.

order. Thus, no portion of these opinions can be segregated and released to
plaintiffs for that reason, in addition to those I discussed above.

April 18 *EFF v. DOJ* Second Supplemental Public Bradley Declaration, at 13.

### III.   Document No. 119 is an Internal Legal Memorandum Properly Withheld Pursuant to Exemption 5 As Well As Exemption 1

13.     Finally, in the April 18 *EFF v. DOJ* Second Supplemental Public Bradley

Declaration, I addressed a particular document that was listed on the Government's index,

explaining that it was properly withheld pursuant to Exemption 5 as well as Exemption 1. The

Government had not previously invoked Exemption 5 with respect to this document. In *EFF v.

DOJ*, the document is Document No. 98. In this case, the document is Document No. 119.

Document No. 119  is a memorandum prepared by, and addressed to, attorneys within NSD

discusses whether and how to proceed with a certain argument before the FISC, and makes a

recommendation to a senior attorney. Upon further review, NSD has determined that this record

is exempt from disclosure pursuant to the attorney work product doctrine and deliberative

process prongs of FOIA Exemption 5, 5 U.S.C. § 552(b)(5), as well as Exemption 1.[5]

14.     Exemption 5 protects documents that would normally be privileged in the civil

discovery context. The attorney work product doctrine is incorporated into the protection of

Exemption 5. The attorney work product doctrine protects documents prepared by an attorney,

among others, as part of, or in reasonable anticipation of, litigation.

15.     The internal NSD memorandum in question here, Document No. 119 in

Attachment A, is a memorandum prepared by NSD attorneys in reasonable anticipation of

litigation concerning the submission of an application seeking tangible things before the FISC.

The memorandum analyzes a particular legal question involving the FISA, discusses the legal

---

[5] The justification for withholding this document pursuant to Exemption 1 is set forth in
paragraphs 9 through 11 herein.

question, and makes a recommendation as to how the Department of Justice should proceed in advancing an application seeking tangible things to the FISC. Because this memorandum would be protected in civil discovery pursuant to the attorney work product doctrine, it is protected from public disclosure by FOIA Exemption 5. Moreover, because the attorney work product doctrine applies to an attorney's work product in its entirety, including any factual material, there are no segregable portions of the memorandum that are not protected by the attorney work product doctrine and Exemption 5.

16.     The deliberative process privilege is also incorporated into the protection of Exemption 5. The deliberative process privilege is intended to prevent injury to the quality of agency decisions. Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations may properly be withheld. Disclosure of this type of information would have an inhibiting effect upon agency decision-making and the development of policy because it would chill full and frank discussions between agency personnel and decision-makers regarding the decision at issue. If agency personnel knew that their preliminary recommendations, impressions, opinions, evaluations, or comments would be released for public consumption, they would be less candid and more circumspect in expressing their thoughts, which would impede the full and complete discussion of issues necessary to reach a well-reasoned decision.

17.     The deliberative process privilege applies to information that is both "predecisional" and "deliberative." Information is "predecisional" if it temporally precedes the decision or policy to which it relates. It is "deliberative" if it consists of recommendations or advice on legal or policy matters, or reflects the give-and-take of the consultative process.

18.     The deliberative process privilege applies to Document No. 119, an internal NSD

legal recommendation memo.  The memo considered whether to proceed with a certain argument before the FISC in connection with the submission of an application seeking tangible things, and recommended to the decision-maker a course to take.  The memorandum is predecisional in that it preceded a final decision, and deliberative because it played a part in the process by which decisions were made in the relevant matter before the FISC.  The decision-maker did not expressly adopt or incorporate the memorandum, Document No. 119.

19.     Document No. 119 is also properly withheld in its entirety under Exemption 1 because it is properly classified as SECRET.  As explained in Paragraph 5 above, the withheld memorandum includes specific descriptions of highly sensitive intelligence activities, sources and methods.  Disclosure of this information would provide our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities.  And for the reasons discussed above in Paragraph 6, there are no portions of Document No. 119 that may be reasonably segregated from the classified information and released.

20.     While Attachment A notes that Document No. 119 was addressed to senior NSD/OI officials Matthew Olsen, Charles Steele, and Lionel Kennedy, the names of the rank-and-file attorneys who prepared the memorandum are properly withheld pursuant to FOIA Exemptions 6 and 7(c).  Plaintiff has informed the Government, through counsel, that it does not contest these Exemption 6 and 7(c) withholdings.  *See* Declaration of Emily Daughtry, dated February 8, 2013, Exhibit 5.

IV.     **The Government Has Determined That Exemption 3 Applies to All of the Documents Withheld in Full or In Part By NSD**

21.     After further consideration, the Government has determined that Exemption 3

applies to all of the documents withheld either in full or in part by NSD.  In my prior unclassified declaration, dated February 8, 2013, I stated that "some of the withheld information is also exempt form disclosure pursuant to FOIA Exemption 3."  Declaration of Mark Bradley, dated February 8, 2013, at ¶ 15.  After receipt of the March 26 N.D. Cal. Order, the Government undertook to review its application of Exemption 3, and determined that it should apply to all of the withheld information.  My supplemental classified declaration, dated April 26, 2013, provides further information on the Government's assertion of Exemption 3.

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 26th day of April 2013

Mark A. Bradley