UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION, *et al.*,

Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION, *et al.*,

Defendants.

11 Civ. 7562 (WHP)

ECF CASE

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
bharoules@nyclu.org
aeisenberg@nyclu.org

Charles S. Sims (CS-0624)
Proskauer Rose LLP
11 Times Square
New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900
csims@proskauer.com

Alexander Abdo (AA-0527)
Jameel Jaffer (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
aabdo@aclu.org
jjaffer@aclu.org

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................................1

BACKGROUND ......................................................................................................................3

    A.    Section 215 of the Patriot Act. ...............................................................................3

    B.    The FOIA request. ....................................................................................................5

    C.    The scope of the remaining dispute. .......................................................................6

    D.    The Court's prior ruling in this case. .......................................................................7

STATUTORY FRAMEWORK ...................................................................................................8

ARGUMENT ...........................................................................................................................9

    I.    The Court should not consider the government's *in camera*, *ex parte* declarations. ...........................................................................................................9

    II.    Legal interpretations of public laws are not "intelligence sources and methods" under Exemptions 1 and 3, or "vulnerabilities or capabilities" under Exemption 1 ...........................................................................................11

        A.    Exemption 1 does not allow the government to withhold legal interpretations of the scope of Section 215. .............................................11

        B.    The government has failed to satisfy its burden of withholding records under Exemption 3. ...............................................................16

        C.    FOIA's aversion to "secret law" bolsters the conclusion that legal analysis is not an "intelligence source or method" within the meaning of the government's withholding authorities. .........................17

    III.    The FISC's rules do not bar the government from disclosing FISC opinions under FOIA. .......................................................................................19

    IV.    The Census Act OLC memo cannot be withheld as deliberative under Exemption 5 because it embodies the DOJ's working law or, alternatively, because it has been adopted and relied upon by the agency. ................................23

CONCLUSION ......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Associated Press v. Dep't of Defense,*
    554 F.3d 274 (2d Cir. 2009).................................................................................8

*Brennan Ctr. for Justice v. DOJ,*
    697 F.3d 184 (2d Cir. 2012)...............................................................................17

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (1980)...........................................................................................23

*Ctr. for Nat'l Sec. Studies v. DOJ,*
    331 F.3d 918 (D.C. Cir. 2003)............................................................................8

*DOJ v. Reporters Comm. for Freedom of Press,*
    489 U.S. 749 (1989)............................................................................................8

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990)..........................................................................15

*Goldberg v. Dep't of State,*
    818 F.2d 71 (D.C. Cir. 1987).............................................................................9

*Grand Cent. P'ship., Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999)..............................................................................23

*Halpern v. FBI,*
    181 F.3d 279 (2d Cir. 1999)........................................................................10, 12

*Hardy v. Bureau of Alcohol, Tobacco & Firearms,*
    631 F.2d 653 (9th Cir. 1980) .............................................................................17

*Hopkins v. HUD,*
    929 F.2d 81 (2d Cir. 1991).................................................................................23

*In re Motion for Release of Court Records,*
    526 F. Supp. 2d 484 (FISA Ct. 2007)....................................................19, 21, 22

*Int'l Counsel Bureau v. Dep't of Defense,*
    723 F. Supp. 2d 54 (D.D.C. 2010) .....................................................................8

*John Doe Corp. v. John Doe Agency,*
    850 F.2d 105 (2d Cir. 1988), *rev'd on other grounds,* 493 U.S. 146 (1989)..........................10

*Jordan v. DOJ,*
    591 F.2d 753 (D.C. Cir. 1978) ..................................................................17, 18

*Judicial Watch, Inc. v. Food & Drug Admin.,*
    449 F.3d 141 (D.C. Cir. 2006) ...........................................................................10

*Keys v. DOJ,*
    830 F.2d 337 (D.C. Cir. 1987) ...........................................................................10

*Larson v. Dep't of State,*
    565 F.3d 857 (D.C. Cir. 2009) .........................................................................9, 12

*Lawyers Comm. for Human Rights v. Immigration & Naturalization Serv.,*
    721 F. Supp. 552 (S.D.N.Y. 1989) .....................................................................10

*Mistretta v. United States,*
    488 U.S. 361 (1989) ..........................................................................................21

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..........................................................................................21

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth.,*
    684 F.3d 286 (2d Cir. 2011) ...............................................................................10

*N.Y. Times Co. v. DOJ,*
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ........................................................7, 8, 13

*N.Y. Times Co. v. Dep't of Defense,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ...........................................................16, 17

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ..........................................................................................22

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ............................................................................................8

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ................................................................................2, 17, 23

*Riser v. Dep't of State,*
    No. 09-CV-3273, 2010 WL 4284925 (S.D. Tex. Oct. 22, 2010) .........................16

*Sibbach v. Wilson & Co.,*
    312 U.S. 1 (1941) ..............................................................................................21

*Sterling Drug, Inc. v. FTC,*
    450 F.2d 698 (D.C. Cir. 1971) ...........................................................................23

*Stokes v. Brennan*,
      476 F.2d 699 (5th Cir. 1973) ............................................................................17

*Wilner v. Nat'l Sec. Agency*,
      592 F.3d 60 (2d Cir. 2009)................................................................................8

**STATUTES**

5 U.S.C. § 552 ................................................................................................................1

5 U.S.C. § 552(a)(2)(A) ................................................................................................2

5 U.S.C. § 552(a)(2)(B) ................................................................................................2

5 U.S.C. § 552(b)(1) ...................................................................................11, 19, 20

5 U.S.C. § 552(b)(1)(A) ..............................................................................................18

5 U.S.C. § 552(b)(3)(A) ..............................................................................................16

5 U.S.C. § 552(b)(5) ....................................................................................................23

13 U.S.C. §§ 8–9, 14 ....................................................................................................23

50 U.S.C. § 403-1(i) .....................................................................................................16

50 U.S.C. §§ 1801, *et seq* ............................................................................................1

50 U.S.C. § 1803(g)(1) ................................................................................................21

50 U.S.C. § 1861 ...........................................................................................................18

50 U.S.C. § 1861(a)(1)..............................................................................................1, 3

50 U.S.C. § 1861(b)(1)(A) ..........................................................................................13

50 U.S.C. § 1861(b)(2)(A)...................................................................................1, 3, 16

50 U.S.C. § 1861(c), (d)................................................................................................1

Using and Strengthening America by Providing Appropriate Tools Required to Intercept
      and Obstruct Terrorism Act of 2001, Pub L. No. 107-56, 115 Stat. 272 (Oct. 26,
      2001) ................................................................................................................1

**OTHER AUTHORITIES**

28 C.F.R. § 0.25(a), (c) ................................................................................................24

155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) .....................................................5

157 Cong. Rec. S3258 (daily ed. May 24, 2011)................................................................4

157 Cong. Rec. S3260 (daily ed. May 24, 2011)................................................................4

157 Cong. Rec. S3283 (daily ed. May 24, 2011)................................................................4

157 Cong. Rec. S3360 (daily ed. May 25, 2011)................................................................4

157 Cong. Rec. S3386 (daily ed. May 26, 2011)................................................................4

157 Cong. Rec. S3389 (daily ed. May 26, 2011)................................................................4

E.O. 13,526 § 1.1(4)................................................................................................12

E.O. 13,526 § 1.4.................................................................................................11

FISA Ct. R.P. 1..................................................................................................21

FISA Ct. R.P. 7(i), (j)..........................................................................................20

FISA Ct. R. P. 11(d)............................................................................................25

FISA Ct. R.P. 17(b)............................................................................................20

FISA Ct. R.P. 62(a)............................................................................................20

Memorandum for Attorneys of the Office, U.S. Department of Justice, Office of Legal
    Counsel, *Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16,
    2010), *available at* http://www.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf................24

Memorandum for Attorneys of the Office, U.S. Department of Justice, Office of Legal
    Counsel, *Re: Best Practices for OLC Opinions* (May 16, 2005), *available at*
    http://www.fas.org/irp/agency/doj/olc/best-practices.pdf........................................24

Memorandum from Joshua B. Bolton, Director, Office of Management and Budget, *Use
    of Government Funds for Video News Releases to Heads of Departments and
    Agencies* (Mar. 11, 2005), *available at* http://1.usa.gov/160d4dt...........................24

Sen. Richard Durbin, Remarks at the Senate Judiciary Committee Executive Business
    Meeting (Oct. 1, 2009), *available at* http://1.usa.gov/103CleD ...............................5

Testimony of Jack L. Goldsmith before U.S. Senate Committee on the Judiciary, Oct. 2,
    2007, *available at* http://1.usa.gov/160dpNf ...................................................24

Testimony of John P. Elwood before the U.S. Senate Committee on the Judiciary, Apr.
    30, 2008, *available at* http://1.usa.gov/160dmB8................................................24

**INTRODUCTION**

Plaintiffs respectfully submit this memorandum of law in support of their cross-motion for summary judgment on their Complaint brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and in opposition to the government's motion for summary judgment.

This case raises a question of national importance: does FOIA require the government to disclose its legal interpretation of Section 215 of the Patriot Act,[1] or may the government continue to keep its legal interpretation secret from the public?

Section 215, which amended the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1801 *et seq*. ("FISA"), empowers the Director of the FBI to obtain secret court orders from the Foreign Intelligence Surveillance Court ("FISC") compelling third parties to produce "any tangible things" relevant to an authorized foreign-intelligence or terrorism investigation. 50 U.S.C. § 1861(a)(1), (b)(2)(A). The orders are accompanied by a gag order forbidding recipients—such as telecommunications companies, credit card companies, hospitals, or educational institutions—from disclosing having received the order. 50 U.S.C. § 1861(c), (d).

For several years, senators have been warning the public that the government is relying upon a secret, misleading, and arguably unlawful interpretation of its authority under Section 215 to collect Americans' sensitive and private information. In May 2011, Plaintiffs filed a FOIA request for the government's interpretation of its legal authority to conduct surveillance under Section 215. The government now acknowledges that it possesses dozens of responsive records

---

[1] Using and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001).

that contain substantial legal analysis of its authority under Section 215. But it has withheld those records in full under FOIA Exemptions 1, 3, and 5.[2]

The crux of the government's claim under Exemptions 1 and 3 is that disclosing legal analysis of Section 215 would reveal its "intelligence sources or methods" or the "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans or protection services relating to the national security." Gov't Br. 12. This argument is plainly inadequate to justify the withholding of the legal interpretation of Section 215: legal analysis is neither an "intelligence source or method" nor a "vulnerability or capability." This conclusion flows directly from the text of the government's withholding authorities, which protect classified *facts*, not interpretations of *law*. The conclusion is bolstered by one of Congress' overriding purposes in enacting FOIA, which was to eliminate "secret law" by exposing the government's working law to public scrutiny. As the Supreme Court has observed, Congress expressed that purpose most clearly in FOIA not through the text of any particular exemption, but through the statute's affirmative-disclosure provisions, which obligate agencies to publish their "final opinions," 5 U.S.C. § 552(a)(2)(A), and "those statements of policy and interpretations which have been adopted by the agency," *id.* § 552(a)(2)(B). *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975).

In a supplemental declaration, the government argues that even if legal analysis is unclassified, disclosing it could reveal classified information. It is undoubtedly true that legal analysis may sometimes be inextricably intertwined with classified information. But this principle would be relevant here only if, for example, disclosing the government's legal analysis would expose never-before-disclosed methods or capabilities of the government. The

---

[2] Plaintiffs now withdraw their challenge to the government's withholdings under Exemption 7.

2

government does not claim—nor is there any reason to think—that releasing redacted versions of the records Plaintiffs seek would do so.

The government also claims that it may withhold an OLC memo—relating to the interplay between the disclosure provisions of Section 215 and the non-disclosure provisions of the Census Act—as deliberative material under Exemption 5. But because that memo reflects the executive branch's final and conclusive interpretation of law, rather than the OLC's predecisional deliberations, Exemption 5 does not apply. That fact is essentially indisputable given the government's submission of the memo to the FISC in support of a surveillance application.

For these reasons and those below, the Court should deny the government's motion for summary judgment, grant Plaintiffs' cross-motion for summary judgment, and direct the disclosure of all records that would reveal the scope of the government's legal authority under Section 215 of the Patriot Act. At a minimum, the Court should review the withheld records *in camera* to determine which portions of the government's legal analysis must be released and which are inseparable from properly classified facts.

## BACKGROUND

### A.    Section 215 of the Patriot Act.

Section 215 allows the Director of the FBI to obtain a secret court order from the FISC compelling third parties to produce "any tangible things" relevant to an authorized foreign-intelligence or terrorism investigation. 50 U.S.C. § 1861(a)(1), (b)(2)(A).

The seeming breadth of Section 215 and the odd statutory phrase "any tangible things" have raised many questions about the proper interpretation and reach of the government's surveillance authority under the statute. Although the government has not revealed how it or the FISC interprets that phrase or the statute's relevance requirement, a number of elected officials

who have been briefed on the executive branch's legal interpretation have openly doubted the legitimacy of the government's interpretation of Section 215.

When Section 215 was scheduled to expire in 2011, Senators Ron Wyden and Mark Udall co-sponsored an amendment to its reauthorization that would have prohibited government officials from "secretly reinterpret[ing] public laws and statutes" and "describ[ing] the execution of these laws in a way that misinforms or misleads the public." *See* 157 Cong. Rec. S3360 (daily ed. May 25, 2011) (SA 384 to S. 990, 112th Cong. § 3 (2011)). Senators Wyden and Udall aimed to restrict government officials from "secretly . . . reinterpret[ing] public laws and statutes in a manner that is inconsistent with the public's understanding of these laws." *See* 157 Cong. Rec. S3283 (daily ed. May 24, 2011). In a speech on the Senate floor, Senator Wyden declared:

> I have served on the Intelligence Committee for over a decade and I wish to deliver a warning this afternoon. When the American people find out how their government has secretly interpreted the PATRIOT Act, they are going to be stunned and they are going to be angry . . . . The fact is anyone can read the plain text of the PATRIOT Act. Yet many Members of Congress have no idea how the law is being secretly interpreted by the executive branch.

157 Cong. Rec. S3386 (daily ed. May 26, 2011). Senator Udall echoed those concerns about the scope of Section 215: "Congress is granting powers to the executive branch that lead to abuse, and, frankly, shield the executive branch from accountability." 157 Cong. Rec. S3258 (daily ed. May 24, 2011); *see also* 157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall) (further noting that the executive's "official interpretation of" the nation's laws should not "be kept secret"). Senator Wyden further stated that he "certainly believe[s] the public will be surprised again when they learn about some of the interpretations of the PATRIOT Act." *See* 157 Cong. Rec. S3260 (daily ed. May 24, 2011).

Senators Wyden and Udall were particularly direct with their concerns about the way Section 215 is being used, but they are not the only senators who have highlighted the need for

greater transparency. In 2009, Senator Richard Durbin, a member of the Senate Judiciary Committee, stated that the government's use of "Section 215 is unfortunately cloaked in secrecy. Some day that cloak will be lifted, and future generations will ask whether our actions today meet the test of a democratic society: transparency, accountability, and fidelity to the rule of law and our Constitution." Sen. Richard Durbin, Remarks at the Senate Judiciary Committee Executive Business Meeting, (Oct. 1, 2009), *available at* http://1.usa.gov/103CleD (remarks begin at 68:00). Likewise, then-Senator Russ Feingold, a member of both the Senate Judiciary Committee and the Senate Select Committee on Intelligence, argued that there "is information about the use of Section 215 orders that I believe Congress and the American people deserve to know . . . . [T]he American people deserve to know at least basic information about how [Section 215 orders] have been used." 155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) (statement of Sen. Feingold).

### B.    The FOIA request.

On May 31, 2011, the ACLU submitted a FOIA request to several components of the Department of Justice ("DOJ")—the FBI, the Office of Information Policy, the Office of Public Affairs, the Office of Legal Counsel ("OLC"), and the National Security Division ("NSD")— seeking records related to the government's legal interpretation of Section 215. The ACLU's FOIA request asked for "any and all records indicating the kinds or types of information that may, as a matter of policy or law, be obtained through the use of Section 215," but excluded "the names or identities" of the recipients or targets of Section 215 orders. Compl. ¶¶ 23–24.

In a letter dated August 22, 2011, the NSD released three items in response to the ACLU's request and communicated a determination to withhold other responsive items and records. *See id.* ¶ 6. The ACLU exhausted its administrative remedies, *id.* ¶¶ 38–44, and then filed this suit on October 26, 2011.

### C.      The scope of the remaining dispute.

The parties have since substantially narrowed the scope of the dispute in three ways.

First, on December 9, 2011, the Court approved the parties' stipulation narrowing the ACLU's request to final, non-draft versions of records memorializing the following:

1.   Legal opinions or memoranda concerning or interpreting Section 215;

2.   Guidelines for government personnel regarding the use of Section 215;

3.   Reports provided to Congress by the FBI or DOJ concerning or memorializing the executive branch's interpretation or use of Section 215;

4.   Rulings, opinions, or memoranda of the FISC concerning or interpreting Section 215; and

5.   Legal opinions or memoranda concerning or interpreting Section 215.

Stipulation ¶ 1, Dec. 9, 2011, ECF No. 10. The stipulation also excluded several categories of records from the request, *see id.* ¶¶ 2–4, 6 (excluding drafts of records, acquisition applications or supporting documentation submitted to the FISC, emails, and records located with or in the possession of the Office of Public Affairs), and it limited the request with respect to the OLC to legal opinions and memoranda concerning or interpreting Section 215, *id.* ¶ 5.

Second, on December 13, 2012, Plaintiffs limited their challenge to only those records likely to contain any discussion of the scope of the government's legal authority under Section 215. Based on information provided by the government, Plaintiffs elected to challenge only the following categories of withheld records:

1.   **FBI:** Six documents that apparently consist of instructions and forms for initiating a request under Section 215;

2.   **OLC:** One legal memorandum prepared by the OLC concerning the interaction between the disclosure provisions in the Patriot Act and the prohibitions on disclosure in the Census Act, 13 U.S.C. §§ 8–9, 214 (2006);

3.   **OIP:** A two-page letter, dated December 17, 2009, from Ronald Weich, Associate Attorney General, to Representative John Conyers, then-Chairman of the House Judiciary Committee, regarding the reauthorization of several provisions of the Patriot Act; and

4.   **NSD:** All records in four categories identified by the NSD:

    a.   FISC materials, including opinions and orders issued by the FISC and legal memoranda and reports submitted by the government to the FISC;

    b.   Guidelines, procedures, and training materials for the use of Section 215;

    c.   Reports and supporting documentation submitted to Congress regarding Section 215; and

    d.   Executive memoranda, analysis, and communications regarding Section 215.

*See* Email from Alex Abdo, Esq. to John Clopper and Emily E. Daughtry, Assistant U.S. Attorneys (Dec. 13, 2012) (Daughtry Decl. Ex. 2).

Finally, and also on December 13, 2012, Plaintiffs clarified that, as to the NSD records, they sought only those portions of the records that would reveal:

1.   "the types of information or 'tangible things' that the government believes Section 215 authorizes it to collect," or

2.   "the nature of the relevance standard that the government or the FISA Court uses to determine whether an application under Section 215 is valid."

*Id.*

With this filing, Plaintiffs further narrow the scope of the remaining dispute by withdrawing their challenges to the government's withholding of the FBI records, the OIP letter, and NSD document 119.

In summary, the only records now at issue are the NSD records (except document 119) and the OLC memorandum, and Plaintiffs challenge the government's withholding of these records only to the extent that they describe the government's legal authority under Section 215. The government has withheld that information under Exemptions 1, 3, 5.

**D.**    **The Court's prior ruling in this case.**

On May 17, 2012, this Court issued a consolidated ruling in both this case and a related case filed by the New York Times Company. *See N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012). The Times' request sought a single document: a report provided to Congress

relating to specific foreign intelligence collection authorized by Section 215. *See id.* at 312.

Because Plaintiffs also requested that report, the parties in both cases suggested that the Court

accept summary-judgment briefing with respect to that report alone. The Court did so and

granted the government's motion for partial summary judgment in this case, agreeing with the

government that the report was properly withheld because it "'contains specific descriptions of

the manner and means by which the United States Government acquires tangible things . . .

pursuant to Section 215.'" *Id.* at 316 (quoting Unclassified Bradley Decl. ¶ 9).

## STATUTORY FRAMEWORK

FOIA is intended to safeguard the American public's right to know "what their

government is up to." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)

(internal quotation omitted). The central purpose of the statute is "to ensure an informed

citizenry, vital to the functioning of a democratic society, needed . . . to hold the governors

accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

To effectuate that purpose, the courts enforce a strong presumption in favor of disclosure.

*Associated Press v. Dep't of Defense*, 554 F.3d 274, 283 (2d Cir. 2009). The burden is on the

agency to justify withholding any requested records, whether in whole or in part, and all doubts

should be resolved in favor of disclosure. *Id.*; *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60,

69 (2d Cir. 2009) ("The agency asserting the exemption bears the burden of proof, and all doubts

as to the applicability of the exemption must be resolved in favor of disclosure.").

Although courts afford "some measure of deference to the executive" when assessing

predictions of harm in FOIA cases implicating national security, *Ctr. for Nat'l Sec. Studies v.*

*DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003), "deference is not equivalent to acquiescence," *Int'l*

*Counsel Bureau v. Dep't of Defense*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (internal quotation

omitted). The deference owed diminishes neither the government's obligation to satisfy its substantive and procedural obligations under FOIA, *see Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009), nor the court's "independent responsibility" to conduct a thorough *de novo* review, *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions.").

## ARGUMENT

The primary question in this suit is whether the government's legal interpretation of Section 215 of the Patriot Act is an "intelligence source or method" within the meaning of Exemptions 1 and 3, or a "vulnerability or capability" within the meaning of Exemption 1. It is not. As explained more fully below, this conclusion flows directly from the language of the government's withholding authorities, and it is bolstered by FOIA's overarching purpose of eliminating secret law.

The government has also invoked Exemption 5 to withhold an OLC memo relating to the interplay between Section 215 and the Census Act. That withholding fails because the memo is not deliberative. OLC opinions such as the one withheld reflect the final legal policy of the executive branch, and they bind executive agencies. Moreover, the government's own account of its reliance on this memo suggests that it has been adopted as a matter of policy.

For these reasons, explained more fully below, the Court should order the government to disclose segregable information from the withheld records that would reveal the government's legal interpretation of Section 215.

## I.    The Court should not consider the government's *in camera*, *ex parte* declarations.

Before addressing the merits of the government's withholdings, Plaintiffs respectfully submit that consideration of the government's *in camera* and *ex parte* submissions, *see* Bradley

Decl. ¶ 3; Second Bradley Decl. ¶ 21, would be procedurally improper at this time. FOIA law strongly disfavors reliance upon *in camera*, *ex parte* submissions and permits such reliance only *after* the government has submitted as detailed a public explanation of its withholdings as possible. *See, e.g.*, *John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 110 (2d Cir. 1988) ("*In camera* review of a *Vaughn* index and interrogatory answers is unusual, and differs significantly from *in camera* review of the actual requested documents, a procedure expressly authorized by the FOIA."), *rev'd on other grounds*, 493 U.S. 146 (1989); *Lawyers Comm. for Human Rights v. Immigration & Naturalization Serv.*, 721 F. Supp. 552, 568 (S.D.N.Y. 1989).

This standard protocol—of requiring the government to justify its withholdings publicly in as much detail as possible before permitting the extraordinary recourse to secret filings—serves two purposes. First, it "enables the adversary system to operate by giving the requester as much information as possible," thereby enabling the court to "fulfill its duty of ruling on the applicability of the exemption." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting *Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987)) (internal quotation marks omitted); *Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999). Second, it adheres to the overriding preference in our democracy for public access to judicial proceedings and records. *See N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2011).

Here, the government has proceeded backwards by submitting a public declaration containing virtually no description of the withheld records or explanation for their withholding. *See* Bradley Decl. ¶¶ 12, 14. Moreover, the declaration does not once attempt to grapple with the central issue in this case of whether disclosing *legal* analysis relating to Section 215—which is all Plaintiffs requested—would somehow disclose classified information.

The government's second declaration suffers many of the same defects. It defends the government's withholdings in unacceptably broad and vague terms. *See* Second Bradley Decl. ¶ 9 ("In more detailed (but still unclassified) terms, the withheld material contains specific descriptions of the manner and means by which the United States Government acquires tangible things for certain authorized investigations pursuant to Section 215."). And it parrots the language of the government's withholding authorities without real explanation. *See, e.g.*, *id.* ("The withheld information includes specific descriptions of highly sensitive intelligence activities, sources and methods."). While the second declaration offers a modicum of additional explanation for the government's segregability determination, *see id.* ¶ 10, that explanation applies to only one subset of the withheld records—the "FISC materials, opinions, and orders," *id.*—and does not even attempt to explain how disclosing legal analysis in other records would reveal classified information.

For these reasons, the Court should not review the government's *ex parte* submissions until the government attempts to publicly justify its withholdings in as much detail as possible.

## II. Legal interpretations of public laws are not "intelligence sources and methods" under Exemptions 1 and 3, or "vulnerabilities or capabilities" under Exemption 1.

### A. Exemption 1 does not allow the government to withhold legal interpretations of the scope of Section 215.

Exemption 1 allows the withholding of records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Under the applicable Executive Order, information can be classified only if it falls within one of eight enumerated categories of classifiable information, E.O. 13,526 § 1.4; if the original classification authority determines that "disclosure of the information reasonably could

be expected to result in damage to the national security," *id.* § 1.1(4); and if the authority is "able to identify or describe the damage," *id.*

Here, the government contends that the withheld records—including the legal analysis and conclusions sought by Plaintiffs—fall within subsections 1.4(c) and 1.4(g) of the Executive Order, which allow the classification of "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans or protection services relating to the national security." *See* Gov't Br. 12. The government's declarations fail to explain how legal analysis and conclusions can possibly fall within these categories. Legal interpretation is not an intelligence "activity," "source," or "method"; nor is it a "vulnerabilit[y] or capabilit[y] of systems, installations, infrastructures, projects, plans or protections services." The government's declarations resort simply to reciting the Executive Order's standards and asserting they have been met. Gov't Br. 12–14. But government assurances that parrot the relevant statutory language are not enough to avoid disclosure under FOIA. *Halpern*, 181 F.3d at 295; *Larson*, 565 F.3d at 864.

Even if the withheld records contain protectable intelligence sources and methods, Plaintiffs seek the disclosure only of "information that would reveal either (a) the types of information or 'tangible things' that the government believes Section 215 authorizes it to collect, or (b) the nature of the relevance standard that the government or the FISA Court uses to determine whether an application under Section 215 is valid." Email from Alex Abdo, Esq. to John Clopper and Emily E. Daughtry, Assistant U.S. Attorneys (Dec. 13, 2012) (Daughtry Decl. Ex. 2). They do not seek disclosure of information concerning the targets of the government's

investigations under Section 215 or the technology used to acquire information authorized for collection under Section 215.

The withheld records very likely contain this sort of segregable legal analysis. For example, the NSD records include legal orders and opinions issued by the FISC, the court charged with evaluating and acting upon the government's applications for orders under Section 215. *See* 50 U.S.C. § 1861(b)(1)(A). The FISC's orders and opinions necessarily set forth the court's understanding of the law. Senators Wyden and Udall confirmed as much in a letter sent to Attorney General Eric Holder in 2011. Sims Decl. Ex. 1 (Letter from Senators Ron Wyden and Mark Udall to Attorney General Eric Holder (Sept. 21, 2011)) ("significant interpretations of section 215 of the Patriot Act are contained in classified opinions of the Foreign Intelligence Surveillance Court"). Similarly, the NSD records containing analysis of Section 215 and guidelines relating to its use almost certainly describe its legal scope.

Of course, in some circumstances legal analysis might be "inextricably intertwined" with properly classifiable information and thus withheld. *See, e.g.*, *N.Y. Times Co.*, 872 F. Supp. 2d at 318.[3] But here there is every reason to believe that the government's legal analysis can be segregated from classified facts in the FISC's legal opinions and the NSD's guidelines relating to the use of Section 215. These records almost certainly describe the scope of Section 215 in a way that may be segregated for disclosure without compromising "intelligence sources or methods," particular investigations, or Section 215 applications.

---

[3] In this Court's earlier decision, the Court understood Plaintiffs to be arguing that Exemptions 1 and 3 admit of a "freestanding" exception for secret law. *N.Y. Times Co.*, 872 F. Supp. 2d at 317. Plaintiffs respectfully clarify that they do not make that contention and apologize for any confusion in prior presentations to the Court. Plaintiffs argue simply that legal interpretation is not an "intelligence source or method" or a "vulnerability or capability" within the meaning of the government's withholding authorities, and that it must be segregated for release unless inextricably intertwined with properly classified information. That conclusion is bolstered by the congressional aversion to "secret law" manifested in FOIA, but it is rooted in the text of FOIA itself.

The government's supplemental declaration argues that legal analysis cannot be segregated from properly classified information because "legal analysis would tend to reveal . . . how statutory authority and judicial authority is being applied in a specific context to the use or application of a particular intelligence source and method." *See* Second Bradley Decl. ¶ 10. The government argues, in essence, that a savvy FOIA requester could uncover its intelligence sources or methods by examining the unclassified legal reasoning and citations contained in FISC orders. But this argument is overbroad and does not apply to the vast majority of legal analysis related to Section 215 for three reasons.

First, assuming that the legal analysis withheld by the government is in a FISC opinion analyzing whether a particular type of information qualifies as a "tangible thing" within the meaning of Section 215, the government may withhold that legal analysis only if the government has never before disclosed its technological capability to obtain or its interest in obtaining that "tangible thing" (and disclosing that fact would cause describable harm to the national security). But the government may not withhold the legal analysis solely to conceal the *authority* for its acquisition—namely, Section 215. The government has myriad sources of authority to eavesdrop, wiretap, or acquire intelligence, but the scope or selection of a particular source of authority is not classifiable because that fact is not an "intelligence source or method" or a "vulnerability or capability" within the meaning of Exemption 1. It reflects only the scope of the government's legal authority to act under public laws.

For example, if a FISC opinion interpreted Section 215 to authorize the government to acquire information already known to be within the government's technological grasp, such as email (not a "tangible thing" at all) or DNA, that legal analysis would have to be disclosed because it would only confirm three facts—none of which may be classified. First, it would

14

suggest that the government is technologically capable of acquiring DNA or email, but that fact has already been officially acknowledged and is no longer classifiable (if it ever was). *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim."). Second, it would tend to suggest that the government has sought to acquire DNA or email on at least one occasion, but that fact, too, is already officially known. And finally, it would confirm the *legal authority* relied upon by the government to acquire DNA or email—Section 215, as opposed to Federal Rule of Criminal Procedure 41 or some other legal authority. But that fact is not classifiable.

On the other hand, if a FISC order interpreted Section 215 to authorize the government to acquire information *not* already known to be within the government's technological grasp, the government could withhold that legal analysis to protect the secrecy of the underlying technological capability, if disclosing it would cause harm to the national security. Similarly, the government could classify a FISC order's authorization for the acquisition of information that the government has never before publicly admitted it has sought, if exposing its interest in that information in a single case would cause describable damage to the national security.

Second, the government's logic at most applies to those portions of FISC orders and opinions that adjudicate specific government applications under Section 215 and therefore reflect the government's capabilities and interests. It does not apply to the many other records withheld—such as the numerous guidelines relating to Section 215, *see, e.g.*, Second Bradley Decl. Ex. A, Nos. 17–28, 31, 52–62—that would reveal only the limits of the government's legal authority rather than its technological capability.

15

Finally, even if the government's logic for withholding legal analysis applies to interpretations of the term "any tangible things," it most certainly does not apply to interpretations of the relevance standard of Section 215. *See* 50 U.S.C. § 1861(b)(2)(A) (requiring "reasonable grounds to believe that the tangible things sought are relevant to an authorized investigation"). It is difficult to fathom how an abstract explanation of the relevance standard could possibly be so intermingled with classified facts as to be inseparable.

**B.      The government has failed to satisfy its burden of withholding records under Exemption 3.**

Under Exemption 3, an agency need not "disclose matters that are . . . specifically exempted from disclosure by statute . . . provided that such statute refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). Here, the government has withheld all of the NSD records pursuant to Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 403-1(i), which authorizes the Director of National Intelligence or his designee to protect "intelligence sources and methods." As explained above, legal interpretation is not an "intelligence source or method," and it can generally be segregated from classified facts.

The government's reliance on Exemption 3 fails, however, for another reason: the Department of Justice cannot invoke the National Security Act, 50 U.S.C. § 403-1(i), on its own authority. The statute itself provides that the "Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." *Id.* The government has submitted no evidence that the Director of National Intelligence or his designee has exercised that authority to protect the information at issue in this case. Nor has the government cited any statute, regulation, or case suggesting that the Department of Justice may rely on the statute on its own behalf. *Cf. Riser v. Dep't of State*, No. 09-CV-3273, 2010 WL 4284925, at *4 (S.D. Tex. Oct. 22, 2010) (rejecting State Department's invocation of the National Security Act); *N.Y.*

16

*Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 507 n.3, 512 (S.D.N.Y. 2007) (withholding

based on declaration from Director of National Intelligence).

> **C.    FOIA's aversion to "secret law" bolsters the conclusion that legal analysis is not an "intelligence source or method" within the meaning of the government's withholding authorities.**

The conclusion that legal analysis is not an "intelligence source or method" is bolstered

by FOIA's purpose of eliminating "secret law." As Plaintiffs' first brief in this lawsuit explained,

Pls.' Br. 8–17, ECF No. 24, "[o]ne of the principal purposes of the Freedom of Information Act

is to eliminate 'secret law.'" *Jordan v. DOJ*, 591 F.2d 753, 781 (D.C. Cir. 1978) (Bazelon, J.,

concurring); *see also Stokes v. Brennan*, 476 F.2d 699, 702 n.3 (5th Cir. 1973) (agreeing that

"secret law is an abomination" (internal quotation marks omitted)). Though that aversion has

manifested itself primarily in the "working law" doctrine of Exemption 5, *see, e.g.*, *Brennan Ctr.*

*for Justice v. DOJ*, 697 F.3d 184 (2d Cir. 2012), it is rooted in the affirmative-disclosure

provisions of FOIA and should inform judicial understanding of all FOIA exemptions. *See, e.g.*,

*Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d 653, 657 (9th Cir. 1980) (noting that

"secret law" is not exempt under Exemption 2).[4]

FOIA's aversion to secret law is relevant to this Court's analysis in two ways.

First, it should cause this Court to carefully scrutinize the government's claim that it

cannot segregate legal analysis from information that would disclose classified facts, such as

"intelligence sources and methods." As explained above, elected officials have cautioned that

---

[4] In *Sears*, 421 U.S. at 153, for example, the Supreme Court evaluated an Exemption 5 withholding by looking to "the other provisions of" FOIA. The Court explained:

> The affirmative portion of the Act, expressly requiring indexing of 'final opinions,' 'statements of policy and interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public,' 5 U.S.C. s 552(a)(2), represents a strong congressional aversion to 'secret (agency) law,' and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law.' H.R. Rep. No. 1497, p. 7, [U.S. Code Cong. & Admin. News, 1966, p. 2424.]

*Id.* Based on Congress' stated desire to make public documents having "the force and effect of law," the Court expressed reluctance to construe FOIA to permit the withholding of a legal interpretation. *Id.*

there is a growing gap between the government's and the public's understandings of Section 215. *See supra* Background Part A. This gap constitutes precisely the type of secret law that Congress intended to eliminate through the enactment of FOIA. *See Jordan*, 591 F.2d at 781.

Moreover, the dangers of secret law are particularly pronounced in this case because the targets of surveillance under Section 215 are unlikely ever to learn of—or be able to challenge— the provision of their information to the government. Section 215 authorizes the government to obtain a sealed, *ex parte* order from the FISC requiring third parties to turn over citizens' personal and business records. 50 U.S.C. § 1861. Citizens targeted under Section 215 are not informed if or when their records are requested by or produced to the government, and entities that receive Section 215 orders are prohibited from disclosing that receipt. *Id.* The secrecy shrouding the government's interpretation of Section 215 and the practical unavailability of any means for targeted citizens to challenge their surveillance make it all the more important that the public be informed of the scope of the government's claimed legal authority.

Second, FOIA's purpose of exposing secret law counsels skepticism about the government's claim that exposing its legal interpretation of Section 215 would cause the kind of harm that FOIA was meant to prevent. Through Exemption 1, Congress authorized the government to withhold information "in the interest of national defense or foreign policy." 5 U.S.C. § 552(b)(1)(A). The government's claim appears to be that the national defense would be compromised by exposing the scope of its legal authority to surveil Americans. *See* Sims Decl. Ex. 2 (Letter from Sen. Ron Wyden and Sen. Mark Udall to Attorney General Eric Holder (Mar. 15, 2012) ("The crux of the Justice Department's argument for keeping the official interpretation of [Section 215] secret is that this secrecy prevents US adversaries from understanding exactly what intelligence agencies are allowed to do.")). Congress' enactment of FOIA with the purpose

of eliminating secret law reflects a congressional rejection of that conclusion. Even if disclosing the government's legal authority could in some attenuated sense hinder our intelligence efforts, our society has rejected such secrecy to protect larger democratic interests. *See id.* ("We can see how it might be tempting to latch on to this chilling logic, but we would note that it would then follow that *all* of America's surveillance laws should be secret, because that would make it even harder to guess how the United States government collects information.").

### III.   The FISC's rules do not bar the government from disclosing FISC opinions under FOIA.

The government argues that the FISC's procedural rules operate as a separate bar to releasing FISC orders and opinions under FOIA. Second Bradley Decl. ¶ 12. But the FISC's rules contain no such restriction, and the FISC could not unilaterally amend FOIA through judicial rulemaking. Instead, the FISC's procedures are designed to protect the government's interest in classified information, and thus the rules sweep no more broadly than Exemption 1, which protects the same interest. *See* 5 U.S.C. § 552(b)(1). Importantly, the FISC itself has acknowledged the availability of FOIA to obtain FISC records and opinions: "nothing in this decision forecloses the ACLU from pursuing whatever remedies may be available to it in a district court through a FOIA request addressed to the Executive Branch." *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 497 (FISA Ct. 2007). The government itself has been even more forceful, having previously insisted that FOIA was "the only appropriate avenue" for obtaining FISC records or opinions. Br. for Government at 5–7, *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484 (FISA Ct. 2007). These statements confirm that the FISC's Rules provide no independent exemption to FOIA, and the government is estopped from taking a contrary position before this Court.

19

The FISC's Rules, including those identified by the government, are designed to ensure that the FISC does not improperly disclose classified information, not to relieve the government of its FOIA obligations. Thus, Rule 3 sets out the baseline principle for the court's operation: "In all matters, the Court and its staff shall comply with the security measures established pursuant to 50 U.S.C. §§ 1803(c), 1822(e), 1861(f)(4), and 1881(k)(1), as well as Executive Order 13526." *See also* FISA Ct. R.P. 7(i), (j) (addressing security clearances and *in camera* review of classified information); FISA Ct. R.P. 17(b) (requiring that non-adversarial proceedings be conducted within the Court's secure facility). FISC rules concerning the release of court records serve the same underlying purpose. For instance, the Rules require that the FISC confer with the executive branch prior to publishing its opinions "as necessary to ensure that properly classified information is appropriately protected." FISA Ct. R.P. 62(a). These procedures do not serve to protect an independent judicial interest, but to safeguard information that is properly classified. By its terms, Exemption 1 does the same in the FOIA context. 5 U.S.C. § 552(b)(1).

The government identifies no FISC rule that affirmatively bars it from disclosing FISC records under FOIA. Rather, the government points to Rule 62, which primarily addresses the circumstances in which the FISC *itself* may release court records.[5] Subsections (a), (b), and (c)(2) protect the executive branch's interest in classified information. The remaining subsection, (c)(1), simply acknowledges preexisting statutory obligations of the government and requires that it notify the FISC when it shares FISC orders with Congress. None of these procedures prohibits the government from releasing FISC records under FOIA.

The FISC's Rules do not and could not alter the balance adopted by Congress in FOIA. The FISC, like other courts, is authorized to promulgate "rules and procedures . . . reasonably

---

[5] A copy of FISC Rule 62 is appended to this brief.

necessary to administer [its] responsibilities." 50 U.S.C. § 1803(g)(1); *see also* FISA Ct. R.P. 1.

But Congress did not create a new exemption under FOIA when it established the FISC, nor has

it delegated to the FISC any authority to create new FOIA exemptions through the FISC's

procedural rules. Such a delegation would, in any event, violate the separation of powers—as

would any unilateral FISC rulemaking that diminished the public's substantive rights under

FOIA. *See Mistretta v. United States*, 488 U.S. 361, 383 (1989) (The Judicial Branch should

"neither be assigned nor allowed 'tasks that are more properly accomplished by [other]

branches.'" (quoting *Morrison v. Olson*, 487 U.S. 654, 680–81 (1988))); *Sibbach v. Wilson &

Co.*, 312 U.S. 1, 9–10 (1941) (Congress may delegate procedural rulemaking authority to the

Judicial Branch but not the power to alter substantive rights.).

 Significantly, both the FISC and the government have previously indicated that the

FISC's Rules do not displace the government's disclosure obligations under FOIA. In declining

to find a common-law or First Amendment right of access to FISC records, the FISC has pointed

to FOIA as a substitute: "the availability of judicial review under FOIA would militate against

recognizing a common law right of access to the records of this unique (and uniquely nonpublic)

court." *In re Motion for Release of Court Records*, 526 F. Supp. 2d at 491 n.18. The FISC also

conceded that nothing in its decision "foreclose[d] the ACLU from pursuing whatever remedies

may be available to it in a district court through a FOIA request addressed to the Executive

Branch." *Id.* at 497. Surely, the FISC is familiar with its own rules, yet these statements show

that it does not regard those rules as an obstacle to disclosure under FOIA.

 Moreover, the government is judicially estopped from arguing that the FISC procedures

preempt disclosure under FOIA, having prevailed in reliance on a directly contrary position in

proceedings before the FISC itself. *See* Br. for Government at 5–7, *In re Motion for Release of*

*Court Records*, 526 F. Supp. 2d 484 (FISA Ct. 2007). As the government told the FISC, "FOIA

is the only appropriate avenue" for obtaining access to the court's records. *Id*. at 5. In opposing

the ACLU's petition to the FISC seeking access to several of the court's legal opinions, the

government could not have been clearer:

> Congress, in enacting the FISA, did not allow for the relief the ACLU seeks from
> this Court. Instead, Congress chose to allow individuals to request the release of
> information from the *Executive Branch* under FOIA, and specifically exempted
> classified information from the disclosure obligations imposed by FOIA. *See* 5
> U.S.C. § 552(b)(l). Under FOIA, the ACLU cannot ask this Court for its orders
> because FOIA applies only to Executive Branch agency records. *See* 5 U.S.C.
> § 552(a), (f)(l). The ACLU can use FOIA, however, to seek access to FISC orders
> and Government briefs in the Executive Branch's possession. The FOIA process,
> which combines an initial review and decision by the Executive Branch on the
> release and withholding of information with Judicial Branch review in an
> adversary and public proceeding, is the proper means for the ACLU to seek
> records of this Court's proceedings from the Executive Branch.

*Id.* As noted, the FISC ultimately credited these arguments. Now, confronted with a FOIA

request seeking similar records, the government cannot take the completely contrary position

before this Court by arguing that the FISC Rules override FOIA.

Judicial estoppel precludes the government from engaging in precisely this kind of shell

game. All three factors considered by courts when applying the doctrine of judicial estoppel

favor estoppel in this case. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (describing

doctrine). First, the government's position in this Court is "clearly inconsistent" with its prior

statements to the FISC that FOIA is the only appropriate avenue for obtaining FISC records. *Id*.

Second, the FISC ultimately credited the government's position, leaving the ACLU to pursue a

request under FOIA. *See In re Motion for Release of Court Records*, 526 F. Supp. 2d at 491 n.18,

497. Third, accepting the government's contrary position in this case would impose an unfair

detriment upon the ACLU and, indeed, the integrity of the judicial process. The government

should not be permitted to tell each tribunal—the FISC and this Court—that a remedy lies in the other forum, with the consequence being that Plaintiffs are left with no remedy whatsoever.

**IV.    The Census Act OLC memo cannot be withheld as deliberative under Exemption 5 because it embodies the DOJ's working law or, alternatively, because it has been adopted and relied upon by the agency.**

Under Exemption 5, the government has withheld an OLC memo "regarding the interaction between disclosure provisions in the Patriot Act, as amended, and prohibitions on disclosure in the Census Act." Colborn Decl. ¶ 13. That memorandum embodies the DOJ's final legal opinion on whether Section 215 allows the government to acquire census data protected from disclosure by the Census Act, 13 U.S.C. §§ 8–9, 214. As such, the memo constitutes the DOJ's "working law" and may not be withheld as deliberative under Exemption 5. Moreover, the public record—especially the government's submission of the memo to the FISC—demonstrates that the DOJ views the opinion as authoritative, not deliberative.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). It "incorporate[s] into the FOIA all the normal civil discovery privileges," *Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991), including the deliberative-process privilege, which protects from disclosure records that are both deliberative and predecisional, *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). In interpreting Exemption 5, courts have distinguished between agency deliberations and final agency decisions. This bright line prevents government agencies from withholding "secret law" from the public. The D.C. Circuit, for instance, has described "binding agency opinions and interpretations" as "the law itself," which "should be made available to the public . . . to prevent the development of secret law." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (1980) (quoting *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971)); *see also Sears*, 421 U.S. at 152–53.

As a general matter, formal written opinions issued by the OLC are binding agency interpretations of the law and are therefore not protected by the deliberative-process privilege. DOJ regulations define the OLC's function as "[p]reparing the formal opinions of the Attorney General," 28 C.F.R. § 0.25(a), and "[r]endering opinions . . . on questions of law arising in the administration of the Department," *id.* § 0.25(c). According to the OLC itself, its opinions are "controlling on questions of law within the Executive Branch."[6]

The Census Act memorandum appears to be one such formal written opinion of the OLC, constituting controlling advice on a question of law. *See* Colborn Decl. ¶¶ 13, 17. Moreover, the public record reflects that the OLC disclosed the memorandum or its conclusions on at least three occasions, all demonstrating that the document was viewed as a binding interpretation of Section 215 and the Census Act. On March 3, 2010, just two months after the issuance of the OLC opinion, Assistant Attorney General Ronald Weich sent a letter to the Chair of the Congressional Hispanic Caucus stating that "the Department [of Justice]'s view is that no provisions of [the Patriot Act, including Section 215] override otherwise applicable Census Act provisions barring the Commerce Secretary and other covered individuals from disclosing protected census information possessed by the Commerce Department." Supplemental Bradley Decl. Ex. A. Approximately one year later, the OLC provided the memorandum to the Senate Select Committee on Intelligence. Colborn Decl. ¶ 17. And at some unspecified point, the

---

[6] Memorandum for Attorneys of the Office, U.S. Department of Justice, Office of Legal Counsel, *Re: Best Practices for OLC Opinions* (May 16, 2005), *available at* http://www.fas.org/irp/agency/doj/olc/best-practices.pdf; *accord* Memorandum for Attorneys of the Office, U.S. Department of Justice, Office of Legal Counsel, *Re: Best Practices for OLC Legal Advice and Written Opinions* (July 16, 2010), *available at* http://1.usa.gov/ZWlpeb; Testimony of John P. Elwood before the U.S. Senate Committee on the Judiciary, Apr. 30, 2008, *available at* http://1.usa.gov/160dmB8 (statement of former senior OLC deputy); Testimony of Jack L. Goldsmith before U.S. Senate Committee on the Judiciary, Oct. 2, 2007, *available at* http://1.usa.gov/160dpNf (statement of former head of the OLC); Memorandum from Joshua B. Bolton, Director, Office of Management and Budget, *Use of Government Funds for Video News Releases to Heads of Departments and Agencies* (Mar. 11, 2005), *available at* http://1.usa.gov/160d4dt.

government provided the memorandum to the FISC in connection with an application submitted to that court by the DOJ. Colborn Decl. ¶ 17, Ex. C.

The DOJ almost certainly submitted the opinion to the FISC in compliance with FISC Rule 11, which requires the government to file a memorandum of law in support of a FISC application "[i]f an application or other request for action raises an issue of law not previously considered by the Court." FISA Ct. R.P. 11(d). Having submitted the opinion to explain the government's official interpretation of Section 215 to the FISC, the government cannot now withhold the Census Act memo as deliberative.

The government's principal defense of the deliberative status of the OLC opinion is that the "OLC does not purport to make policy decisions, and in fact lacks the authority to make such decisions." Colborn Decl. ¶ 2. But whether or not the OLC has the authority to make substantive policy decisions, it unquestionably has the authority to issue binding interpretations of law, as it did here. Whether agencies subsequently act upon the OLC's authoritative interpretations is irrelevant to the authoritativeness of those interpretations.[7]

## CONCLUSION

For these reasons, the Court should deny the government's motion for summary judgment, grant Plaintiffs' cross-motion for summary judgment, and order the government to disclose all records that would reveal the scope of its legal authority under Section 215. At a minimum, the Court should conduct *in camera* review of the withheld records to ensure that the government has released all segregable information.

---

[7] Of course, not all OLC legal advice—or even all formal written opinions—must be disclosed under FOIA. For example, although the OLC's legal conclusions are not deliberative with respect to the OLC, the OLC's opinions may contain facts that would disclose the policy deliberations of another agency. If such an agency had not in fact adopted the policy discussed in a particular OLC opinion, then it might attempt to withhold the portions of the opinion that would disclose its internal deliberations. Even in such cases, however, the agency would not be entitled to suppress the strictly *legal* conclusions of the OLC, such as whether or not Section 215 overrides the nondisclosure provisions of the Census Act.

Respectfully submitted,

_____

Charles S. Sims (CS-0624)
Proskauer Rose LLP
11 Times Square
New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900
csims@proskauer.com

Alexander Abdo (AA-0527)
Jameel Jaffer (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
aabdo@aclu.org
jjaffer@aclu.org

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
bharoules@nyclu.org
aeisenberg@nyclu.org

*Counsel for the plaintiffs*

Dated:       New York, New York
             May 10, 2013

**APPENDIX**
**FISA Court Rule 62. Release of Court Records**.

(a) Publication of Opinions. The Judge who authored an order, opinion, or other decision may sua sponte or on motion by a party request that it be published. Upon such request, the Presiding Judge, after consulting with other Judges of the Court, may direct that an order, opinion or other decision be published. Before publication, the Court may, as appropriate, direct the Executive Branch to review the order, opinion, or other decision and redact it as necessary to ensure that properly classified information is appropriately protected pursuant to Executive Order 13526 (or its successor).

(b) Other Records. Except when an order, opinion, or other decision is published or provided to a party upon issuance, the Clerk may not release it, or other related record, without a Court order. Such records must be released in conformance with the security measures referenced in Rule 3.

(c) Provision of Court Records to Congress.

(1) By the Government. The government may provide copies of Court orders, opinions, decisions, or other Court records, to Congress, pursuant to 50 U.S.C. §§ 1871(a)(5), 1871(c), or 1881f(b)(l)(D), or any other statutory requirement, without prior motion to and order by the Court. The government, however, must contemporaneously notify the Court in writing whenever it provides copies of Court records to Congress and must include in the notice a list of the documents provided.

(2) By the Court. The Presiding Judge may provide copies of Court orders, opinions, decisions, or other Court records to Congress. Such disclosures must be made in conformance with the security measures referenced in Rule 3.