

#69

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

86 Chambers Street, 3rd Floor
New York, New York 10007

July 26, 2013

**BY HAND**
The Honorable William H. Pauley
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-131

Re: *ACLU et al. v. FBI et al.*, 11 Civ. 07562 (WHP)

Dear Judge Pauley:

    We write respectfully in response to the ACLU's letter of July 16, 2013. Citing the district court's order in *EFF v. DOJ*, Civ. No. 12-1441-ABJ (D.D.C. July 9, 2013), the ACLU asks the Court to set an "expedited timeframe" for the Government to re-review the significant volume of documents at issue in this FOIA case. In the alternative, as set forth at yesterday's status conference, the ACLU proposes that the Government complete its review of the Foreign Intelligence Surveillance Court ("FISC") opinions and orders at issue in this case by August 12, 2013. The schedule proposed by the ACLU, even as modified at the status conference, is not reasonable or workable, and would interfere with the Government's ongoing inter-agency review process designed to assess what additional information, if any, can be declassified regarding the Government's activities under Section 215 of the USA PATRIOT Act, codified at 50 U.S.C. § 1861 ("Section 215"), consistent with the continuing need to protect national security.

    As explained in the status report submitted on July 8, 2013, and further detailed in the classified declaration of Director of National Intelligence James Clapper,[1] this extraordinarily complicated review process, the goal of which is to help inform the public debate by providing as much information as possible to the American public, is taking place independent of this or any other litigation. Because of the national security interests at stake and the number of different agencies and components involved, the Government needs to be able to undertake this review in a systematic and orderly fashion, rather than reviewing currently classified

---

[1] An unclassified, redacted version of the Declaration of James Clapper, executed on July 5, 2013, is attached to this letter. Some redactions in the declaration include information that, in isolation, may be unclassified but, in the context of the discussion in the declaration, could tend to reveal information that is still classified in other settings.

programmatic information piecemeal through the lens of individual documents at issue in individual FOIA cases. The Government is endeavoring to complete this initial review process by early September. Once it has completed this process, the Government will be in a position to re-review the specific documents at issue in this and other FOIA cases, consistent with the determinations made during the initial review process.

The expedited schedule proposed by the ACLU would interfere with the Government's efforts to complete its initial review in a timely and orderly manner. The process of declassifying individual documents that relate to an ongoing national security program requires a line-by-line review by every agency or component that has interest in each document, and this process takes substantial time. Many of the officials who are reviewing documents as part of the inter-agency review process described above are the same officials required to re-review the documents at issue in the *EFF v. DOJ* case, and would be the same officials required to re-review the FISC opinions and orders in this case, should the Court grant the ACLU's request.

The Government thus urges the Court not to adopt the approach taken by the *EFF v. DOJ* court, which required that the Government "assess its position" with respect to the documents at issue in that case and "make any additional disclosures it intends to make" by August 12, 2013. That order was issued over the Government's objection, and without consideration of the DNI's classified declaration. Furthermore, issuance of a similar order in this case would be substantially more burdensome. In *EFF v. DOJ*, there are only five, related documents at issue: a FISC order, a redacted version of that same order, a white paper containing a single responsive paragraph, and two statements presented at Congressional hearings. By contrast, the ACLU has asked the Government to complete its re-review of all of the FISC opinions and orders at issue in this case by August 12, 2013, just over two weeks from today. While the precise number of FISC opinions and orders at issue in this case remains a classified fact, it is certainly well in excess of the one FISC opinion at issue in the *EFF v. DOJ* case.

Although the Government opposes the expedited schedule proposed by the ACLU, recognizing the intense public interest in these matters, the Government will attempt to complete its review of the 11 FISC opinions and/or orders individually identified in the Government's unclassified *Vaughn* index by September 15, 2013, and release any of those documents, or portions thereof, that may be determined to be releasable at the end of this process. *See* Second Supplemental Declaration of Mark A. Bradley, Attachment A, Documents 29, 32, 34, 35, 38, 47, 49, 50, 51, 79, and 121. The district court in a third FOIA case, *EFF v. DOJ*, Case No. 4:11-cv-05221-YGR (N.D. Cal. July 19, 2013), has ordered the Government to complete its classification review of the FISC opinions and orders at issue in that case, some of which overlap with the FISC opinions and orders presented in this case, by September 4, 2013, although there is currently no schedule for the production of any releasable portions of the *EFF v. DOJ* (N.D. Cal.) documents. A release date of September 15, 2013, in this case would allow the Government to complete the inter-agency review process and coordinate its efforts by setting a similar timetable for the re-review of FISC opinions and orders that are at issue in these two separate FOIA cases.

For all of these reasons, the Government respectfully requests that the Court (1) give the Government until at least September 15, 2013, to complete its re-review of the 11 FISC opinions

2

and/or orders individually identified in its unclassified *Vaughn* index, and (2) continue to hold the pending summary judgment motions in abeyance until September 6, 2013, at which time the Government will be in a position to propose a schedule for re-review of the remaining documents at issue in this case.

We respectfully request that the Court docket this letter and make it a part of the record of this case.

Respectfully,

PREET BHARARA
United States Attorney

By: _____
JOHN D. CLOPPER
EMILY DAUGHTRY
Assistant United States Attorneys
Telephone: (212) 637-2716 (Clopper)
Telephone: (212) 637-2777 (Daughtry)
Facsimile: (212) 637-0033
john.clopper@usdoj.gov
emily.daughtry@usdoj.gov

Encl.

cc: Charles Sims, Esq. (by email)
Alex Abdo, Esq. (by email)
Counsel for Plaintiffs

### (U) CLASSIFIED IN CAMERA, EX PARTE DECLARATION OF JAMES R. CLAPPER, JR., DIRECTOR OF NATIONAL INTELLIGENCE

(U)    Pursuant to 28 U.S.C. § 1746, I, James R. Clapper, Jr., hereby declare as follows:

1. (U) I am the Director of National Intelligence (DNI). Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending Sections 102 through 104 of Title I of the National Security Act of 1947), to be head of the United States Intelligence Community and the principal intelligence advisor to the President. My responsibilities include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. I am charged with establishing the objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by, elements of the Intelligence Community. 50 U.S.C. § 3024(f)(1)(A)(i) and (ii). I am also charged with protecting intelligence sources and methods from unauthorized disclosure, 50 U.S.C. § 3024(i)(1), and overseeing the coordination of intelligence relationships with foreign intelligence services. 50 U.S.C. § 3024(k). I make the following statements based on personal knowledge as well as on information made available to me in the course of my official duties.

2. (TS//SI//NF) The purpose of this declaration is to explain why the U.S. government requires a further stay of at least sixty days in the following matters: *Electronic Frontier Foundation v. Dept. of Justice*, Case No. 12-cv-1441 (D.D.C.); *Electronic Frontier Foundation*

v. *Dept. of Justice*, Case No. 4:11-cv-05221 (N.D. Cal.); *ACLU v. FBI, et al.*, Case No. 11-Civ-07562 (S.D.N.Y.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ All of these cases ▮▮▮▮▮▮ seek records under the Freedom of Information Act. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As the Court is aware, on or about June 6, 2013, *The Guardian* and *The Washington Post* published articles based on the unauthorized disclosure of top secret documents and parts of documents related to critical intelligence collection programs. The disclosed documents – and the documents implicated in this litigation – touch on some of the government's most sensitive national security programs, including highly classified and ongoing signals intelligence collection programs.[1]

3. (TS//SI//NF) For example, the court order published by *The Guardian* disclosed the government's bulk collection of telephony metadata as authorized by Section 215 of the USA Patriot Act, which amended the Foreign Intelligence Surveillance Act ("FISA"). Beginning in May 2006, the bulk collection of non-content telephony metadata was authorized by the Foreign Intelligence Surveillance Court ("FISC") pursuant to what is known as the Telephone Business

---

[1] (U) In accordance with section 1.2(a) of Executive Order 13526, the overall classification level for this declaration is TOP SECRET. This declaration also contains information further protected within a "Special Access Program" that is designated by the marking "SI." This designation refers to the Special Access Program created to control information relating to the National Security Agency's Signals Intelligence program. Because this declaration contains classified information, I am submitting it *in camera* and *ex parte*, solely for the eyes of the presiding Article III judges in these cases. It must be stored in accordance with government-approved security procedures, and in a Sensitive Compartmented Information Facility, when not in the personal possession of the presiding judges.

Records Order. The FISC found that, in order to protect against international terrorism, reasonable grounds existed to order certain telecommunication carriers to produce to the NSA in bulk "call detail records" containing "telephony metadata" pursuant to 50 U.S.C. § 1861(a)(1) (authorizing the production of business records for, *inter alia*, an investigation to protect against international terrorism). While this bulk collection is broad in scope, the NSA has been authorized by the FISC to query the archived telephony data solely with identified telephone numbers for which there are facts giving rise to a reasonable, articulable suspicion that the numbers are associated with particular foreign targets, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (referred to as a "RAS" determination), and only for the purpose of identifying numbers that have been in contact with these numbers. Bulk telephony metadata collection authorized under FISA remains an important source and method needed to utilize sophisticated analytical tools for tracking communication patterns of known terrorists.

4. (TS//SI//NF) The second program exposed as a result of the recent unauthorized disclosures involves Section 702 of the FISA. This program is distinct from Section 215 but complementary to it. Section 702 is designed to facilitate the acquisition of foreign intelligence information concerning non-U.S. persons located outside the United States. As authorized by the FISA Amendments Act of 2008 ("FAA"), Section 702 created new statutory authority and procedures that permitted the targeting of non-United States persons reasonably believed to be outside the United States without individual FISC orders, but pursuant to directives issued to telecommunications carriers by the DNI and the Attorney General under Section 702(h) of the

FISA. *See* 50 U.S.C. § 1881a(h) (as added by the FAA, P.L. 110-261). While the existence of the FAA authority is set forth in public statutory provisions, the operational details as to specific applications of the sources and methods used by the NSA to carry out that authority remain highly classified. Information collected under this program is among the most important and valuable foreign intelligence information the NSA collects, and is used to protect the country from a wide variety of threats.

5. (TS//SI//NF) The unauthorized disclosures regarding these programs have caused exceptionally grave harm to our national security and threaten long-lasting and potentially irreversible harm to our ability to identify and respond to threats. In order to correct misinformation flowing from the unauthorized disclosures, and to reassure the American public as to the numerous safeguards that protect privacy and civil liberties, I ordered the declassification of certain information regarding these two programs. *See, e.g.*, DNI Statement on Recent Unauthorized Disclosures of Classified Information (June 6, 2013)[2]; DNI Statement on Activities Authorized under Section 702 of FISA (June 6, 2013)[3]; DNI Statement on the Collection of Intelligence Pursuant to Section 702 of the Foreign Intelligence Surveillance Act (June 8, 2013)[4]. In addition, in part to reassure the American people that these programs are

---

[2] (U) *Available at* http://www.dni.gov/index.php/newsroom/press-release/191-press-releases-2013/868-dni-statement-on-recent-unauthorized-disclosures-of-classified-information.

[3] (U) *Available at* http://www.dni.gov/index.php/newsroom/press-release/191-press-releases-2013/869-dni-statement-on-activities-authorized-under-section-702-of-fisa.

[4] (U) *Available at* http://www.dni.gov/index.php/newsroom/press-release/191-press-releases-2013/872-dni-statement-on-the-collection-of-intelligence-pursuant-to-section-702-of-the-foreign-intelligence-surveillance-act.

lawfully authorized and operated, the Administration is now reviewing these programs to determine whether it can declassify additional information about them consistent with the protection of national security. To that end, the U.S. government is engaged in a large-scale, multi-agency review process to determine what information must be declassified in light of recent declassifications, and what additional information, if any, can be declassified consistent with the national security for the purpose of restoring public confidence and better explaining the legal rationale and protections surrounding the programs. The latter consideration is a policy decision that must be weighed and decided at the highest levels of government.

6. (TS//SI//NF) The complexities of such a two-pronged review cannot be overstated. Each component of the national security community – including, among others, the NSA, ███████████████████████ the Federal Bureau of Investigation, the Office of the Director of National Intelligence, and various components of the Department of Justice -- must consider each piece of information identified for possible declassification and anticipate the ramifications such declassification might have on its operations, including the ability to gather intelligence in the future. An important component of the analysis is the consideration of the information already in the public domain, and how additional disclosures may allow our adversaries to fit new pieces of information together with those already in the public domain to create an even more revealing picture of our nation's signal intelligence capabilities.

7. (TS//SI//NF) Determining what information can be declassified will also include decisions about how best to protect the still-classified details of sensitive programs that have not been officially acknowledged by the Executive Branch. ████████████████████



8. (TS//SI//NF) Further complicating the declassification process is the likelihood that the government will be faced with additional unauthorized disclosures prior to the completion of the current inter-agency review.



Declassification decisions, therefore, could be affected by further unauthorized disclosures that the government can neither predict nor control.

9. (U//FOUO) The Administration's declassification review process is actively underway within all the affected agencies. That review, as described above, involves information that extends well beyond the records and information at issue in the above-referenced actions, although they have been prioritized in the review process. Although the timely resolution of litigation is important, the complexities of the current situation require a careful and

comprehensive approach driven by the national security imperatives rather than disparate litigation schedules. I anticipate that the review process will be completed or substantially completed in early autumn. With that in mind, I respectfully request that sufficient time be allowed for the declassification review to proceed.

10. (U//FOUO) I must stress that there are no guarantees as to the outcome of this process. Although some additional information will likely be declassified, it may be that little additional information can be released to the public. Nevertheless, I can assure the courts involved in these cases that there will be nothing reflexive about the government's ultimate position with respect to the information at issue. To the extent that submissions to the court assert that information must remain classified to avoid harm to the national security, that judgment will have been the result of careful review at the highest levels of government and an exacting process taking into account U.S. government authorized disclosures.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 5, 2013

JAMES R. CLAPPER, JR.
DIRECTOR OF NATIONAL INTELLIGENCE