**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION, *et al.*,

Plaintiffs*,*

v.

FEDERAL BUREAU OF INVESTIGATION, *et al.*,

Defendants.

11 Civ. 7562 (WHP)

ECF CASE

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
bharoules@nyclu.org
aeisenberg@nyclu.org

Charles S. Sims (CS-0624)
Proskauer Rose LLP
11 Times Square
New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900
csims@proskauer.com

Patrick Toomey (PT-1452)
Alex Abdo (AA-0527)
Brett Max Kaufman (BK-2827)
Jameel Jaffer (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    A.    Section 215..................................................................................................2

    B.    Bulk Collection of Americans' Records Under Section 215 ....................................3

    C.    Other Bulk Collection Programs Under Section 215................................................5

PROCEDURAL HISTORY........................................................................................................6

    A.    Plaintiffs' FOIA Request .........................................................................................6

    B.    The Court's Prior Decision .....................................................................................7

    C.    Declassification and Disclosure of Responsive Documents....................................7

    D.    Scope of the Remaining Dispute..............................................................................7

STATUTORY FRAMEWORK AND LEGAL STANDARDS ...................................................8

ARGUMENT ..........................................................................................................................10

    I.    The government cannot justify its withholding of FISC orders and opinions related to bulk collection in their entirety. ...........................................................10

        A.    The government cannot withhold legal reasoning under Exemptions 1 or 3. ................................................................................11

        B.    The government cannot withhold information that it has publicly acknowledged. .........................................................................14

        C.    The withheld orders and opinions contain legal reasoning interpreting Section 215 and publicly acknowledged information. ...........14

        D.    The government has failed to reasonably segregate disclosable information, and has failed to satisfy its burden under FOIA for withholding responsive FISC orders and opinions in full. .......................16

    II.    The Court should evaluate the withheld documents *in camera* without deference to the government's declarations. ...................................................................21

CONCLUSION..........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*ACLU v. CIA,*
    710 F.3d 422 (D.C. Cir. 2013) .................................................................................. 19

*ACLU v. Clapper,*
    959 F. Supp. 2d 724 (S.D.N.Y. 2013) ........................................................................ 4

*Associated Press v. DOD,*
    554 F.3d 274 (2d Cir. 2009) .................................................................................. 8, 22

*Associated Press v. DOJ,*
    549 F.3d 62 (2d Cir. 2008) ........................................................................................ 22

*Berman v. CIA,*
    501 F.3d 1136 (9th Cir. 2007) .................................................................................. 12

*Carney v. DOJ,*
    19 F.3d 807 (2d Cir. 1994) ............................................................................ 9, 22, 25

*Carter v. U.S. Dep't of Commerce,*
    830 F.2d 388 (D.C. Cir. 1987) .................................................................................. 22

*CIA v. Sims,*
    471 U.S. 159 (1985) .................................................................................................... 9

*Ctr. for Nat'l Sec. Studies v. DOJ,*
    331 F.3d 918 (D.C. Cir. 2003) .................................................................................... 9

*Delaney, Migdail & Young, Chartered v. IRS,*
    826 F.2d 124 (D.C. Cir. 1987) .................................................................................. 23

*DOJ v. Reporters Comm. for Freedom of Press,*
    489 U.S. 749 (1989) .............................................................................................. 8, 13

*Goldberg v. Dep't of State,*
    818 F.2d 71 (D.C. Cir. 1987) ...................................................................................... 9

*Hall v. CIA,*
    668 F. Supp. 2d 172 (D.D.C. 2009) .......................................................................... 23

*Halperin v. CIA,*
    629 F.2d 144 (D.C. Cir. 1980) .................................................................................. 25

*Halpern v. FBI*,
181 F.3d 279 (2d Cir. 1999)..................................................................................17, 22

*Hopkins v. HUD*,
929 F.2d 81 (2d Cir. 1991)...............................................................................................16

*Int'l Counsel Bureau v. DOD*,
723 F. Supp. 2d 54 (D.D.C. 2010) ....................................................................................9

*John Doe Corp. v. John Doe Agency*,
850 F.2d 105 (2d Cir. 1988),
*rev'd on other grounds*, 493 U.S. 146 (1989)................................................................22

*Jones v. FBI*,
41 F.3d 238 (6th Cir. 1994) .............................................................................................25

*Judicial Watch, Inc. v. FDA*,
449 F.3d 141 (D.C. Cir. 2006)........................................................................................22

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009).........................................................................................17

*Lowenschuss v. W. Publ'g. Co.*,
542 F.2d 180 (3d Cir. 1976).............................................................................................13

*Military Audit Project v. Casey*,
656 F.2d 724 (D.C. Cir. 1981) .........................................................................................12

*Milner v. Dep't of Navy*,
131 S. Ct. 1259 (2011).......................................................................................................9

*N.Y. Times Co. v. DOJ*,
872 F. Supp. 2d 309 (S.D.N.Y. 2012)...............................................................7, 16, 22, 25

*N.Y. Times Co. v. DOJ*,
Nos. 13-422, 13-445, 2014 WL 1569514 (2d Cir. Apr. 21, 2014) ................................. passim

*Nash v. Lathrop*,
142 Mass. 29 (1886) ........................................................................................................13

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)............................................................................................................8

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)..........................................................................................................13

*Phillippi v. CIA*,
546 F.2d 1009 (D.C. Cir. 1976).......................................................................................12

iii

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget,*
    598 F.3d 865 (D.C. Cir. 2010) ..................................................................13

*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n,*
    533 F.3d 810 (D.C. Cir. 2008) ....................................................................8

*Quiñon v. FBI,*
    86 F.3d 1222 (D.C. Cir. 1996) ..................................................................22

*Scheiner v. Wallace,*
    No. 93 Civ. 0062, 1996 WL 633226 (S.D.N.Y. Oct. 31, 1996) ..............13

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) ................................................................10

*United States v. Duggan,*
    743 F.2d 59 (2d Cir. 1984) ........................................................................13

*United States v. U.S. Dist. Court for the E. Dist. of Mich.,*
    407 U.S. 297 (1972) ..................................................................................13

*Whitaker v. CIA,*
    No. CV 12-316, 2014 WL 914603 (D.D.C. Mar. 10, 2014) ....................12

*Wilderness Soc'y v. Dep't of Interior,*
    344 F. Supp. 2d 1 (D.D.C. 2004) ..........................................................9-10

*Wilner v. NSA,*
    592 F.3d 60 (2d Cir. 2009) .....................................................................9, 25

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ..................................................................14

**STATUTES**

5 U.S.C. § 552 ................................................................... 1, 9, 11-12, 16, 22

12 U.S.C. §§ 3401–3422 ..........................................................................24

18 U.S.C. § 2702 .......................................................................................24

50 U.S.C. § 402 ...................................................................................12, 20

50 U.S.C. § 403-1(i) ..................................................................................12

50 U.S.C. §§ 1801, *et seq.* ("FISA") .........................................................2

50 U.S.C. § 1861 .............................................................................1-2, 14-16

§ 215 of the USA PATRIOT Act (Aug. 9, 2013) ................................................................... passim

Pub L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) ....................................................................1

**OTHER AUTHORITIES**

155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) ...................................................................2

157 Cong. Rec. S3258 (daily ed. May 24, 2011) ....................................................................2

157 Cong. Rec. S3360 (daily ed. May 25, 2011) ....................................................................2

157 Cong. Rec. S3386 (daily ed. May 26, 2011) ....................................................................2

157 Cong. Rec. S3389 (daily ed. May 26, 2011) ....................................................................2

*Administration White Paper: Bulk Collection of Telephony Metadata Under Section 215 of the USA PATRIOT Act* 1 (Aug. 9, 2013) ................................................................3

Charlie Savage & Mark Mazzetti, *C.I.A. Collects Global Data on Transfers of Money*, N.Y. Times (Nov. 14, 2013) ......................................................................................... 5-6

DOJ, Office of Inspector General, *A Review of the FBI's Use of Section 215 Orders for Business Records in 2006* (2008) ................................................................................25

Eli Lake, *Spy Chief: We Should've Told You We Track Your Calls*, Daily Beast (Feb. 17, 2014) .............................................................................................................5

E.O. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) .......................................................... 11-12, 20, 24

Glenn Greenwald, *NSA Collecting Phone Records of Millions of Verizon Customers Daily*, The Guardian (June 5, 2013) ...........................................................................3

Glen Kessler, *James Clapper's "Least Untruthful" Statement to the Senate*, Wash. Post, (June 12, 2013) ........................................................................................................3

H.R. 3361, 113th Cong. (2013) ...............................................................................................4

*In re Application of the FBI for an Order Requiring the Production of Tangible Things from Verizon*, BR 13-80 (FISC July 19, 2013) ...............................................................................3

*In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, No. BR 10-82 (FISC Nov. 23, 2010) ...........................................................................16

*In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, No. BR 13-109, 2013 WL 5741573 (FISC Aug. 29, 2013) .......................................4

*In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*,
No. BR 13-80 (FISC Apr. 25, 2013) ........................................................................3

*In re Orders of this Court Interpreting Section 215 of the Patriot Act*,
No. Misc. 13-02 (FISC Sept. 13, 2013) ..................................................................4

*In re Orders of this Court Interpreting Section 215 of the Patriot Act*,
No. Misc. 13-02 (FISC Feb. 6, 2014) .................................................................4, 21

*In re Production of Tangible Things from [Redacted]*,
No. BR 08-13 (FISC Dec. 12, 2008) ....................................................................16

*In re Production of Tangible Things From [Redacted]*,
No. BR 08-13 (FISC Jan. 28, 2009) .....................................................................24

*In re Production of Tangible Things From [Redacted]*,
No. BR 08-13 (FISC Mar. 2, 2009) ......................................................................24

James R. Clapper, DNI Statement on Recent Unauthorized Disclosures of Classified
Information (June 6, 2013) ...................................................................................19

Letter from Sen. Ron Wyden and Sen. Mark Udall to Attorney General Eric Holder
(Mar. 15, 2012) ...................................................................................................13

Letter to Director of National Intelligence James R. Clapper (June 27, 2013) ............6

Opinion and Order, *[Redacted]*, No. PR/TT [Redacted] ([Redacted]) .........................4

President's Review Group on Intelligence and Communications Technologies, *Liberty
and Security in a Changing World* (Dec. 12, 2013) .................................................4

S.A. 384 to S. 990, 112th Cong. § 3 (2011) ..............................................................2

Siobhan Gorman, Devlin Barrett & Jennifer Valentino-DeVries, *CIA's Financial Spying
Bags Data on Americans*, Wall St. J. (Jan. 25, 2014) .............................................5

*Transcript: Obama's Remarks on NSA Controversy*, Wall St. J. Wash. Wire Blog
(June 7, 2013, 1:13 PM) .......................................................................................5

*USA PATRIOT ACT Reauthorization: Hearing Before the Subcomm. on Crime,
Terrorism, and Homeland Security of the House Comm. on the Judiciary*, 112 Cong.
13 (2011) ...........................................................................................................15

White House, Fact Sheet: The Administration's Proposal for Ending the Section 215
Bulk Telephony Metadata Program (Mar. 27, 2014) .................................................4

## INTRODUCTION

This is a suit brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs respectfully submit this memorandum of law in support of their cross-motion for summary judgment and in opposition to the government's motion for summary judgment.

Plaintiffs seek the release of judicial opinions and orders relating to the bulk collection of information under Section 215 of the Patriot Act.[1] In the past year, the public has learned a great deal about the government's bulk collection of Americans' phone records under Section 215— some of it as a result of this lawsuit. As government officials have now acknowledged, an overwhelming amount of this information should never have been withheld from the public in the first place. Yet the government continues to withhold an unknown number of secret court opinions relating to both the phone-records program and *other* bulk collection programs.

The government's withholding of these court opinions is unlawful. The opinions construe and interpret the nation's surveillance laws and Americans' right to privacy in the context of government demands for information in vast quantity and without individualized suspicion. The government's declaration in this case does not support its argument that these opinions are exempt from disclosure in their entirety. Courts—including the Second Circuit and the Foreign Intelligence Surveillance Court—have recently rejected overbroad claims of a strikingly similar kind. After reviewing the documents themselves, these courts instead insisted that the government disclose legal opinions and memoranda with appropriate redactions. Indeed, the exemptions upon which the government relies cannot justify the withholding of judicial opinions in their entirety because legal reasoning is not an "intelligence source or method" that can be

---

[1] Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA Patriot Act) of 2001, Pub L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001).

kept from the public. Because the justifications the government offers are vague and overbroad—and especially because the government has previously withheld information about Section 215 that was never properly exempt—the government's refusal to release these opinions requires independent judicial scrutiny. The Court should carefully review the withheld opinions *in camera* and order their release with only those redactions allowable under FOIA.

For these reasons and those given below, the Court should deny the government's motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment.

## BACKGROUND

A.   Section 215

Section 215, which amended the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. §§ 1801, *et seq*. ("FISA"), allows the government to obtain court orders requiring the production of "tangible things" relevant to authorized foreign-intelligence or terrorism investigations. *Id.* § 1861(a)(1), (b)(2)(A). The orders are accompanied by gag orders forbidding recipients—such as telecommunications companies, credit-card companies, hospitals, or educational institutions—from disclosing having received the orders. *Id.* § 1861(c), (d).

Until recently, the public knew little about the government's use of Section 215. Prior to 2013, a number of Senators stated publicly that the government had adopted a "secret interpretation" of Section 215 and predicted that Americans would be "stunned" when they learned of it. 157 Cong. Rec. S3386 (daily ed. May 26, 2011) (statement of Sen. Wyden); 157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall). While the Senators urged the government to make more information available to the public, those efforts were largely unsuccessful. *See* 157 Cong. Rec. S3360 (daily ed. May 25, 2011) (S.A. 384 to S. 990, 112th Cong. § 3 (2011)); *see also, e.g.*, 157 Cong. Rec. S3258 (daily ed. May 24, 2011) (statement of Sen. Udall); 155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) (statement of Sen. Feingold). As a

result, ordinary citizens who wanted to understand the government's use of the statute were entirely reliant on the government's own statements. Those statements were sometimes misleading or false. *See, e.g.*, Glen Kessler, *James Clapper's "Least Untruthful" Statement to the Senate*, Wash. Post (June 12, 2013), http://wapo.st/170VVSu.

      B.    <u>Bulk Collection of Americans' Records Under Section 215</u>

Last year, the public finally began to understand the contours of the hidden legal interpretations of Section 215 about which Senators Wyden and Udall and others had warned. On June 5, 2013, *The Guardian* published an order issued by the Foreign Intelligence Surveillance Court ("FISC") that authorized the National Security Agency ("NSA") to collect the phone records of millions of Americans under Section 215. Glenn Greenwald, *NSA Collecting Phone Records of Millions of Verizon Customers Daily*, The Guardian (June 5, 2013), http://gu.com/p/3gc62; Secondary Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things from Verizon*, BR 13-80 (FISC July 19, 2013). The government later authenticated the FISC order and acknowledged that it had been issued as part of a broader program involving multiple telephone companies. *Administration White Paper: Bulk Collection of Telephony Metadata Under Section 215 of the USA PATRIOT Act* 1 (Aug. 9, 2013), http://bit.ly/15ebL9k ("White Paper") (attached as Declaration of Charles S. Sims ("Sims Decl."), Ex. 1). The government also disclosed a Primary Order setting out the legal limits on its ability to analyze and disseminate the information amassed in its phone-records database. Primary Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, No. BR 13-80 (FISC Apr. 25, 2013), http://1.usa.gov/1mhYfYH ("Primary Order") (attached as Sims Decl., Ex. 2). Since these initial releases, the government has disclosed other documents—including FISC opinions and orders—related to its authority and activities under Section 215.

As this Court has recognized, these disclosures have engendered "robust discussions" throughout the nation about the government's surveillance powers, the proper forms of judicial, congressional, and public oversight of those powers, and the right to privacy. *ACLU v. Clapper*, 959 F. Supp. 2d 724, 730 (S.D.N.Y. 2013). Crucially, documents disclosed during the course of this debate have begun to reveal a hidden body of law that defines the government's power to collect information about millions of Americans. *See, e.g.*, Opinion and Order, *[Redacted]*, No. PR/TT [Redacted] ([Redacted]), http://1.usa.gov/KWmrme (concluding that bulk collection of internet metadata under FISA's pen-register provision was lawful). Over the past year, the FISC has published several opinions relating to Section 215. *See, e.g.*, *In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, No. BR 13-109, 2013 WL 5741573 (FISC Aug. 29, 2013) ("Eagan Opinion"). And by independently scrutinizing the government's classification decisions, the FISC has ensured the release of additional information. *See* Second Submission of the United States in Response to the Court's Nov. 20, 2013 Order, *In re Orders of this Court Interpreting Section 215 of the Patriot Act*, No. Misc. 13-02, at 2–3 (FISC Feb. 6, 2014), http://1.usa.gov/1fAc4Tx.[2] Together, these documents have contributed to calls for major reforms to the NSA's phone-records program and to Section 215: by executive-branch oversight groups, members of Congress, and President Obama himself.[3]

---

[2] The government previously argued in this case that the FISC's rules barred it from releasing FISC opinions under FOIA. *See* Second Supp. Bradley Decl. ¶ 12 (ECF No. 55). The government has since abandoned that argument, and the FISC has squarely held that FOIA is an appropriate vehicle to seek disclosure of that court's decisions. Order and Opinion at 12–16, *In re Orders of this Court Interpreting Section 215 of the Patriot Act*, No. Misc. 13-02 (FISC Sept. 13, 2013), http://1.usa.gov/1mjrwX3.

[3] *See, e.g.*, President's Review Group on Intelligence and Communications Technologies, *Liberty and Security in a Changing World* (Dec. 12, 2013), http://1.usa.gov/1be3wsO; USA FREEDOM Act, H.R. 3361, 113th Cong. (2013), http://1.usa.gov/1mPQmsh; White House, Fact Sheet: The Administration's Proposal for Ending the Section 215 Bulk Telephony Metadata Program (Mar. 27, 2014), http://1.usa.gov/1ixN7Zr.

Many officials have welcomed the disclosure of information about Section 215. Just days after the first disclosures concerning the NSA's phone-records program, President Obama stated:

> I welcome this debate. And I think it's healthy for our democracy. I think it's a sign of maturity, because probably five years ago, six years ago, we might not have been having this debate. . . . I think that's good that we're having this discussion.

*Transcript: Obama's Remarks on NSA Controversy*, Wall St. J. Wash. Wire Blog (June 7, 2013, 1:13 PM), http://on.wsj.com/1ixPgo3. More recently, the Director of National Intelligence ("DNI"), James Clapper, went even further, stating that the NSA's bulk collection of phone records never should have been kept secret from the American people in the first place:

> I probably shouldn't say this, but I will. Had we been transparent about this from the outset right after 9/11—which is the genesis of the 215 program—and said both to the American people and to their elected representatives, we need to cover this gap, we need to make sure this never happens to us again, so here is what we are going to set up, here is how it's going to work, and why we have to do it, and here are the safeguards. . . . We wouldn't have had the problem we had.

Eli Lake, *Spy Chief: We Should've Told You We Track Your Calls*, Daily Beast (Feb. 17, 2014), http://thebea.st/1kPoaZX. Of course, in order for the public to assess these programs, it must be informed about how the government has implemented its authority under Section 215.

C.    Other Bulk Collection Programs Under Section 215

The government has also used Section 215 to engage in bulk collection of other kinds of records. For instance, *The New York Times* has reported that the CIA relies on Section 215 to collect records of international money transfers in bulk. Charlie Savage & Mark Mazzetti, *C.I.A. Collects Global Data on Transfers of Money*, N.Y. Times (Nov. 14, 2013), http://nyti.ms/PEQyRg. Citing current and former officials, *The Wall Street Journal* has echoed this account, reporting that the CIA is using Section 215 to amass a database that "includes millions of Americans' financial and personal data." Siobhan Gorman, Devlin Barrett & Jennifer

Valentino-DeVries, *CIA's Financial Spying Bags Data on Americans*, Wall St. J. (Jan. 25, 2014),

http://on.wsj.com/1khkJuN. That may be only the beginning: government officials indicate that

at least one other bulk collection program exists. *See* Savage & Mazzetti, *supra*.

The government has not released the FISC opinions and orders relating to these other

bulk collection programs. In June 2013, twenty-six Senators wrote to DNI Clapper seeking

additional information about the government's use of Section 215 to collect records in bulk:

> [W]e are troubled by the possibility of this bulk collection authority being applied
> to other categories of records. The PATRIOT Act's business records authority is
> very broad in its scope. It can be used to collect information on credit card
> purchases, pharmacy records, library records, firearm sales records, financial
> information, and a range of other sensitive subjects.

Letter to Director of National Intelligence James R. Clapper (June 27, 2013),

http://1.usa.gov/1rxyczS. Though the Senators requested unclassified answers to their questions,

*id.* at 2, none have been made public.

## PROCEDURAL HISTORY

A.     Plaintiffs' FOIA Request

On May 31, 2011, the ACLU submitted a FOIA request (the "Request") to various

components of the Department of Justice ("DOJ")—including the National Security Division

("NSD")—seeking records related to the government's legal authority under Section 215. The

ACLU's Request asked for "any and all records indicating the kinds or types of information that

may, as a matter of policy or law, be obtained through the use of Section 215," but expressly

excluded "the names or identities" of the recipients or targets of Section 215 orders. Request at 2

(Sims Decl., Ex. 3.). On August 22, 2011, NSD released three items in response to the ACLU's

Request but stated that it would withhold other responsive records. The ACLU exhausted its

administrative remedies and then filed this suit on October 26, 2011.

B.    The Court's Prior Decision

The Court has previously addressed one document at issue in this litigation. On May 17, 2012, this Court issued a consolidated ruling in this case and a related FOIA case. *See N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012). That ruling concerned a single document at issue in both cases: a report provided to Congress relating to specific foreign-intelligence collection authorized by Section 215. *See id.* at 312. The parties filed summary-judgment briefs with respect to that report alone, and the Court, after reviewing the document *in camera*, granted the government's motion for partial summary judgment. *See id.* at 318. The Court concluded that the government's withholding of the report was justified under both Exemptions 1 and 3. *See id.* at 315–17. Further, the Court determined that "disclosure of a redacted version of the Report [was] neither feasible nor warranted" because "any potentially non-exempt portions" of it were "inextricably intertwined with the exempt portions." *Id.* at 318.

C.    Declassification and Disclosure of Responsive Documents

In early 2013, the parties cross-moved for summary judgment on the remaining documents at issue in this case. As briefing was underway, the first disclosures related to the NSA's bulk collection of Americans' phone records under Section 215 appeared in the media. Following those disclosures, the government declassified certain records, as discussed above. The parties subsequently withdrew their cross-motions while the government reprocessed documents responsive to Plaintiffs' Request. *See* Aug. 16, 2013 Order (ECF No. 71). This review resulted in the disclosure of dozens of documents responsive to Plaintiffs' Request, including a number of FISC opinions containing legal analysis of the kind Plaintiffs seek here.

D.    Scope of the Remaining Dispute

Following the government's reprocessing of Plaintiffs' Request, the parties substantially narrowed the scope of their dispute. Plaintiffs have now limited their challenge to fully withheld

opinions or orders of the FISC that relate to the bulk collection of any type of information.

Described properly, the disputed documents fall into four categories:

1. August 20, 2008 FISC opinion (Doc. #13A, 50, 82A);

2. "Additional FISC Orders"

   a. October 31, 2006 FISC orders (Doc. #77B, 77C, 79, 81J);

   b. An unknown number of FISC orders relating to the bulk collection of phone records (Doc. #125 *et seq.*);

   c. An unknown number of FISC orders relating to the bulk collection of information *other* than phone records (Doc. #125 *et seq.*).

The government has failed to provide any meaningful description of the documents in Categories 2(a), 2(b), and 2(c). Furthermore, the government has improperly grouped together the orders in Categories 2(b) and 2(c), masking the number and existence of FISC orders authorizing the bulk collection of information other than phone records. The government has withheld all of the above records under Exemptions 1 and 3. Plaintiffs challenge the government's withholding of these records to the extent that they reflect the FISC's interpretation of Section 215.

## STATUTORY FRAMEWORK AND LEGAL STANDARDS

FOIA is intended to safeguard the American public's right to know "what their government is up to." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks and citation omitted). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed . . . to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). To effectuate that purpose, the courts enforce a strong presumption in favor of disclosure. *Associated Press v. DOD*, 554 F.3d 274, 283 (2d Cir. 2009); *see Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008) (FOIA's "'basic policy'" is "'that disclosure, not secrecy, is the dominant objective of the Act'" (citation omitted)). The burden is

on the agency to justify withholding any requested records, whether in whole or in part, and all doubts should be resolved in favor of disclosure. *See Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1265 (2011) (FOIA exemptions should be given "a narrow compass"); *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).

Although courts ordinarily afford "some measure of deference to the executive" when assessing predictions of harm in FOIA cases implicating national security, *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003), that deference is unwarranted when the record contains evidence of the government's bad faith, *see Wilner*, 592 F.3d at 73; *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Moreover, even in the absence of bad faith, "[d]eference is not equivalent to acquiescence." *Int'l Counsel Bureau v. DOD*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (quotation marks and citation omitted). Rather, a court must fulfill its "independent responsibility" to conduct a thorough *de novo* review of the government's claimed withholdings. *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions."); *accord CIA v. Sims*, 471 U.S. 159, 188–89 (1985) ("[T]his sort of judicial role is essential if the balance that Congress believed ought to be struck between disclosure and national security is to be struck in practice." (citation omitted)).

Finally, FOIA does not permit wholesale withholding of documents where tailored redactions would adequately protect exempt information. In particular, FOIA requires the government to disclose "[a]ny reasonably segregable portion" of the disputed documents. 5 U.S.C. § 552(b). Thus, the government may not issue a "blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA"; rather, for *each* record, it must "specify in detail which portions of the document are . . . allegedly exempt." *Wilderness Soc'y v. Dep't of*

*Interior,* 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (emphasis in original) (quotation marks omitted).

Moreover, before concluding that records are exempt under FOIA, "the district court must make

specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S.

Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).

## ARGUMENT

The principal question in this suit is whether the FISC's interpretations of Section 215 are

"intelligence sources or methods" within the meaning of Exemptions 1 and 3. They are not. As

the Second Circuit observed only eleven days ago, legal analysis is not itself an intelligence

source or method. Accordingly, the government cannot rely on Exemptions 1 and 3 to withhold

the records at issue here in full. While the withheld records may include *references* to sources,

methods, vulnerabilities, or capabilities, the records cannot be withheld *in their entirety* merely

because they include such references. Plaintiffs respectfully submit that the Court should review

the records *in camera* and order the government to disclose all segregable information that

relates to the FISC's interpretation of Section 215.

**I.      The government cannot justify its withholding of FISC orders and opinions related
to bulk collection in their entirety.**

The government may not lawfully withhold in full judicial opinions issued by the FISC

relating to the bulk collection of Americans' records under Section 215. The government seeks

to justify its withholdings by reference to Exemptions 1 and 3, which protect narrow categories

of national-security information. But legal reasoning is not an intelligence source or method;

and, more generally, the government concedes that these judicial opinions and orders contain

significant amounts of information that has been publicly acknowledged, or that was never

classified in the first place. It is neither logical nor plausible that these opinions and orders—

which define the limits of the government's legal authority to gather data about Americans—can

10

be withheld in their entirety. *See N.Y. Times Co. v. DOJ*, Nos. 13-422, 13-445, 2014 WL 1569514, at *13 (2d Cir. Apr. 21, 2014). Moreover, the government's disclosures over the past year show that legal reasoning can, indeed, be readily segregated from specific intelligence sources, methods, and targets. As a result, the government has failed to meet its FOIA burden.

A.   The government cannot withhold legal reasoning under Exemptions 1 or 3.

Here, the government contends that every single word, sentence, and paragraph in the withheld records—including the legal analysis and conclusions sought by Plaintiffs' Request—may be withheld to protect "intelligence sources and methods" under Exemptions 1 and 3. Yet less than two weeks ago, the Second Circuit pointedly observed that "legal analysis is not an 'intelligence source or method.'" *N.Y. Times Co.*, 2014 WL 1569514, at *13 (citation omitted). Even aside from being foreclosed by clear Circuit precedent, the government's argument that legal analysis may meet the rigorous standard required for classification and exemption under FOIA is neither logical nor plausible.

Exemption 1 excludes from disclosure records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Under the applicable Executive Order, *see* E.O. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), information can be classified only if it falls within one of eight categories of classifiable information, E.O. 13526 § 1.4, and if its disclosure could be reasonably expected to result in describable damage to national security, *id.* § 1.1(4). Here, the government relies principally on one category of information in E.O. 13526: "intelligence activities (including covert action), intelligence sources or methods, or cryptology," *id.* § 1.4(c). *See* Hudson Decl. ¶ 53.[4]

---

[4] The government's brief broadly invokes two other subsections of Executive Order 13526, *see* Gov't Br. 13, but its declaration makes clear that it relies on these subsections with respect to

Similarly, to support an Exemption 3 withholding, the government bears the burden of showing that its withholdings fall within the scope of a qualifying statute. 5 U.S.C. § 552(b)(3)(A); *see N.Y. Times Co.*, 2014 WL 1569514, at *6. Here, the government principally invokes the National Security Act of 1947, 50 U.S.C. § 403-1(i)—which provides for the protection of "intelligence sources and methods"—as the relevant withholding statute. *See* Hudson Decl. ¶ 37.[5] Courts have uniformly held that the category of information classifiable under section 1.4(c) of the Executive Order is co-extensive with the category of information withholdable under the "intelligence sources and methods" provision of the National Security Act. *See, e.g.*, *Military Audit Project v. Casey*, 656 F.2d 724, 736 n.39 (D.C. Cir. 1981); *Phillippi v. CIA*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976).

Thus, neither of the government's withholding authorities in this case can justify the blanket withholding of legal analysis that relates to the scope or meaning of Section 215. *See N.Y. Times Co.*, 2014 WL 1569514, at *13. Simply because a FISC opinion might "contain information that reveals intelligence sources and methods" does not make those opinions *themselves* intelligence sources and methods, *Berman v. CIA*, 501 F.3d 1136, 1146 (9th Cir. 2007) (rejecting CIA's claim that the President's Daily Briefs were protected intelligence methods under Exemptions 1 and 3); *Whitaker v. CIA*, No. CV 12-316, 2014 WL 914603, at *8 (D.D.C. Mar. 10, 2014) (Kollar-Kotelly, J.) (finding that CIA's claim that internal "FOIA

---

only a single disputed document: the August 2008 FISC opinion. Hudson Decl. ¶ 43. These other subsections concern "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security," E.O. 13526 § 1.4(g); and information pertaining to "foreign relations or foreign activities of the United States, including confidential sources," *id.* § 1.4(d). As discussed below, these subsections do not excuse the government's withholding. *See infra* Part I.D.iv n.12.

[5] Again with respect to only the August 2008 FISC opinion, *see infra* Part I.D.iv, the government additionally invokes section 6 of the National Security Agency Act, 50 U.S.C. § 402 note, as a relevant withholding statute under Exemption 3. *See* Gov't Br. 21; Hudson Decl. ¶ 48.

processing materials" constituted intelligence sources and methods "goes too far"). In that respect, legal opinions are no different than other records under FOIA.

But in other respects, legal analysis is *indeed* special. Judicial opinions have enjoyed an almost uninterrupted tradition of openness in our system. *See, e.g.*, *Lowenschuss v. W. Publ'g. Co.*, 542 F.2d 180, 185 (3d Cir. 1976); *Scheiner v. Wallace*, No. 93 Civ. 0062, 1996 WL 633226, at *1 (S.D.N.Y. Oct. 31, 1996). That tradition applies even to judicial opinions dealing with the government's authority to conduct investigations about U.S. citizens—including under FISA and related authorities. *See, e.g.*, *United States v. U.S. Dist. Court for the E. Dist. of Mich.*, 407 U.S. 297 (1972); *United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984). Moreover, judicial opinions interpreting public statutes "stand, upon principle, on substantially the same footing as the statutes enacted by the Legislature." *Nash v. Lathrop*, 142 Mass. 29, 35–36 (1886).

Against this background, the government's argument that legal analysis can be withheld from the public under FOIA is a remarkable one. To adopt it is to decide that by enacting FOIA, whose "central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny," *Reporters Comm.*, 489 U.S. at 774, Congress intended to shield from view pivotal interpretations of our public laws.[6] In fact, Congress intended the opposite—to eliminate "secret law." *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 872–873 (D.C. Cir. 2010). Were the government authorized to conceal its legal authorities, the balance Congress chose to strike through FOIA—

---

[6] The crux of the government's claim appears to be that the national defense would be compromised by exposing the true scope of its legal authority to surveil Americans. But that argument is deeply inconsistent with our system of public laws. *See* Letter from Sen. Ron Wyden and Sen. Mark Udall to Attorney General Eric Holder (Mar. 15, 2012), http://bit.ly/1kpKQuR ("We can see how it might be tempting to latch on to this chilling logic, but we would note that it would then follow that *all* of America's surveillance laws should be secret, because that would make it even harder to guess how the United States government collects information.").

one that protects classified facts but requires the disclosure of secret law—would be fatally undermined.

    B.    <u>The government cannot withhold information that it has publicly acknowledged.</u>

It is well settled that the government cannot withhold information that it has already officially acknowledged. *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007); *N.Y. Times Co.*, 2014 WL 1569514, at *9. The Second Circuit recently clarified that official acknowledgments do not require "absolute identity" between the information acknowledged and sought. *See N.Y. Times Co.*, 2014 WL 1569514, at *9 ("A FOIA requester would have little need for undisclosed information if it had to match precisely information previously disclosed").

    C.    <u>The withheld orders and opinions contain legal reasoning interpreting Section 215 and publicly acknowledged information.</u>

The withheld orders and opinions of the FISC are part of a secret body of law defining the government's surveillance powers under Section 215. These records likely contain at least three types of legal analysis or conclusions that cannot be withheld from the public under FOIA.

    1.    *The legal meaning that the FISC has attributed to the phrase "any tangible things" in Section 215.*

The government must disclose the withheld records to the extent that they reveal the meaning the FISC has given to the phrase, "any tangible thing," including the types of records the FISC has permitted the government to collect in bulk. The FISC's interpretation of the phrase "any tangible thing" does not constitute an "intelligence source or method." It is plausible that, in limited circumstances, the government could withhold this legal analysis if the government had never before disclosed its technological capability to obtain, or its interest in obtaining, a particular "tangible thing." Yet Section 215 itself names many categories of records that may be obtained under the statute. *See* 50 U.S.C. § 1861(a)(3) (discussing applications for the production of library circulation records, library patron lists, book sales records, book customer lists,

14

firearms sales records, tax return records, educational records, or medical records). Moreover, the government has already acknowledged its reliance on Section 215 to obtain phone records and financial records. *See, e.g.*, Primary Order; *USA PATRIOT ACT Reauthorization: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the House Comm. on the Judiciary*, 112 Cong. 13 (2011) (statement of Todd M. Hinnen, Acting Assistant Attorney General, DOJ) ("Section 215 has been used to obtain . . . credit card records, and the like").

The government may not withhold legal analysis solely to conceal that the *authority* for its acquisition of information is Section 215 (as opposed to a grand-jury subpoena, administrative-subpoena, etc.). Instead, that a particular type of information is susceptible of collection under a particular authority reflects only the scope of the authority itself—not a "method" of intelligence collection by the government.

2.    *The legal meaning of Section 215's relevance requirement.*

The government must disclose legal analysis or conclusions concerning Section 215's relevance requirement. In many ways, the scope of the government's authority under Section 215—especially its authority to engage in bulk collection—hinges on how the term "relevant" is defined. *See* 50 U.S.C. § 1861(b)(2)(A) (requiring "reasonable grounds to believe that the tangible things sought are relevant to an authorized investigation"); *see also id.* § 1861(c)(2)(D) (tangible things must be obtainable using a grand-jury subpoena or equivalent). The FISC's interpretation of this term has been publicly acknowledged and remains a focal point in the ongoing public debate. *See, e.g.*, Eagan Opinion; White Paper.

3.    *The legal restrictions that the FISC has imposed on the government's use of collected information in order to comply with Section 215, the Constitution, or any other law.*

The government must also disclose the legal restrictions that the FISC has imposed on the government in order to comply with Section 215, the Constitution, or any other law. Just as the

relevance standard defines the scope of the government's authority to collect information, these minimization procedures or other limitations define the government's ability to use that information. *See, e.g.*, 50 U.S.C. § 1861(g). For instance, the FISC has limited the circumstances in which the NSA is permitted to access phone records that it collects in bulk, the ways in which the NSA may query that data, and how the NSA may share the results of its queries with other agencies. *See* Primary Order. The FISC's conclusions concerning the use of information collected in bulk under other Section 215 programs must similarly be disclosed here.

      D.    <u>The government has failed to reasonably segregate disclosable information, and has failed to satisfy its burden under FOIA for withholding responsive FISC orders and opinions in full.</u>

Because legal analysis is not an intelligence source or method, the ultimate question for the Court is whether the legal analysis contained in the withheld records can be segregated from information that is exempt. It is conceivable that in some circumstances legal analysis will be "inextricably intertwined" with properly classifiable information. *See, e.g.*, *N.Y. Times Co.*, 872 F. Supp. 2d at 318. Here, however, there is every reason to believe that the government's legal analysis can be segregated from classified facts, and FOIA requires the government to disclose the former even if it must redact the latter. *See* 5 U.S.C. § 552(b); *N.Y. Times Co.*, 2014 WL 1569514, at *13–14; *Hopkins v. HUD*, 929 F.2d 81, 85–86 (2d Cir. 1991).

Numerous FISC opinions and orders already in the public domain—all published with at least some, and in many cases significant, redactions—offer ample proof that segregation is readily possible. *See, e.g.*, Supplemental Opinion, *In re Production of Tangible Things from [Redacted]*, No. BR 08-13 (FISC Dec. 12, 2008), http://1.usa.gov/1miGrku (attached as Sims Decl., Ex. 4); Supplemental Order, *In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, No. BR 10-82 (FISC Nov. 23, 2010), http://1.usa.gov/PTTY2D (attached as Sims Decl., Ex. 5); Primary Order. The government has

offered no reason whatsoever why the withheld opinions and orders are any different than those they have already released without compromising intelligence sources or methods, particular investigations, or the identities of the recipients of Section 215 orders. For every document but the August 2008 FISC opinion, the government's declaration largely resorts to reciting the Executive Order's standards and asserting they have been met. *See* Hudson Decl. ¶¶ 51–54; *see also* Gov't Br. 13. But government assurances that parrot the relevant statutory language are not enough to avoid disclosure under FOIA. *Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999); *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009).

For the vast majority of FISC orders and opinions at issue—the so-called "Additional FISC Orders"—the government does not address segregability at all. *See* Hudson Decl. ¶¶ 50–59. Instead, the government devotes key portions of its declaration to explaining the need to protect information that Plaintiffs do not even seek: the identities of telecommunications carriers participating in the bulk phone-records program. *Compare* Gov't Br. 17–18 & n.4; Hudson Decl. ¶¶ 50, 54–56, 58–59, *with* Request at 2 (Sims Decl., Ex. 3) (excluding from Plaintiffs' Request "the names or identities" of the recipients or targets of Section 215 orders). Plaintiffs have never sought that information as part of this litigation, and they do not seek it now. Plaintiffs have no objection to the government redacting the names of telecommunications carriers, or any other entities, that have received Section 215 orders. The argument that releasing any portion of the fully withheld FISC orders would reveal carrier identities is a red herring.

In fact, the government's declaration appears designed to camouflage the existence of *other* bulk collection programs authorized by the fully withheld FISC orders. In particular, the government has improperly lumped together a number of different categories of records in its *Vaughn* index, declaration, and brief. The government argues that it is unable to provide any

further information about a category of records it calls "Additional FISC Orders"—including the number of orders, their dates, or any description of those orders—because doing so might reveal the identities of telecommunications carriers. *See* Gov't Br. 17–18; Hudson Decl. ¶ 50. In reality, however, this argument applies only to some unknown *subset* of these FISC orders—the ones relating to the phone-records program. The government does not distinguish between the FISC orders covered by this argument and those that concern other bulk-collection programs, but the distinction is a crucial one.[7]

> ### 1. October 2006 FISC orders

The government provides no meaningful description of the October 31, 2006 FISC orders identified as entries 77B, 77C, 79, and 81J in its *Vaughn* index, nor does it provide any justification for its decision to withhold these records in full. The government's declarant simply makes the conclusory assertion that describing these documents on the public record "would reveal classified and statutorily-protected information relating to sources and methods of intelligence collection," Hudson Decl. ¶ 50, and that disclosure of these orders could be expected to damage national security, *id.* ¶ 51. The government's declaration does not address the segregability of any legal analysis or unclassified information in these FISC orders, a conspicuous omission given that at least one of the orders is fifteen pages long. *See, e.g.*, Gov't *Vaughn* Index (Doc. #77B).

> ### 2. FISC orders related to the bulk collection of phone records

The government's only justification for withholding these FISC orders, which are

---

[7] For all practical purposes, the government has given a "no-number, no-list" response with respect to FISC orders related to other bulk collection programs. But as the Second Circuit has made clear, a "no-number, no-list" response can "'only be justified in unusual circumstances, and only by a particularly persuasive affidavit.'" *N.Y. Times Co.*, 2014 WL 1569514, at *15 (quoting *ACLU v. CIA*, 710 F.3d 422, 433 (D.C. Cir. 2013)). For the reasons discussed above, the government has not met that burden here.

intermingled among entries 125 *et seq.* of the *Vaughn* index, is that disclosing them would reveal the identities of telecommunications carriers receiving Section 215 orders. *See* Hudson Decl. ¶¶ 50, 54–56, 58. But that rationale cannot possibly justify withholding all of these orders in full. As an initial matter, this rationale does not explain why the government is unable to identify these orders by date or, indeed, why it is unable to provide any additional description of them.

The government's failure to address segregability for these orders is especially concerning given what has already been officially disclosed. The government readily acknowledges that some of the Additional FISC Orders relate to the NSA's bulk collection of phone records, *see* Hudson Decl. ¶ 55, a program that has been the subject of extensive declassification. It is difficult to understand how orders relating to a program so widely disclosed to the public could contain nothing at all that is subject to release.[8]

Moreover, the government's interest in shielding the carrier identities could easily be protected by steps short of blanket withholding of the orders. In particular, to the extent that multiple carriers received functionally identical orders on a given date, the government could release one of those orders with the carrier's name redacted, while withholding the other equivalent orders issued on the same day. That approach—or another like it—would maximize the information available to the public under FOIA yet protect the government's interest. *Cf. ACLU*, 710 F.3d at 432 ("[T]here is no fixed rule establishing what a *Vaughn* index must look like, and a district court has considerable latitude to determine its requisite form and detail.").

---

[8] To the extent that the government is withholding so-called Secondary Orders related to the bulk phone-records program, it has already acknowledged the authenticity of one such order disclosed to the public. *See* Secondary Order; James R. Clapper, DNI Statement on Recent Unauthorized Disclosures of Classified Information (June 6, 2013), http://1.usa.gov/1kxurYn. As a result, the government cannot withhold equivalent information in other such orders. *See N.Y. Times Co.*, 2014 WL 1569514, at *14.

3.   *FISC orders related to the bulk collection of information other than phone records*

These orders also fall within the documents designated as entries 125 *et seq.* of the government's *Vaughn* index. In fact, some of these orders are non-identical duplicates of the October 2006 FISC orders. *See* Hudson Decl. ¶ 50. That alone belies the government's claim that no further description or specificity is possible. Given that the October 2006 FISC orders are identified individually—by date, number of pages, and classification—there is no basis for the government's refusal to identify individually all FISC orders related to the bulk collection of information other than phone records. More importantly, the government provides no basis for withholding these judicial orders in their entirety.

4.   *August 2008 FISC opinion*

As the government acknowledges, the August 2008 FISC opinion contains unclassified legal analysis and other information. *See id.* ¶¶ 45–46. The only question is whether that content can be reasonably segregated from any properly classified facts.[9]  According to the government, this FISC opinion addresses one type of query used to examine telephony metadata obtained under the Section 215 phone-records program. Hudson Decl. ¶ 41. The government states that

---

[9] The August 2008 FISC opinion is the sole document for which the government invokes three additional bases for withholding: subsections 1.4(g) and 1.4(d) of Executive Order 13526 under Exemption 1; and section 6 of the National Security Agency Act, 50 U.S.C. § 402 note, under Exemption 3. *First*, these additional authorities do nothing to diminish the government's obligation to segregate and disclose any non-exempt information contained in the opinion. Thus, even if the querying technique is a "function" or "activity" of the NSA within the meaning of section 6 of the National Security Agency Act, the government must still release legal analysis or "mundane facts" that do not reveal the technique itself. *Second*, for the same reasons that any legal interpretation in the opinion is not an intelligence "activity," "source," or "method," E.O. 13526 § 1.4(c), neither is it a "vulnerabilit[y] or capabilit[y]," *id.* § 1.4(g). *Third*, because legal interpretation does not fall within either of these categories, it also certainly would not expose "foreign relations or foreign activities of the United States." *Id.* § 1.4(d). At most, appropriate redactions could protect the foreign relationships at stake. Notably, the government did not previously assert that any of the records currently at issue in this case were covered by subsection 1.4(d). *See* Declaration of Mark A. Bradley ¶ 11 (ECF No. 43).

this querying technique is mentioned "in every paragraph," but that alone does not prove segregation impossible. *Id*. ¶ 41. In fact, the government admits that information about this technique is itself unclassified, *id*. ¶ 42, and that other portions of the opinion are "seemingly mundane," *id*. ¶ 46. Nonetheless, the government suggests that a string of inferential leaps could reveal something classified through "implication," if these mundane facts were combined with each other or with other information available to the public. *Id.* ¶¶ 42, 46. Plaintiffs reject the government's unsupported claim that releasing *any* of the information in the opinion's six pages—even "seemingly mundane portions" of the opinion—would reveal exempt information to a sophisticated adversary, *id.* ¶ 46. That is precisely the kind of broad assertion that courts, including the FISC, have found insufficient to justify withholding. *See infra*, Part II.

## II.   The Court should evaluate the withheld documents *in camera* without deference to the government's declarations.

The record in this case now shows that the government's previous claims for withholding were overbroad. As a result, the Court should undertake the type of exacting *in camera* review that both the Second Circuit and the FISC have recently applied to legal opinions and memoranda when faced with similarly sweeping claims. Indeed, these examples show that there is no substitute for a court's careful scrutiny. *See New York Times Co.*, 2014 WL 1569514, at *13; Second Submission of the United States in Response to the Court's Nov. 20, 2013 Order, *In re Orders of this Court Interpreting Section 215 of the Patriot Act*, No. Misc. 13-02, at 2–3 (FISC Feb. 6, 2014), http://1.usa.gov/1fAc4Tx (describing FISC's rejection of government claim that opinion must be withheld in full, and FISC's subsequent rejection of the government's proposed redactions).

A comparison of the government's past representations in this case against the current public record make clear that many of the government's earlier claims that responsive documents

were exempt under FOIA have proven legally untenable, factually misleading, or both. Against this background, the Court should not defer to the government's declarations. The Court should engage in a searching *in camera* review of responsive documents and order the disclosure of all reasonably segregable information that is not exempt.[10]

As this Court has recognized, *see N.Y. Times Co.*, 872 F. Supp. at 315, a district court may, at its own discretion, review withheld documents *in camera* when evaluating claims of exemption from FOIA, *see* 5 U.S.C. § 552(a)(4)(B); *Associated Press v. DOJ*, 549 F.3d 62, 67 (2d Cir. 2008). *In camera* review allows a district court to make a case-specific determination about the legality of government disclosures, especially where such a determination might be frustrated by the inadequacy of the government's public submissions. Thus, courts have found such review particularly appropriate where:

(1) "[T]he government seeks to exempt entire documents but provides only vague or sweeping claims as to why those documents should be withheld," *Associated Press*, 549 F.3d at 67 (citing *Local 3, Int'l Bhd. of Elec. Workers, AFL–CIO v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988));

(2) The number of documents at issue is manageably small, *see N.Y. Times Co.*, 872 F. Supp. at 315; *see also Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *or*

(3) The record contains evidence of bad faith on the part of the government, *see Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987) ("*in camera* inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information").

---

[10] Relatedly, the Court should not consider the government's *in camera*, *ex parte* submission. The government has sought to substitute a classified declaration for the detailed public submissions ordinarily required by FOIA. That is improper, and threatens to convert FOIA into a one-sided and secret process for litigating the public's access to government records. FOIA strongly disfavors reliance upon *in camera*, *ex parte* submissions and permits such reliance only *after* the government has submitted as detailed a public explanation of its withholdings as possible. *See, e.g.*, *John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 110 (2d Cir. 1988), *rev'd on other grounds*, 493 U.S. 146 (1989). This requirement serves a crucial purpose: it "enables the adversary system to operate by giving the requester as much information as possible," thereby enabling the court to "fulfill its duty of ruling on the applicability of the exemption." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006); *Halpern*, 181 F.3d at 295.

While any of these conditions is sufficient to trigger *in camera* review, all three are present here.

First, as explained above, the government's public declarations do not provide a meaningful, non-conclusory explanation for withholding various documents in their entirety, nor for why the government cannot provide *any* additional information describing those documents. *See supra* Part I.D. The government's failure to explain publicly the reasons for its withholdings hamstring Plaintiffs from "argu[ing] intelligibly over the applicability of exemptions," *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987), making *in camera* review especially appropriate here.

Second, *in camera* review would not be likely to require the expenditure of significant judicial resources because the number of unique documents is likely fairly small or amenable to sampling. *See, e.g.*, *Hall v. CIA*, 668 F. Supp. 2d 172, 196 (D.D.C. 2009). Many of the orders are likely duplicative (or "non-identical duplicative") iterations of one another, *see* Hudson Decl. ¶ 50, thus a representative sample could be identified even if the Court is disinclined to review all of the withheld documents *in camera*.

Third, the government's previous submissions present the Court with unmistakable evidence of the government's bad faith in defending unlawful withholdings. For example, the government's February and April 2013 filings in this case unambiguously and repeatedly asserted that all of the information contained in the documents it withheld would disclose "intelligence sources and methods," and that the disclosure of that information would threaten grave harm to national security. *See* Bradley Decl. ¶¶ 11–12 (ECF No. 43); Supp. Bradley Decl. ¶ 9 (ECF No. 55). Further, the government maintained that "none" of the non-exempt information contained in the withheld documents could be segregated. Supp. Bradley Decl. ¶ 10; *see* Bradley Decl. ¶ 14. Any attempt at redaction, the government represented, "would produce

misleading and/or meaningless sets of words or phrases which would have minimal or no informational content." Supp. Bradley Decl. ¶ 10; *see* Bradley Decl. ¶ 14.

The record before the Court makes plain that those representations were simply false. Substantial portions of the previously withheld FISC opinions were readily segregable and subject to release under FOIA. For instance:

▪ "[T]he Court must have every confidence that the government is doing its utmost to ensure that those responsible for implementation fully comply with the Court's orders. The Court no longer has such confidence." Order at 12, *In re Production of Tangible Things From [Redacted]*, No. BR 08-13 (FISC Mar. 2, 2009).

▪ "After considering [remedial] measures in the context of the historical record of non-compliance . . . the Court has concluded that further action is, in fact, necessary." *Id.* at 14.

▪ "The Court is exceptionally concerned about what appears to be a flagrant violation of its order in this matter." Order Regarding Preliminary Notice of Compliance Incident at 4–5, *In re Production of Tangible Things From [Redacted]*, No. BR 08-13 (FISC Jan. 28, 2009).

These passages—among many others—are not "incomplete, fragmented, unintelligible sentences and phrases that are devoid of any meaning," Bradley Decl. ¶ 14. They do not contain any information that would have led a "sophisticated adversary" from learning protected "sources and methods." What they are, of course, is embarrassing to the government—but embarrassment is explicitly *prohibited* as a basis for classification or exemption, *see* E.O. 13526 § 1.7.

Even worse, certain documents whose *withholding in full* the government defended in February and April 2013 should have been *released in full* (or very nearly so) under FOIA. For example, among the government's past withholdings was a supplemental opinion addressing whether the Stored Communications Act, 18 U.S.C. § 2702, prohibited the collection of call records under Section 215. *See* Supplemental Opinion (Sims Decl., Ex. 4). Another of the government's earlier withholdings was a supplemental order analyzing whether the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–3422, prohibited the collection of financial records

under Section 215. *See* Supplemental Order (Sims Decl., Ex. 5). Neither of these documents

contain information about protected "sources and methods"—they are purely statutory

analyses—and the fact that the government had relied on Section 215 to obtain call records and

financial records was already a matter of public record, *see, e.g.*, DOJ, Office of Inspector

General, *A Review of the FBI's Use of Section 215 Orders for Business Records in 2006* at 21, 65

(2008), http://1.usa.gov/1iEl5vk.

Taken together, the government's past assertions that segregation was impossible fly in

the face of the record, and strip the government's present justifications of the deference due to

them in ordinary FOIA cases. *See Wilner*, 592 F.3d at 73 (explaining that evidence of bad faith

can undermine an agency's assertions that information falls within FOIA exemption); *Carney*, 19

F.3d at 812; *N.Y. Times Co.*, 872 F. Supp. 2d at 317–18; *see also Halperin v. CIA*, 629 F.2d 144,

148 (D.C. Cir. 1980). As a result, the Court should assess the government's withholding claims

in this case with special scrutiny. *See, e.g.*, *Jones v. FBI*, 41 F.3d 238, 243 (6th Cir. 1994) (where

evidence of agency bad faith is "strong, it would be an abdication of the court's responsibility to

treat the case in the standard way").

## CONCLUSION

For these reasons, the Court should deny the government's motion for summary

judgment, grant Plaintiffs' cross-motion for summary judgment, and order the government to

disclose all records that would reveal the scope of its legal authority under Section 215.


Respectfully submitted,

/s/ Charles S. Sims

Dated:  May 2, 2014                    Charles S. Sims (CS-0624)
        New York, NY                   Proskauer Rose LLP
                                       11 Times Square

New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900
csims@proskauer.com

Patrick Toomey (PT-1452)
Alexander Abdo (AA-0527)
Brett Max Kaufman (BK-2827)
Jameel Jaffer (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
ptoomey@aclu.org

Beth Haroules (BH-5797)
Arthur Eisenberg (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
bharoules@nyclu.org
aeisenberg@nyclu.org

*Counsel for Plaintiffs*