USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                            :

AMERICAN CIVIL LIBERTIES            11cv7562
UNION, *et ano.*,                             :

                                                            :      MEMORANDUM & ORDER

                   Plaintiffs,             :

                 -against-                  :

FEDERAL BUREAU OF                       :
INVESTIGATION, *et ano.*,

                                                        :

                   Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (together, "ACLU"), filed this Freedom of Information Act action seeking documents relating to the Government's use of section 215 of the USA PATRIOT Act. After the ACLU filed this case, an unprecedented national security leak led to widespread publication of classified documents concerning section 215 and reshaped this litigation. Both parties move for summary judgment on the documents the Government has withheld. For the following reasons, the Government's motion is granted in part, and the ACLU's motion is denied in part. The Government is directed to submit documents to this Court, and the remainder of the motions will be decided following <u>in camera</u> inspection.

## BACKGROUND

        After the September 11th attacks, Congress amended the Foreign Intelligence Surveillance Act to expand the Government's authority to investigate potential terror threats. Specifically, section 215 of the USA PATRIOT Act authorized judges of the Foreign

Intelligence Surveillance Court (FISC) to order the "production of any tangible things (including books, records, papers, documents, and other items)" if certain statutory requirements are met. See Pub. L. No. 107-56, 115 Stat. 272 (2001) (codified at 50 U.S.C. § 1861).

In May 2011, the ACLU submitted a FOIA request to four agencies within the Department of Justice—the National Security Division, the Office of Information Policy, the Office of Legal Counsel, and the FBI—seeking "records concerning the Government's interpretation or use of Section 215." Compl. ¶¶ 22, 28. In August 2011, the Government responded to the ACLU's request, releasing three documents in full and withholding others. Decl. of Jennifer L. Hudson ¶ 11 (ECF No. 87).

In October 2011, the ACLU filed this action challenging the Government's response. The ACLU's FOIA request overlapped with a FOIA request by The New York Times that sought a report to Congress from the Attorney General and Director of National Intelligence concerning the use of section 215. See N.Y. Times Co. v. U.S. Dep't of Justice, 11 Civ. 6990 (WHP) (S.D.N.Y.). The ACLU, The New York Times, and the Government all moved for summary judgment with respect to that report. After reviewing the report in camera, this Court granted summary judgment for the Government. N.Y. Times Co. v. Dep't of Justice, 872 F. Supp. 2d 309 (S.D.N.Y. 2012).

Following that decision, the ACLU narrowed its FOIA request. Later in 2012, the Government supplemented its initial production, releasing additional documents but continuing to withhold many others. Early in 2013, the parties each moved for summary judgment with respect to the withheld documents.

The posture of this action then changed dramatically. On June 5, 2013, The Guardian published a classified FISC "Secondary Order" issued under section 215 directing

telecommunications provider Verizon to provide the National Security Agency "on an ongoing daily basis . . . all call detail records or 'telephony metadata'" for all telephone calls on its network from April 25, 2013 to July 19, 2013. See In re Application of the FBI for an Order Requiring the Prod. Of Tangible Things From Verizon Bus., Network Servs., Inc. ex rel. MCI Commc'n Servs., Inc. d/b/a Verizon Bus. Servs., No. BR 13-80, slip op. at 24 (F.I.S.C. Apr. 25, 2013). This document, leaked by former NSA contractor Edward Snowden, was the beginning of an "unprecedented unauthorized disclosure of TOP SECRET documents," touching "on some of the U.S. Government's most sensitive national security programs, including highly classified and on-going signals intelligence collection programs." Hudson Decl. ¶ 17 (emphasis in the original). The Government acknowledged the existence of an NSA program that had been collecting bulk telephony metadata—but not call contents—under section 215 since 2006. See Administration White Paper: Bulk Collection of Telephony Metadata Under Section 215 of the USA PATRIOT ACT (Aug. 9, 2013).[1]

      The Government asked this Court to defer decision on the pending summary judgment motions while it assessed the impact of Snowden's leaks. Letter from AUSA John D. Clopper, June 7, 2013 (ECF No. 62). The President instructed the Director of National Intelligence to determine what information could be declassified in light of the unauthorized disclosures. Hudson Decl. ¶ 24; Executive Order 13526 § 3.1(c)–(d). Thereafter, the Government began "a large-scale, multi-agency review process" to determine what additional information could be released. Hudson Decl. ¶ 25. In the course of that review, the Government released a redacted copy of the report that was the subject of this Court's decision in New York

---

[1] Available at http://s3.documentcloud.org/documents/750223/obama-administrations-legal-rationale-for.pdf.

Times Co., 872 F. Supp. 2d 309. See 2011 Report on the National Security Agency's Bulk Collection Programs for USA PATRIOT Act Reauthorization.[2]

As the declassification process unfolded, the parties withdrew their summary judgment motions. And in August 2013, this Court directed the Government to continue its review process and make rolling productions to the ACLU. ECF No. 71. Ultimately, the Government released over 1,000 pages of material.

In February 2014, the ACLU narrowed its request again to "fully withheld opinions or orders of the Foreign Intelligence Surveillance Court that relate to the bulk collection of any information (i.e., not just telephony metadata)." Email from Patrick Toomey, Esq., Feb. 7, 2014 (Ex. A to Decl. of John Clopper (ECF No. 86)). The Government provided a Vaughn index containing eight entries purporting to list the documents responsive to the narrowed request that had been withheld in full. Hudson Decl. Ex. A. (ECF No. 87-1). That index essentially lists three categories of documents:

1. August 2008 FISC Opinion: One six-page FISC opinion, dated August 20, 2008. Non-identical duplicates of this document are #13A, 50, and 82A in the Government's Vaughn index.

2. October 2006 FISC Orders: Four FISC orders, each dated October 31, 2006, ranging in length from 4 to 19 pages and which largely overlap with one another. These documents are #77B, 77C, 79, and 81J in the Government's Vaughn index.

3. Unspecified Additional FISC Orders: An unspecified number of other FISC orders issued between March 9, 2006 and June 30, 2011. These documents are collectively listed as #125 et seq. in the Government's Vaughn index.

---

[2] Available at http://www.dni.gov/files/documents/2011_CoverLetters_Report_Collection.pdf.

Both sides move for summary judgment with respect to these documents. In addition to its publicly filed submissions to this Court, the Government also filed a classified ex parte declaration in support of its motion.

## DISCUSSION

### I. FOIA

Congress enacted FOIA to "ensure an informed citizenry" and to "hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). FOIA requires "broad disclosure of Government records." CIA v. Sims, 471 U.S. 159, 166 (1985). It strikes "a workable balance between the right of the public to know and the need of the Government to keep information in confidence." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). On request, the Government must disclose any document that does not fall within one of FOIA's nine exemptions. See Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7 (2001). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Klamath, 532 U.S. at 7–8 (alteration in original) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). "[C]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." Klamath, 532 U.S. at 8 (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989)); see also FBI v. Abramson, 456 U.S. 615, 630 (1982).

Even if portions of documents are exempt from disclosure, the statute requires the Government to disclose "[a]ny reasonably segregable portion." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir.

1977). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." Sussman, 494 F.3d at 1116.

"[T]o prevail on a motion for summary judgment in a FOIA case, the defendant agency has the burden of showing . . . that any withheld documents fall within an exemption to FOIA." Long v. Office of Personnel Mgmt., 692 F.3d 185, 190 (2d Cir. 2012) (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)); see also Wilner v. NSA, 592 F.3d 60, 68 (2d Cir. 2009). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Wilner, 592 F.3d at 73 (quoting Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Wilner, 592 F.3d at 73 (quoting Larson, 565 F.3d at 865).

II.   *In Camera* Review

A district court may review documents in camera to determine whether they are exempt under FOIA, and if so, whether any reasonably segregable portions may be released. "In camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988). "[I]f there is evidence of agency bad faith—for example, if information contained in agency affidavits is contradicted by other evidence in the record—then, in camera inspection may be necessary to insure that agencies do not misuse the

FOIA exemptions to conceal non-exempt information." Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 393 (D.C. Cir. 1987).

In support of its initial summary judgment motion, before the declassification review, the Government argued the documents it withheld in full could not be released in redacted form because "the release of any non-exempt information would produce only incomplete, fragmented, unintelligible sentences and phrases that are devoid of any meaning." Decl. of Mark A. Bradley ¶ 14 (ECF No. 43). But the plaintiff in another FOIA litigation seeking many of the same documents at issue here aptly demonstrated how a FISC order previously withheld but later released could have been redacted to remove classified material while still providing meaningful information. Supplemental Decl. of Charles E. Sims Exs. 2-A, 2-B (ECF No. 99-2). The withheld document concerned the Government's violations of an earlier FISC order. The Government could have redacted it to conceal the existence of a bulk collection program, the NSA's involvement, and the type of information collected by the Government, but still reveal that the Government acted "in a manner that appears to the Court to be directly contrary" to a previous court order, that the FISC contemplated taking "action regarding persons responsible for any misrepresentations to the Court . . . either through its contempt powers or by referral to appropriate investigative offices," and that "[t]he Court is exceptionally concerned about what appears to be a flagrant violation of its Order in this matter." Supplemental Sims Decl. Ex. 2-A. These are by no means "unintelligible sentences and phrases that are devoid of any meaning." Bradley Decl. ¶ 14.

And in its initial summary judgment motion, the Government also defended its withholding of responsive documents by stating "the rules and procedures of the FISC restrict the Government from disclosing FISC records." Second Supplemental Decl. of Mark A. Bradley

¶ 12 (ECF No. 55); see also Gov. Br. at 19 (ECF No. 95) ("[T]he government previously withheld in full all of the responsive FISC opinions and orders so as not to contravene the FISC's own rules and procedures."). In its present summary judgment motion, the Government acknowledges the FISC's rules do not prevent it from releasing FISC orders, but asserts its prior position was held in good faith.

At first, the Government argued its "mistaken" understanding of the FISC rules was corrected in September 2013, when the FISC "clarified" that its orders were subject to FOIA requests. See In re Orders of this Court Interpreting Section 215 of the Patriot Act, No. Misc. 13-02 (F.I.S.C. Sept. 13, 2013).[3] But the ACLU pointed out the fallacy in that argument, because the Government itself previously declassified and released a FISC order on July 31, 2013, six weeks before the September "clarifying" order. See Office of the Director of Nat'l Intelligence, "DNI Clapper Declassifies and Releases Telephone Metadata Collection Documents" (July 31, 2013)[4].

Then, the Government claimed it had erred and offered a new argument: it was a June 2013 FISC order, not the one in September, that "clarified" the issue. See In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's Rules on Statutory Access Rights, No. Misc. 13-01 (F.I.S.C. June 12, 2013).[5] But that contradicts the position the Government took in an earlier proceeding before the FISC.

Back in 2007, the ACLU moved before the FISC for release of certain court orders and pleadings. In arguing that the motion was improper, the Government asserted that

---

[3] Available at http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-02%20Order-2.pdf.
[4] Available at http://1.usa.gov/1ud7vjq.
[5] Available at http://www.fisc.uscourts.gov/sites/default/files/Misc%2013-01%20Opinion-1.pdf.

"[t]he ACLU can use FOIA [] to seek access to FISC orders and Government briefs in the Executive's possession. The FOIA process . . . is the proper means for the ACLU to seek records of [the FISC's] proceedings from the Executive Branch. Moreover, FOIA's judicial remedies must be sought only in district court, not in [the FISC]." Gov.'s Opp. Br. at 5, In re Motion for Release of Court Records, No. Misc. 07-01 (F.I.S.C.).[6] The FISC agreed with the Government. In denying the ACLU's motion, in that court's first published opinion, the FISC held "nothing in this decision forecloses the ACLU from pursuing whatever remedies may be available to it in a district court through a FOIA request addressed to the Executive Branch." See In re Motion for Release of Court Records, 526 F. Supp. 2d 484, 497 (F.I.S.C. 2007).

Having argued successfully in 2007 that FOIA was the proper vehicle to seek release of FISC documents, the Government appears to have been dissembling in 2012 when it argued "the rules and procedures of the FISC restrict the Government from disclosing FISC records." Second Supplemental Decl. of Mark A. Bradley ¶ 12 (ECF No. 55). The same inference could be drawn from the Government's current argument that it did not know until June 2013 that there was no such restriction on FOIA releases of FISC documents. In short, the Government's arguments bear the hallmarks of opportunistic rummaging rather than a coherent strategy.

Nevertheless, the Government contends it was still appropriate to withhold the documents in full because they "included the identifier for communications intelligence or 'COMINT,' which is an identifier for Sensitive Compartmented Information ('SCI') that is associated with the NSA." Gov. Op. Br at 17 (ECF No. 95). The "COMINT" identifier would

---

[6] Available at http://bit.ly/1naXYtD.

have revealed the NSA's involvement with section 215, a classified fact at the time. And redacting classification markings would have been unusual for DOJ and permitted a sophisticated adversary to deduce the NSA's involvement. See Gov. Opp. Br. at 16-18. This obscure argument is particularly elusive. Fortunately, it need not be addressed.[7] It is enough that by advancing incorrect and inconsistent arguments, the Government acted without the candor this Court expects from it.

And even after the declassification review, the Government continued to withhold documents from the ACLU. The Government's updated Vaughn index contains an entry described simply as "Multiple FISC Orders" from March 2006 to June 2011, with no information on the number of documents in the category, their specific dates, or the content of the orders. Hudson Decl. Ex. A. The Government withheld the Multiple FISC Orders in full, as well as the number and dates of those orders, claiming "no further information about the nature or substance [of the Multiple FISC Orders] can be provided without revealing classified information." Hudson Decl. ¶ 52. But as the ACLU pointed out, the Government had already publicly disclosed the docket numbers and dates of three orders not listed on the Vaughn index, as well as excerpted text from two of them. See Supplemental Sims Decl. Exs. 4, 5, & 7 (ECF Nos. 99-4, 99-5, & 99-7). The ACLU cited this as proof that the claimed need for secrecy concerning the "Multiple FISC Orders" could not be true. The Government acknowledged its mistake and released redacted copies of those three orders. The Government states it failed to locate these orders in its search for responsive documents, and had it done so they would have been

---

[7] However, the Northern District of California concluded in a parallel litigation that "[t]he evidence in the record shows that some documents, previously withheld in the course of this litigation and now declassified, had been withheld in their entirety when a disclosure of reasonably segregable portions of those documents would have been required." Elec. Frontier Found. v. Dep't of Justice, No. 4:11-cv-05221-YGR (N.D. Cal. June 13, 2014) (attached as Ex. 8 to Supplemental Sims Decl. (ECF No. 99-8)).

declassified and produced. Therefore, it claims, this incident does not undermine the arguments in support of absolute secrecy for the "Multiple FISC Orders," because these orders were never included within that category. Letter from AUSA Emily E. Daughtry, July 9, 2014 (ECF No. 101).

These developments give this Court pause. The Government's argument that it believed until June 2013 that FISC orders could not be produced in response to FOIA requests strains credulity. Its assertion on the initial summary judgment motion that segregating non-exempt information in FISC orders would leave only "unintelligible sentences and phrases" was incorrect. And it then failed to produce or list on the Vaughn index three documents which the Government had disclosed elsewhere. These inconsistencies shake this Court's confidence in the Government's submissions. The deference the Government ordinarily receives in FOIA cases is rooted largely in the courts' trust that the Government will comply with its statutory obligations. That compliance is not apparent here.

For the reasons below, the Government is entitled to summary judgment with respect to FISC orders, if any, relating solely to the bulk collection of information other than telephony metadata. But because this Court has little faith in the Government's segregability determinations, the other documents in the Government's Vaughn index must be submitted for in camera review.[8] See Carter, 830 F.2d at 393.

---

[8] The Northern District of California recently granted summary judgment for the Government with respect to many of the same documents at issue here. See Elec. Frontier Foundation v. Dep't of Justice, No. 4:11-cv-05221-YGR, 2014 WL 3945646 (N.D. Cal. Aug. 11, 2014). However, that court also required in camera review before granting the Government's motion.

III.     Deference to Government's National Security Determinations

Despite the searching inquiry this Court will give the Government's segregability determinations, the Government's affidavits are entitled to deference on whether disclosure of certain information would harm national security. In the national security context, a court "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." ACLU v. Dep't of Justice, 681 F.3d 61, 69 (2d Cir. 2012) (emphasis in original) (quoting Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007)). "Minor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, [each detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." Wilner, 592 F.3d at 73 (alteration in original) (quoting Larson, 565 F.3d at 864). "Recognizing the relative competencies of the executive and judiciary, . . . it is bad law and bad policy to 'second-guess the predictive judgments made by the government's intelligence agencies' regarding questions such as whether disclosure of terrorist-related surveillance records would pose a threat to national security." Wilner, 592 F.3d at 76 (quoting Larson, 565 F.3d at 865 (D.C. Cir. 2009)).

A showing of bad faith on the part of the Government may negate the deference it is owed. See Carney, 19 F.3d at 812. The reasons for this Court's skepticism about the Government's segregability determinations are not a basis to second guess its national security assessments. Because the executive is better equipped to determine potential harms to national security than the judiciary, it deserves considerable deference on that issue.

IV.     Unspecified Additional FISC Orders

Turning at last to a subset of the documents at issue, the Government groups an unknown number of orders into a single entry in its Vaughn index, described only as "Multiple

FISC Orders" with dates ranging from March 9, 2006 to June 30, 2011. Referred to as a "no number, no list" response, the Government acknowledges that responsive documents exist, but does not disclose further information about the documents in this category, including how many there are or on what dates they issued. See N.Y. Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 105 (2d Cir. 2014) ("N.Y. Times al-Awlaki").[9] According to the Government, even this seemingly innocuous information could reveal the identities of telecommunications carriers who have provided bulk records and when they did so. Hudson Decl. ¶¶ 54–56.

In its summary judgment motion, the ACLU treated the documents in the "no number, no list" response as falling within two categories: those that relate to telephony metadata collection and those that relate to the bulk collection of other information. The Government's response acknowledged some of the documents do relate to telephony metadata collection, but refused to confirm or deny the existence of documents relating to the use of section 215 for the bulk collection of other information. This acknowledgment effectively continues the Government's no number, no list response to documents relating to telephony metadata, but makes a "Glomar" response with respect to documents pertaining to the bulk collection of other information. A Glomar response, unlike a no number, no list response, neither confirms nor denies the existence of responsive records. See N.Y. Times (al-Awlaki), 756 F.3d at 105; Wilner, 592 F.3d at 68.

For reasons already given, this Court will examine many of the documents in this case in camera to assess the Government's arguments for itself. But it is clear from the affidavits alone that the Government is entitled to provide a Glomar response with respect to documents

---

[9] This opinion will refer to this decision as the "N.Y. Times (al-Awlaki)" so as to avoid confusion with the New York Times FOIA action related to this case.

relating solely to the bulk collection of information other than telephony metadata, whether the Government intended to give such a response or not. For the following reasons, summary judgment is granted to the Government for documents, if any, relating solely to information other than telephony metadata, and any such documents need not be submitted for in camera review.

"[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exception." Wilner, 592 F.3d at 68 (alterations in original) (quoting Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). Therefore an agency may make a Glomar response when "the existence or nonexistence of a record is a fact exempt from disclosure under a FOIA exemption." Wilner, 592 F.2d at 70. Here, the Government asserts that the fact of whether the Government is engaging in the bulk collection of information other than telephony metadata is itself exempt from disclosure under Exemptions 1 and 3. Supplemental Hudson Decl. ¶ 8.

Exemption 1 applies to properly classified national security information. See 5 U.S.C. § 552(b)(1). To be properly classified, national security information must (1) be classified by an "original classification authority," (2) be "owned by, produced by or for, or [] under the control of the United States Government," (3) fall within one or more of eight protected categories of information, and (4) "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." Exec. Order No. 13526 § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010). The classification authority must be "able to identify or describe the damage" that would be caused by disclosure of the information. Exec. Order No. 13526 § 1.1(a)(4).

The Government argues the existence or non-existence of other bulk collection programs falls within Exemption 1 because it falls into one of the eight categories of classifiable

information, "intelligence activities (including covert action), intelligence sources or methods or cryptology," Exec. Order 13526, § 1.4(c), and because "disclosure of the existence or nonexistence of such activities reasonably could be expected to result in damage to national security." Supplemental Hudson Decl. ¶ 13.

Exemption 3 applies to records exempted from disclosure by other federal statutes. See 5 U.S.C. § 552(b)(3).

> Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.

Wilner, 592 F.3d at 72 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)). "In evaluating whether Exemption 3 applies, a court should 'not closely scrutinize the contents of the withheld document; instead, [it should] determine only whether there is a relevant statute and whether the document falls within that statute.'" N.Y. Times, 872 F. Supp. 2d at 316 (alteration in original) (quoting Krikorian v. Dep't of State, 984 F.2d 461, 465 (D.C. Cir. 1993)).

The Government argues the existence of other bulk collection programs, if any, falls within Exemption 3 because it is protected by § 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 (codified at 50 U.S.C. § 3024(i)(1)). The National Security Act is a withholding statute for Exemption 3 purposes. ACLU v. Dep't of Justice, 681 F.3d 61, 72–73 (2d Cir. 2012). § 102A(i)(1) provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). For information which may disclose intelligence sources and methods, Exemption 3 and the National Security Act "provide[]

overlapping protection" with Exemption 1. Military Audit Project v. Casey, 656 F.2d 724, 736 n.39 (D.C. Cir. 1981).

The ACLU argues that acknowledging the existence of records related to non-telephony metadata bulk collection programs would not reveal the particular "source or method" used by the Government, a requirement under both exemptions as asserted here. But this takes too narrow a view of both what the Government may keep classified and of the capabilities of our adversaries. Assuming for a moment that the Government is not engaging in the bulk collection of anything but telephone records, it is entitled to keep that fact—its lack of additional sources or methods—classified. To acknowledge that would alert potential adversaries that they need not be concerned about bulk collection of other types of information, negating the deterrent effect of not knowing whether the Government is watching or listening. But if the Government is collecting other information in bulk, knowing that could permit a sophisticated adversary, together with disparate other pieces of information, to make an educated guess as to what the Government is doing. A sophisticated adversary could determine what types of information the intelligence community would likely be interested in collecting in bulk and what types of information could in fact be easily collected. Admitting the existence of other bulk collection programs could permit these adversaries to predict the Government's activities and evade them.

In Wilner, the Second Circuit rejected the plaintiffs' argument that a Glomar response may be used "only to preserve the secrecy of a covert intelligence program or secret intelligence sources or methods." Wilner, 592 F.3d at 69. The court held that a Glomar response may be appropriate even with respect to "a program whose existence has been publicly revealed." Wilner, 592 F.3d at 69. Implicit is that it is appropriate to invoke Glomar here, to

preserve the secrecy of the existence or non-existence of a covert intelligence program. Accordingly, summary judgment is granted to the Government on this issue.

## CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is granted and the ACLU's motion is denied with respect to the Government's Glomar response for responsive documents, if any, relating solely to the use of section 215 for bulk collection of information other than telephony metadata. The Government is directed to submit the remaining documents for in camera review by October 17, 2014. The Government is invited to make a further submission either reconsidering its determinations and proposing redactions or providing further support as to why these documents should be withheld in full. Any ruling on the remainder of the summary judgment motions is deferred pending this Court's review.

Dated: October 6, 2014
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Patrick C. Toomey, Esq.
Alexander A. Abdo, Esq.
Jameel Jaffer, Esq.
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

Arthur N. Eisenberg, Esq.
Beth Haroules, Esq.
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Charles S. Sims, Esq.
Richard I. Haddad, Esq.
Proskauer Rose LLP
11 Times Square
New York, NY 10036
*Counsel for Plaintiffs*

Emily E. Daughtry, Esq.
John D. Clopper, Esq.
U.S. Attorney's Office, SDNY
86 Chambers Street
New York, NY 10007
*Counsel for Defendants*