UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | |
| Plaintiffs, | |
| v. | 11 Civ. 7562 (WHP) |
| | ECF Case |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | |
| Defendants. | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 5th Floor
New York, New York 10007
Tel.: (212) 637-2716

JOHN D. CLOPPER
EMILY E. DAUGHTRY
Assistant United States Attorneys
   — Of Counsel —

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

I. The Documents at Issue Are Properly Withheld in Full Pursuant to FOIA
Exemption 1 and 3 ............................................................................................................1

II. The Government Has Acted at All Times in Good Faith and Consistent With
Its Duty of Candor to the Court .......................................................................................2

  A. The Government's Initial Withholding in Full of the January 2009
FISC Order..............................................................................................................3

  B. The Government's Interpretation of FISC Rule 62 .....................................7

  C. The Government's Failure to Identify and Produce Three FISC
Primary Orders in Its Original Search in Response to the ACLU's
FOIA Request .......................................................................................................13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

### CASES

*ACLU v. DOD*,
  628 F.3d 612 (D.C. Cir. 2011) ..................................................................................7

*Electronic Frontier Foundation v. Department of Justice*,
  No. 12- CV-1441-ABJ (D.D.C. filed Aug. 30, 2012) ..............................................8, 13

*Electronic Frontier Foundation v. United States Department of Justice*,
  Case No. 4:11-cv-05221-YGR (N.D. Cal.) ...............................................................11

*Grand Central Partnership, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ...................................................................................14

*In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's Rules on Statutory Access Rights*,
  No. Misc. 13-01 (F.I.S.C. filed June 7, 2013) .........................................................9, 10

*In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's Rules on Statutory Access Rights*,
  No. Misc. 13-01 (F.I.S.C. June 12, 2013) ...............................................................9, 11

*In re Motion for Release of Court Records*,
  526 F. Supp. 2d 484 (F.I.S.C. 2007) .......................................................................10

*In re Orders of this Court Interpreting Section 215 of the Patriot Act*,
  No. Misc. 13-02 (FISC Sept. 13, 2013) ...................................................................12

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ...............................................................................14

*Morgan v. U.S. Dep't of Justice*,
  923 F.2d 195 (D.C. Cir. 1991) ...............................................................................10

*New York Times Co. v. Department of Justice*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012) .......................................................................6

*New York Times Co. v. Department of Justice*,
  756 F.3d 100 (2d Cir. 2014) ...................................................................................14

*New York Times Co. v. United States Department of Justice,*
    11 Civ. 6990 (WHP) .................................................................................................6

**STATUTES**

5 U.S.C. § 552(b)(1) .................................................................................................2

5 U.S.C. § 552(b)(3) .................................................................................................2

50 U.S.C. § 1871(a)(5)..............................................................................................8

50 U.S.C. § 1881f(b)(1)(D).......................................................................................8

**PRELIMINARY STATEMENT**

Defendant United States Department of Justice ("DOJ" or the "government") respectfully submits this supplemental memorandum of law in response to the Court's Memorandum and Order dated October 6, 2014 ("October 6 Order"), and in further support of the government's cross-motion for summary judgment.

Consistent with the Court's direction in the October 6 Order, the government is today submitting classified documents to the Court for *in camera* inspection. At the Court's invitation, the government is also submitting this supplemental unclassified memorandum of law, as well as a classified memorandum and declarations, in further support of its motion.

As set forth below, and in the government's classified submissions, the documents at issue are exempt from disclosure in their entirety under Exemptions 1 and 3 of FOIA. As the Court invited in its October 6 Order, the government has re-reviewed each of the documents at issue, and confirmed that they contain no reasonably segregable, non-exempt information.

We take very seriously the Court's statement that the government has "acted without the candor this Court expects from it." October 6 Order at 10. The government has carefully considered the specific concerns raised by the Court in this regard, *see id*. at 7-11, and we believe the Court would benefit from a fuller discussion of the specific points the Court has raised. We respectfully submit that the record demonstrates that the government has acted at all times in good faith and consistent with its duty of candor to the Court.

**I.     The Documents at Issue Are Properly Withheld in Full
Pursuant to FOIA Exemptions 1 and 3**

In response to the October 6 Order, the government has conducted a supplemental review of the documents at issue. That review has confirmed that the documents do not contain any reasonably segregable, non-exempt information, and that they are exempt from public disclosure

in full under Exemptions 1 and 3 of FOIA, 5 U.S.C. §§ 552(b)(1), (3).  The government

previously explained in its unclassified briefing in this case why it is not possible to release any

further information in these documents.  As explained in the government's brief in support of its

motion for summary judgment, the 2008 FISC Opinion contains no reasonably segregable, non-

exempt information because the opinion concerns a classified intelligence method that is

addressed in each paragraph of the opinion, as well as in the title of the document.  *See* ECF No.

85 at 9, 15.  No information can be released from other documents at issue without revealing

exempt information concerning the telecommunications carrier(s) who participated in the

telephony metadata program.  *See id*. at 16-20.

The government is unable to provide further information on the public record with regard

to its segregability determinations.  However, to assist the Court's review of the government's

segregability determinations, the government is submitting a classified brief and supplemental

classified declarations for the Court's *ex parte* and *in camera* review.

## II.    The Government Has Acted at All Times in Good Faith and Consistent With Its Duty of Candor to the Court

As the Court stated in its October 6 Order, the posture of this case changed dramatically

on June 5, 2013, when there was an "'unprecedented unauthorized disclosure of TOP SECRET

documents,' touching 'on some of the U.S. Government's most sensitive national security

programs, including highly classified and on-going signals intelligence collection programs.'"

October 6 Order at 3 (quoting the Declaration of Jennifer Hudson, dated April 4, 2014 ("First

Hudson Decl.") ¶ 17.  In the aftermath of those unauthorized disclosures by Edward Snowden, a

former government contractor, the government released significant information about

intelligence collection activities in order to better inform the public debate and correct

misinformation about the government's activities.  This was an enormously complicated

endeavor requiring close and careful coordination by multiple agencies and the many dedicated

public servants who are employed by those agencies.

In the October 6 Order, the Court raised three specific concerns regarding the

government's handling of certain documents responsive to the ACLU's FOIA request: (1) the

government's withholding in full of a January 2009 FISC Order, prior to the unauthorized

disclosures that led to the public acknowledgment of the Section 215 bulk telephony metadata

program, *see* October 6 Order at 7, 9-10, (2) the government's withholding of documents based

on its understanding that FISC rules prohibited disclosure of such documents under FOIA, *see*

October 6 Order at 7-9, and (3) the government's failure to identify and produce in this litigation

three primary FISC orders that have since been declassified in part and publicly released by the

government in redacted form, *see* October 6 Order at 10-11. The government respectfully

submits that with respect to each of these matters, the record demonstrates that the government

acted at all times in good faith and consistent with its duty of candor to the Court.

### A.    The Government's Initial Withholding in Full of the January 2009 FISC Order

In the October 6 Order, the Court criticized the government's handling of an order of the

FISC, dated January 28, 2009, in FISC Docket No. BR 08-13 (the "January 2009 FISC Order").

*See* October 6 Order at 7.

The January 2009 FISC Order concerns the now-declassified bulk telephony metadata

collection program, and was issued by the FISC as part of that court's review of certain

compliance issues relating to the program. A redacted version of this document was publicly

released on September 10, 2013, and the ACLU is not challenging the redactions to the

document.[1]  *See id.* at 4 (noting that ACLU narrowed its request to certain "withheld opinions or

orders of the Foreign Intelligence Surveillance Court" that had been withheld in full).

Accordingly, the January 2009 FISC Order is no longer at issue in this case.

Nevertheless, the ACLU argued that the government should have released a redacted

version of the January 2009 FISC Order earlier in the litigation, and that the government's failure

to do so suggests a lack of good faith.  In the October 6 Order, the Court concluded that the

government could have redacted the January 2009 FISC Order "to conceal the existence of a

bulk collection program, the NSA's involvement, and the type of information collected by the

Government," but disclosed those aspects of the Order in which the FISC concluded that the

government may have violated a prior FISC order.  *See id.* at 7 (concluding that the government

could have revealed the FISC's statements in the January 2009 FISC Order "that the Government

acted 'in a manner that appears to the [FISC] to be directly contrary' to a prior court order, that

the FISC contemplated taking 'action regarding persons responsible for any misrepresentations

to the [FISC] . . . ,' and that 'the [FISC] is exceptionally concerned about what appears to be a

flagrant violation of its Order in this matter'"; quoting redacted version of January 2009 FISC

Order).

The record demonstrates that it was the considered judgment of the intelligence

community that it was not possible for the government to release a redacted version of the

January 2009 FISC Order prior to the unauthorized disclosure of the bulk telephony metadata

collection program in June 2013, without disclosing what was then still classified information.

Specifically, the January 2009 FISC Order contained the "COMINT" identifier, and, because of

---

[1] The January 2009 FISC Order is available at http://www.dni.gov/files/documents/
section/pub_Jan%2028%202009%20Order%20Regarding%20Prelim%20Notice%20of%20Com
pliance.pdf.

that identifier, it was not possible to release any portion of the January 2009 FISC Order without also risking disclosure of the classified fact of NSA's association with Section 215.  *See* Declaration of Diane M. Janosek, dated February 6, 2013 (ECF No. 97), ¶¶ 3, 4, 13, 17, 23, 25, 26, 31-34, 41 (explaining that the government previously was unable to segregate any information from the FISC opinions and orders that were subsequently released with redactions, for to do so would have revealed classified information about the bulk telephony metadata collection program).

As Ms. Janosek explained, the classification designations on certain documents— including the January 2009 FISC Order—included the identifier for communications intelligence or "COMINT," which is an identifier for Sensitive Compartmented Information ("SCI") that is associated with the NSA and "subject to special access and handling requirements because it involves or derives from particularly sensitive intelligence sources and methods."  *Id.* ¶¶ 6, 32. Ms. Janosek further explained that it was not possible to simply redact the SCI identifier COMINT because the Department of Justice was the only agency publicly associated with the responsive documents, and the Department of Justice "would not ordinarily redact its own classification markings."  *Id.* ¶ 33.  Redacted classifications markings would have "necessarily reveal[ed] that another agency, to whom those redacted classified markings would be attributed, was associated with the responsive material."  *Id.*  Ms. Janosek then explained that "any adversary with basic knowledge of the mission of NSA" would have then been able to "conclude that NSA is the agency most plausibly conducting a program under this authority."  *Id.* Accordingly, the government withheld in full any document that included the classification designation COMINT—including but not limited to the January 2008 FISC Order— in order to protect the classified fact of NSA's association with Section 215.

Until this information was declassified—after careful and considered Executive Branch interagency review, following the unauthorized disclosure of the Section 215 bulk telephony metadata program—the government consistently advanced this argument both in this litigation and in the related case of *The N.Y. Times Co. v. DOJ,* 11 Civ. 6990 (WHP).  The government presented this argument to the Court as early as February 27, 2012, in conjunction with the government's motion for partial summary judgment in this case and for summary judgment in the related *New York Times* case.  In that earlier phase of this litigation, the ACLU and the New York Times challenged the government's withholding of a report to Congress from the Attorney General and Director of National Intelligence concerning the use of Section 215.  That report was withheld in its entirety because NSA's association with Section 215 was a classified fact and the report's classification markings—specifically the COMINT identifier—revealed that fact. *See* Declaration of Diane M. Janosek, dated February 27, 2012, ¶¶ 32-34.[2]

Significantly, this Court granted the government's motion for summary judgment after reviewing the report, and the Janosek Declaration, *in camera*.  *N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012).[3]  The Court upheld the government's withholding of the document in full, which was based in significant part on the rationale that the COMINT identifier would reveal the NSA's association with Section 215.

---

[2] The February 27, 2012 Declaration of Diane M. Janosek was submitted to the Court as part of its classified filing of the same date.  *See* ECF No. 17.  Like the February 6, 2013 Janosek Declaration, which was also previously part of a classified filing (ECF No. 42) and subsequently released in redacted form (ECF No. 97), the February 27, 2012 Janosek Declaration may also now be released in redacted form.

[3] The report was released to the public in redacted form on July 31, 2013, as a result of the government's transparency initiative.  *See* DNI Clapper Declassifies and Releases Telephone Metadata Collection Documents, dated July 31, 2013, available at http://icontherecord.tumblr.com/tagged/declassified/page/3 (last visited October 22, 2014).

For these reasons, there is simply no basis to conclude that the government failed to operate in good faith by withholding the January 2009 FISC Order in full prior to Edward Snowden's unauthorized disclosure of the bulk telephony metadata program and the government's subsequent declassification of the existence of the program.  In fact, the government's handling of this document demonstrates just the opposite:  a strong willingness by the intelligence community and the Executive Branch to declassify as much information as possible, as soon as possible, in order to "correct misinformation flowing from the unauthorized disclosures" regarding the program.  First Hudson Declaration ¶¶ 23, 27.  In order to further the public debate, and after a comprehensive and detailed review directed by the President, "the DNI chose to exercise his discretion under E.O. 13526 to declassify certain information because he found extraordinary circumstances existed where the public interest in disclosure outweighed the harm to national security that would result."  *Id.*; *see ACLU v. DOD*, 628 F.3d 612, 627 (D.C. Cir. 2011) (finding "the government demonstrated good faith by voluntarily reprocessing the documents after the President declassified the OLC memoranda and the CIA Inspector General's report," and declining "to penalize a government agency for voluntarily reevaluating and revising its FOIA withholdings").

**B.      The Government's Interpretation of FISC Rule 62**

In the October 6 Order, the Court also criticized the government's reliance, until June 2013, on its understanding that FISC Rule 62 prohibited disclosure of certain FISC orders in this FOIA case.  *See* October 6 Opinion at 11 (stating that "[t]he Government's argument that it believed until June 2013 that FISC orders could not be produced in response to FOIA requests strains credulity").  But the record demonstrates that before the FISC's clarification of its rule in June 2013, the government consistently took the position before the federal courts and the FISC

- 7 -

itself that FISC Rule 62[4] prevented disclosure of FISC orders, and thus acted in good faith when

it informed this Court of the government's considered position that FISC Rule 62 prevented

disclosure.[5]

The government first articulated its interpretation of FISC Rule 62 in a FOIA lawsuit

brought by the Electronic Frontier Foundation ("EFF") in the District of Columbia in 2012.  In

*Electronic Frontier Foundation v. Dep't of Justice*, No. 12-CV-1441-ABJ (D.D.C. filed Aug. 30,

---

[4] FISC Rule 62 provides:

(a) Publication of Opinions. The Judge who authored an order, opinion, or other decision may *sua sponte* or on motion by a party request that it be published. Upon such request, the Presiding Judge, after consulting with other Judges of the Court, may direct that an order, opinion or other decision be published. Before publication, the Court may, as appropriate, direct the Executive Branch to review the order, opinion, or other decision and redact it as necessary to ensure that properly classified information is appropriately protected pursuant to Executive Order 13526 (or its successor).

(b) Other Records. Except when an order, opinion, or other decision is published or provided to a party upon issuance, the Clerk may not release it, or other related record, without a Court order. Such records must be released in conformance with the security measures referenced in Rule 3.

(c) Provision of Court Records to Congress.

(1) By the Government. The government may provide copies of Court orders, opinions, decisions, or other Court records, to Congress, pursuant to 50 U.S.C. §§ 1871(a)(5), 1871(c), or 188lf(b)(l)(D), or any other statutory requirement, without prior motion to and order by the Court. The government, however, must contemporaneously notify the Court in writing whenever it provides copies of Court records to Congress and must include in the notice a list of the documents provided.

(2) By the Court. The Presiding Judge may provide copies of Court orders, opinions, decisions, or other Court records to Congress. Such disclosures must be made in conformance with the security measures referenced in Rule 3.

[5] Prior to the issuance of the June 2013 opinion, the government had consistently treated FISC opinions as being under seal and had moved for unsealing before providing the opinions to third parties such as in connection with criminal cases where FISA-obtained evidence was to be used.  Additionally, in November 2010, the FISC adopted Rule 62, which replaced prior Rule 7(b)(ii), and, among other things, modified it to permit certain specified disclosures to Congress without a FISC order, *see* FISC Rule 62(c)(1), which the government took as confirming its view that other disclosures were impermissible in the absence of an unsealing order from the FISC.

2012), EFF contended that the National Security Division had unlawfully withheld documents

responsive to EFF's FOIA request.  The National Security Division had located a number of

responsive documents, two of which were copies of a FISC opinion.  In its motion for summary

judgment, the National Security Division contended that it had no discretion to release the

opinion under the FISC's Rules of Procedure.[6]  EFF responded to the government's motion for

summary judgment by seeking and receiving a stay of that litigation and moving for relief in the

FISC.  *See In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a*

*Determination of the Effect of the Court's Rules on Statutory Access Rights*, No. Misc. 13-01

(F.I.S.C. June 12, 2013).

In response to EFF's motion, the National Security Division argued, among other things,

that FISC Rule 62 prohibited publication without a Court order, and that it was not appropriate

for the FISC to issue such an order on EFF's motion.  As explained in the government's

opposition to EFF's motion,

> A plain reading of the FISC's Rules of Procedure, as well as the longstanding
> practice of the FISC and the Government implementing these rules, makes clear
> that FISC opinions, including the instant opinion, are sealed and, with one
> exception that is not applicable here, the Government cannot release copies of
> FISC opinions in its possession without permission from the FISC.  Under FISC
> Rule 62(a), FISC opinions can only be made public if the "Judge who authored an
> order, opinion, or other decision . . . *sua sponte* or on motion by a party request[s]
> that it be published."  *See* U.S. Foreign Intelligence Court, Rule of Procedure
> 62(a) (2010).  When such a request is made, "the Presiding Judge, after consulting
> with other Judges of the Court, may direct that an order, opinion or other decision
> be published."  *Id.*

Opposition to the Motion of the Electronic Frontier Foundation, *In re Motion for Consent to*

*Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's*

---

[6] The government also argued that the FISC opinion was properly classified and exempt
from public release pursuant to Exemptions 1 and 3 of FOIA.

*Rules on Statutory Access Rights*, No. Misc. 13-01 (F.I.S.C. filed June 7, 2013), at 5 ("DOJ-NSD

Opposition").

In its opposition to EFF's motion, the government specifically addressed the FISC's

decision in *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 497 (F.I.S.C. 2007),

in which the FISC had held, in denying a motion brought by the ACLU, that "nothing in this

decision forecloses the ACLU from pursuing whatever remedies may be available to it in a

district court through a FOIA request addressed to the Executive Branch." EFF argued—similar

to the view expressed by this Court, *see* October 6 Order at 9—that the National Security

Division's argument to the FISC in 2013 was inconsistent with the position it took before the

FISC in 2007. In responding to EFF's motion, the National Security Division explained:

> Movant appears to misconstrue this Court's opinion regarding FISC records and
> FOIA in *In re Motion for Release of Court Records*. In that case, the movant had
> not filed a FOIA request but had instead requested that the FISC release orders
> and other materials. *In re Release*, 526 F. Supp. 2d at 485. In rejecting the
> movant's request, the FISC stated that a party could "submit[] a FOIA request,"
> *id.* at 496 n. 32, for such records and pursue "whatever remedies may be available
> to it in a district court." *Id.* at 497. In so doing, the FISC did not state that such
> records would necessarily be released or could be released in the absence of a
> FISC order unsealing the materials. *Id.*

DOJ-NSD Opposition, at 10-11. The government also explained that there is no inconsistency

between the position that FOIA, rather than a motion in the FISC, is the proper vehicle for

testing whether a party has a right to access to FISC-related records and the government's pre-

June 2013 position that FOIA did not afford a right to FISC opinions that were believed to be

under seal. Where a document is under a court sealing order, it is exempt from disclosure under

FOIA. *See* DOJ-NSD Opposition, at 9-10 (citing *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195,

197 (D.C. Cir. 1991)).

Thereafter, on June 12, 2013, the FISC issued its ruling on EFF's motion, holding that "FISC Rule 62 does not have the effect of sealing copies of the Opinion in the Government's possession and that the Court has not otherwise prohibited the Government's disclosure of such copies in response to EFF's FOIA request." *In re Motion for Consent to Disclosure of Court Records or, in the Alternative, a Determination of the Effect of the Court's Rules on Statutory Access Rights*, No. Misc. 13-01 (F.I.S.C. June 12, 2013), at 7.  While the FISC ultimately disagreed with the government's view of FISC Rule 62, neither the FISC nor the U.S. District Court for the District of Columbia (which had stayed EFF's FOIA case so that EFF could seek clarification from the FISC) ever suggested that the government's interpretation was lacking in good faith.

It is also notable that, before the government informed this Court of its interpretation of FISC Rule 62, the government also informed the U.S. District Court for the Northern District of California, in another FOIA case brought by EFF, of its view that FISC Rule 62 prevented release of FISC orders.  *See* Second Supplemental Declaration of Mark A. Bradley, dated April 18, 2013 (ECF No. 51-1), ¶ 13, filed in *Electronic Frontier Foundation v. United States Dep't of Justice*, Case No. 4:11-cv-05221-YGR (N.D. Cal.).  After the FISC clarified that its rules do not independently prevent the government from releasing any portion of a FISC record, the government ceased to rely on that argument.  *See* Consolidated Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Reply Memorandum in Further Support of Defendant's Motion for Summary Judgment, at 7-8, filed in *Electronic Frontier Foundation v. United States Dep't of Justice*, Case No. 4:11-cv-05221-YGR (N.D. Cal.).  The U.S. District Court for the Northern District of California has since ruled in that case, and did not suggest that the government's reliance on its earlier interpretation of FISC Rule 62 was lacking in candor.

For all of these reasons, there is no basis to conclude that the government was either "dissembling" or engaged in "opportunistic rummaging," October 6 Order at 9, when it advanced in this litigation the same considered position that the government consistently advanced before other federal courts and the FISC itself.

Nor is there any basis for the Court to conclude that the government acted with insufficient candor when it inadvertently stated, in its May 30, 2014 brief in this case, that the FISC clarified its rule in a September 13, 2013 order. As noted above, the FISC first clarified that Rule 62 does not bar disclosure under FOIA in its order dated June 12, 2013, and thereafter the government promptly ceased relying on its earlier interpretation of the FISC rule. The FISC subsequently issued another order, on September 13, 2013, which further clarified the scope of FISC Rule 62; in the September 13, 2013 order, the FISC considered the narrow and ancillary question of whether the movants were parties to the relevant proceedings and thus could request a publication of a FISC opinion under the FISC rules. *See In re Orders of this Court Interpreting Section 215 of the Patriot Act*, No. Misc. 13-02 (FISC Sept. 13, 2013) (the "September 2013 FISC Opinion"). During the most recent summary judgment briefing in this case, the ACLU erroneously cited the FISC's September 13, 2013 order, rather than its June 12, 2013 order, as the order in which the FISC first clarified its rule. *See* ECF No. 91, at 4 n.2. The government failed to recognize the ACLU's error, and compounded that error by citing September 13, 2013 FISC order, rather than the June 12, 2013 FISC order, in the government's own responsive brief. *See* ECF No. 95 at 19. As the government explained in its letter to the Court dated July 21, 2014, the ACLU's citation to the September 2013 FISC opinion in its motion for summary judgment, and government's failure to recognize the error and its own erroneous (but inadvertent) citation to the September 2013 opinion, unfortunately permitted the ACLU to argue

- 12 -

that the government's earlier invocation of the FISC's rules must have been made in bad faith

because the government had released FISC orders to the public prior to the FISC's September

13, 2013 order.  *See* ECF No. 103, at 1-2.  Contrary to the Court's suggestion, however, the

government's correction of this misunderstanding in its July 21, 2014, letter was not a "new

argument" offered for purposes of this litigation.  *See* October 6 Order at 8.  As explained above,

the National Security Division's understanding of the FISC's rules was articulated in *Electronic*

*Frontier Foundation v. Dep't of Justice*, No. 12-CV-1441-ABJ (D.D.C.), in April 2013, and was

consistently asserted in federal court litigation in California and before the FISC itself.  While a

mistake was regrettably made—by both the ACLU and the government—it was an inadvertent

error, and it was promptly corrected when the government recognized the error.

In advancing an argument based on the FISC's rules prior to June 2013, the government

presented its considered and consistent view of the operation of the FISC rules.  While the Court

may disagree with the government's prior interpretation of the FISC rules, there is no basis for

any suggestion of lack of good faith or candor to this Court.

## C.     The Government's Failure to Identify and Produce Three FISC Primary Orders in Its Original Search in Response to the ACLU's FOIA Request

Finally, the Court faulted the government for "fail[ing] to produce or list on the *Vaughn*

index three documents which the Government had disclosed elsewhere."  October 6 Opinion at

11.  As the government has explained, however, *see* ECF No. 101, these three documents—all

FISC Primary Orders relating to the bulk telephony metadata program—were not deliberately

withheld by the government.  Rather, they were never identified in the National Security

Division's original search in response to the ACLU's FOIA request.  While it is true that NSD

overlooked these three documents during its search, there is nothing in the record that remotely suggests a lack of good faith or candor by the government.

First, as the Second Circuit has recognized, agencies will sometimes overlook responsive documents when they undertake searches in response to FOIA requests. *See N.Y. Times Co. v. DOJ*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method."). When they do so, that does not render the agency's search unreasonable, much less in bad faith. *See id.* (agency's failure to find responsive documents during FOIA search did not demonstrate unreasonableness or bad faith); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) ("[A]n agency's search need not be perfect, but rather need only be reasonable.").

Second, shortly after this issue was brought to the government's attention, in the ACLU's reply brief filed on June 13, 2014, the government promptly took steps to remedy its oversight. Although not required to do so under Second Circuit law, *see New York Times Co. v. Dep't of Justice*, 756 F.3d at 123-24, in a show of good faith and in accordance with the government's continuing efforts to be as transparent as possible, DOJ nonetheless went back and searched for the three documents identified by the ACLU. Once they were identified, the government conducted an expedited interagency declassification review of the orders, released them in redacted form to the ACLU, and notified the Court. *See* Dkt. No. 101.

The record therefore shows that, upon being notified of the fact that it had overlooked these three documents in its FOIA search, the government promptly corrected this error and brought it to the Court's attention. The government's actions underscore its good faith and candor to the Court. *See, e.g., Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981) ("emphatically reject[ing]" the argument that affidavits were "suspect" simply because the

government "admitted that it was initially in error, from which it follows that the agency is fallible").

## CONCLUSION

For the foregoing reasons, the reasons stated in the classified memorandum and declarations submitted for the Court's *ex parte, in camera* review, and the reasons stated in the government's prior submissions, the Court should grant summary judgment to the government.

Dated:  New York, New York
        October 24, 2014

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                    By:     __/s/ Emily E. Daughtry_____
                                        JOHN D. CLOPPER
                                        EMILY E. DAUGHTRY
                                        Assistant United States Attorneys
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Telephone: (212) 637-2716 (Clopper)
                                                        (212) 637-2777 (Daughtry)
                                        Facsimile: (212) 637-0033
                                        john.clopper@usdoj.gov
                                        emily.daughtry@usdoj.gov